HARRIS LAW PRACTICE LLC
STEPHEN R. HARRIS, ESQ. NVB 1463
Email: steve@harrislawreno.com
NORMA GUARIGLIA, ESQ. NVB 16244
Email: norma@harrislawreno.com
850 E. Patriot Blvd., Suite F
Reno, NV 89511
Telephone: (775) 786-7600
Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

* * * * *

IN RE:

KOINONIA CONSTRUCTION INC
dba IMPACT ROOFING,

           Debtor.

_____/

Case No.: 26-50335-hlb
(Chapter 11)

**MOTION FOR ORDER AUTHORIZING: (1) SALE OF IMPROVED REAL PROPERTIES FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES [2427 N. 5TH STREET, 2511 N. 5TH STREET AND 2519 N. 5TH STREET, ELKO, NEVADA 89801]; AND (2) PAYMENT OF TRUST DEEDS,  SALES COMMISSIONS AND <u>CLOSING COSTS</u>**

Hearing Date:  N/A
Hearing Time: N/A
Est. Time:        30 minutes
Set by:            OST requested

KOINONIA CONSTRUCTION INC dba IMPACT ROOFING ("**Debtor**"), Debtor and

Debtor-In-Possession herein, through its attorneys, STEPHEN R. HARRIS, ESQ. and NORMA

GUARIGLIA, ESQ., of HARRIS LAW PRACTICE LLC, hereby moves this Court for the entry

of an order authorizing: (1) the sale of the Debtor's three (3) improved real properties free and

clear of liens, claims, and encumbrances, pursuant to 11 U.S.C. §§ 363(b), (f) and (m), and Fed.

R. Bankr. P. 6004(h); and (2) payment of recorded trust deeds, customary closing costs and real

estate commissions ("**Motion**"). This Motion is based on the papers and pleadings on file in this Chapter 11 case, the following points and authorities, the supporting Declaration of Luke Fitzgerald ("**Fitzgerald Declaration**"), and the oral argument of counsel at any hearing on this matter.

<u>**RELIEF REQUESTED**</u>

1.      The Debtor is in the business of developing, constructing and selling residential homes in Elko, Nevada.  The Debtor currently has six (6) residential homes under construction and/or near completion, including but not limited to three (3) residential homes that are completed and ready to sell in the next nine (9) days.  With respect to the three (3)residential homes that the Debtor has completed and needs to close escrow in the next nine (9) days, the Debtor has received certain purchase offers to acquire and sell these three (3) residential homes and is in need to close same timely.  The following described three (3) real property transactions require the United States Bankruptcy Court approval:

a)  The Debtor has made the decision to sell its improved real property located at 2427 N. 5th Street, Elko, Nevada 89801, APN# 001-61M-007 ("Property #1"), for the purchase price of Three Hundred Forty-Seven Thousand Dollars ($347,000.00), pursuant to a Residential Purchase Agreement with Addendum #1 ("Agreement #1"), to Buyer Galia Meiri ("Buyer #1");

b)  The Debtor has made the decision to sell its improved real property located at 2511 N. 5th Street, Elko, Nevada 89801, APN# 001-61M-023 ("Property #2"), for the purchase price of Three Hundred Forty Thousand Dollars ($340,000.00), pursuant to a Residential Purchase Agreement with Counteroffer #1 and Counteroffer #2 ("Agreement #2"), to Buyer Luna Estela Caballero ("Buyer #2"); and

c)  The Debtor has made the decision to sell its improved real property located at 2519 N. 5th Street, Elko, Nevada 89801, APN# 001-61M-025 ("Property #3"), for the purchase price of Three Hundred Forty Thousand Dollars ($340,000.00), pursuant to a Residential Purchase Agreement and Counteroffer ("Agreement #3"), to Buyer Feras Elias ("Buyer #3").

2.      As a result of prepetition negotiations between the Debtor and the three (3) buyers referred above, the following has been agreed to with respect to each of the three (3) sales that the Debtor is requesting a Court order approving same:

a) With respect to the proposed sale of 2427 N. 5th Street, Elko, Nevada 89801 ("Property #1"), the Debtor has entered into Agreement #1, attached hereto as **Exhibit "A,"** with Buyer #1, for a purchase price of Three Hundred Forty-Seven Thousand Dollars ($347,000.00), with closing to occur on or before May 15, 2026, or as soon thereafter as practicable.  The Debtor has given a credit of Seven Thousand Dollars ($7,000.00), to Buyer as a credit towards closing costs.  The proposed Settlement Sheet prepared by Landmark Title Assurance Agency of Nevada is attached hereto as **Exhibit "B."** The Preliminary Title Report is attached hereto as **Exhibit "C."**  Liens that need to be paid approximate Two Hundred Sixty-Four Thousand Dollars ($264,000.00) plus accruing interest and reasonable fees and costs, to Mortgage Electronic Registrations Systems, acting solely as nominee for Sound Capital Loans, which Lender has a Deed of Trust recorded against Property #1 that secures an indebtedness in the principal amount of Two Hundred Fifty-Three Thousand Dollars ($253,000.00), dated February 28, 2025, and recorded on February 28, 2025, in the Official Records No. 847052 in the County of Elko, State of Nevada.  The Debtor anticipates net proceeds due Debtor after the close of escrow of approximately Forty-Eight Thousand Dollars ($48,000.00);

b) With respect to the proposed sale of 2511 N. 5th Street, Elko, Nevada 89801 ("Property #2"), the Debtor has entered into Agreement #2, attached hereto as **Exhibit "E,"** with Buyer #2, for a purchase price of Three Hundred Forty Thousand Dollars ($340,000.00), with closing to occur on or before May 15, 2026, or as soon thereafter as practicable.  The Debtor has given a credit of Seven Thousand Dollars ($7,000.00), to Buyer as a credit towards closing costs.  The proposed Settlement Sheet prepared by Landmark Title Assurance Agency of Nevada is attached hereto as **Exhibit "F."** The Preliminary Title Report is attached hereto as **Exhibit "G."**  Liens that need to be

paid approximate Two Hundred Sixty-Two Thousand Five Hundred Dollars ($262,500.00) plus accruing interest and reasonable fees, to Sound Capital Passive Income Fund LLC, which Lender has a Deed of Trust recorded against Property #2 that secures an indebtedness in the principal amount of Two Hundred Eighty-Five Thousand Six Hundred Ninety-Six Dollars ($262,500.00) dated March 21, 2025, recorded on March 25, 2025, in the Official Records No. 847761 in the County of Elko, State of Nevada, and thereafter assigned to FCI Lender Services.  Other liens that require payment at the close of escrow include past due taxes in the amount of Five Hundred Seventy-One Dollars and Seventy-Seven Cents ($571.77) to the Elko County Treasurer, Three Hundred Fifty Dollars ($350.00) to Air Tight LLC for release of a Mechanics Lien, Six Thousand One Hundred Eighteen Dollars and Eight Cents ($6,118.08) to Alside Supply Center for release of a Mechanics Lien, Five Thousand Three Hundred Ninety-Four Dollars ($5,394.00) to Elko Truss for release of a Mechanics Lien, Three Thousand Five Hundred Thirty-Eight Dollars and Five Cents ($3,538.05) to Harney Rock and Paving Co. for a release of a Mechanics Lien, Two Thousand Dollars ($2,000.00) to Lindsay Window & Door LLC for a release of a Mechanics Lien, Three Thousand Two Hundred Seventy-Eight Dollars and Forty Cents ($3,278.40) to Parker Solutions LLC for release of a Mechanics Lien, Twenty-Seven Thousand Sixty-One Dollars and Twenty-Three Cents ($27,061.23) to Quality Truss and Lumber for release of a Mechanics Lien, Three Thousand Nine Hundred Dollars ($3,900.00) to Simply Topzz for release of a Mechanics Lien, One Thousand Eight Hundred Thirty-Six Dollars ($1,836.00) to Triple S-Steel for release of a Mechanics Lien and Three Thousand Nine Hundred Thirty-One  Dollars and Sixty-Seven Cents ($3,931.67) to Western Nevada Supply for release of a Mechanics Lien. The Debtor anticipates net payment due from Debtor after the close of escrow of approximately Thirty-Two Thousand Dollars ($32,000.00); and

c)  With respect to the proposed sale of 2519 N. 5th Street, Elko, Nevada 89801 ("Property #3"), the Debtor has entered into Agreement #3, attached hereto as **Exhibit "I,"** with

Buyer #3, for a purchase price of Three Hundred Forty Thousand Dollars ($340,000.00), with closing to occur on or before May 15, 2026, or as soon thereafter as practicable.  The Debtor has given a credit of Five Thousand Dollars ($5,000.00), to Buyer as a credit towards closing costs.  The proposed Settlement Sheet prepared by Landmark Title Assurance Agency of Nevada is attached hereto as **Exhibit "J."** The Preliminary Title Report is attached hereto as **Exhibit "K."**  Liens that need to be paid approximate Two Hundred Eighty-One Thousand Eight Hundred Twenty-Nine and Seventy Cents ($281,829.70) plus accruing interest and reasonable fees, to Sound Capital, which Lender has a Deed of Trust recorded against Property #3 that secures an indebtedness in the principal amount of Two Hundred Sixty-Two Thousand Five Hundred Dollars ($262,500.00) dated March 21, 2025, recorded on March 25, 2025, in the Official Records No. 847760 in the County of Elko, State of Nevada, and thereafter assigned to FCI Lender Services.  Other liens that require payment at the close of escrow include past due taxes in the amount of Five Hundred Seventy-One Dollars and Seventy-Seven Cents ($571.77) to the Elko County Treasurer, Six Thousand One Hundred Eighteen Dollars and Eight Cents ($6,118.08) to Alside Supply Center, Salt Lake City Division of Associated Materials LLC, for release of a Mechanics Lien, Three Thousand Fifty Dollars ($3,050.00) to Elko Overhead Door LLC for release of a Mechanics Lien, Five Thousand Three Hundred Ninety-Four ($5,394.00) to Elko Truss for release of a Mechanics Lien, Three Thousand Six Hundred Ninety-Four Dollars and Ninety-Five Cents ($3,694.95) to Harney Rock and Paving Co. for a release of a Mechanics Lien, Three Thousand Two Hundred Seventy-Nine Dollars ($3,279.00) to Parker Solutions LLC for release of a Mechanics Lien, Twenty-Seven Thousand Two Hundred Ninety-Two Dollars and Thirty-Six Cents ($27,292.36) to Quality Truss and Lumber for release of a Mechanics Lien, Three Thousand Nine Hundred Dollars ($3,900.00) to Simply Topzz for release of a Mechanics Lien and Four Thousand Seven Hundred Seventy-Nine Dollars and Fifty Cents ($4,779.50) to Western Nevada Supply for release of a Mechanics Lien. The

Debtor anticipates net payment due from Debtor after the close of escrow of approximately Twenty-Eight Thousand Nine Hundred Forty-One Dollars ($28,941.00).

3.       Through this Motion, the Debtor seeks authorization to assume the prepetition Agreement #1, Agreement #2 and Agreement #3, entered into pursuant to 11 U.S.C. § 365 as unexpired executory contracts. Debtor also seeks authorization to sell Property #1, Property #2 and Property #3, to proposed Buyer #1, Buyer #2 and Buyer #3, respectfully, free and clear of liens, claims, and encumbrances, under 11 U.S.C. §§ 363(b) and (f), as well as the payoffs of the underlying first priority Deeds of Trust referenced in paragraphs 2a), 2b) and 2c), hereinabove, and the Debtor also seeks to sell Property #1, Property #2 and  Property #3, free and clear of the Notice of Lis Pendens that is recorded against each of Property #1, Property #2 and Property #3, by Defendant Lisa Jane Turner, in pending Case No. DC-FM-25-126, in the District Court, Elko County, State of Nevada on May 16, 2025, as Instrument No. 849637 for Property #1, Instrument No. 849628 for Property #2, and Instrument No. 849626 for Property #3, recorded in the Official Records of the County of Elko, State of Nevada.  Each of these Notice of Lis Pendens filed by Lisa Jane Turner were filed in violation of Nevada State law, specifically NRS § 14.010 requires that a lis pendens be maintained and recorded only if the recording party establishes that:

- The action affects the title or possession of the real property described in the notice.
- The action was not brought in bad faith or for an improper motive.
- The party will be able to perform any conditions precedent to the relief sought.
- The party would be injured by any transfer of the property before the action concludes.

NRS § 14.015

Additionally, the recording party must demonstrate either a likelihood of prevailing in the action or a fair chance of success on the merits, coupled with a showing that the injury from a transfer would outweigh the hardship to the opposing party. NRS § 14.015.

Debtor contends that Lisa Jane Turner has violated NRS § 14.010, by maintaining and recording a Notice of Lis Pendens against the Debtor's real properties, and that expungement of the Notice of Lis Pendens is appropriate.  In the context of Luke Fitzgerald and Lisa Jane Turner's divorce proceeding, a spouse may record a lis pendens against real property if the action affects

the title or possession of the property. Under NRS § 125.220, a spouse may record a notice of pendency of action in the county where the other spouse owns real property, and such notice has the same effect as a lis pendens in actions directly affecting real property. Nev. Rev. Stat. Ann. § 125.220.

While a spouse may have an interest in the corporation as community property, the corporation itself is a separate legal entity. The Nevada Supreme Court has emphasized that a lis pendens is appropriate only in actions involving a legal interest in the real property itself, not merely an indirect or derivative interest through ownership of a corporate entity. *Weddell v. H20, Inc.*, 128 Nev. 94 (2012). In conclusion, a spouse may record a lis pendens against real property owned by a corporation only if the divorce action directly affects the title or possession of the property. If the spouse's claim is limited to an interest in the corporation as community property, rather than a direct interest in the real property, the lis pendens may be subject to expungement. That is the case here, in that Lisa Jane Turner has a claim limited to an interest in the Debtor, as purported community property, rather than a direct interest in the improved real properties that are proposed to be sold in this Motion. Lisa Jane Turner must demonstrate that the action satisfies the statutory requirements under NRS § 14.015, including showing that the action affects the title or possession of the property and is not brought in bad faith . If these requirements are not met, the court may order the cancellation of the lis pendens, and Debtor contends that Lisa Jane Turner has not met these requirements.

4.    Debtor also seeks authorization to pay sales commissions directly from escrow upon closing to its sales broker, LPT Realty, Attn: Jen McDonald, Broker, for these four (4) sale transactions. Specifically, Debtor proposes to pay a listing agent commission to LPT Realty, Attn: Jennifer Welch, Agent, of Ten Thousand Six Hundred Fifty Dollars ($10,650.00) and a selling agent commission to LPT Realty (not Jennifer Welch, Agent) of Ten Thousand Six Hundred Fifty Dollars ($10,650.00), in reference to the sale of Property #1; Debtor requests payment of real estate commission to LPT Realty, Attn: Jennifer Welch, Agent, of Ten Thousand Two Hundred Dollars ($10,200.00) and to Robinhood Realty of Eight Thousand Five Hundred Dollars ($8,500.00) with respect to the sale of Property #2 and Debtor requests payment of real estate commission to LPT Realty, Attn: Jennifer Welch, Agent, of LPT Realty, in the amount of Ten Thousand Two Hundred Dollars ($10,200.00) and to Shecky Overholser of Elko Realty, in

the amount of Ten Thousand Two Hundred Dollars ($10,200.00) with respect to the sale of Property #3.

5.      The Debtor is also requesting no overbidding for the sales of Property #1, Property #2 and Property #3, given the fact that these proposed sales are made in the ordinary course of Debtor's business of developing, constructing and selling residential homes in the City of Elko, State of Nevada, and are market tested over time.

6.      Finally, Debtor seeks findings from this Court that the proposed Buyer #1, Buyer #2 and Buyer #3, or each of their assignees, is a good faith purchaser entitled to the safe harbor protections of 11 U.S.C. § 363(m) and that the fourteen-day (14) stay imposed by Fed. R. Bankr. P. 6004(h) is waived so that the sales can close as soon as practicable after an order is entered by the Court approving this Motion.

## BACKGROUND

7.      On April 3, 2026, ("**Petition Date**"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

8.      No trustee has been appointed and no official committees have been established in this case. Thus, Debtor continues to act as a Debtor-in-Possession.

9.      The Debtor is a construction company in Elko, Nevada, primarily developing, constructing and selling residential homes.  *See Schedules* [ECF No. 1].

10.      On each of the properties, specifically, Property #1, Property #2 and Property #3, Debtor borrowed monies to construct the residential real property improvements, and those construction loans are mentioned hereinbefore, and Debtor seeks authorization from this Court to pay these loans secured by Deeds of Trust described hereinbefore.

11.      Other than the Lenders' Deed of Trust on each of Property #1, Property #2 and Property #3, there are certain statutory liens for unpaid real property taxes that the Debtor is aware of, title company closing costs and fees, Mechanics Liens and purported Mechanics Liens referenced hereinbefore for each of the Property #1, Property #2 and Property #3 sales.  A copy of the Preliminary Title Report for Property #1, Property #2 and Property #3 are attached as **Exhibits "C," "G" and "K,"** respectively and incorporated herein by those references.

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

12. Prior to the Debtor's chapter 11 filing, the Debtor had entered into certain Listing Agreements with LPT Realty, which Listing Agreements are attached hereto as **Exhibits "D," "H" and "L,"** respectively, for LPT Realty to sell each of the Debtor's real properties mentioned hereinbefore.

13. The term of the Listing Agreement is through February 6, 2027, for Property #1, February 6, 2027, for Property #2 and March 22, 2027 for Property #3, and provides for a listing broker's commission of 3% of the gross selling price, unless there is a cooperating broker, in which case, the commission is increased by an additional 3% and customarily paid by the Seller.

### JURISDICTION

14. The Court has subject matter jurisdiction to consider the relief requested in this Motion pursuant to 28 U.S.C. §§ 157(a) and 1334 (b). As required by LR 7008, Debtor consents to entry by the Court of a final order on this Motion.

15. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and may be determined by the Court.

16. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### PURCHASE AND SALE AGREEMENTS

17. As stated above, the Debtor has entered into Agreement #1, Agreement #2 and Agreement #3, for the sale of Property #1, Property #2 and Property #3, respectively. With respect to the Net Proceeds that the Debtor expects to receive and/or owe as a result of the three (3) closings, as stated previously the Debtor expects to receive the approximate sum of Forty-Eight Thousand Dollars ($48,000.00) from the sale of Property #1, Debtor expects to owe the approximate sum of Thirty-Two Thousand Dollars ($32,000.00) from the sale of Property #2, Debtor expects to owe the approximate sum of Twenty-Eight Thousand Nine Hundred Forty-One Dollars ($28,941.00) in order to close the sale of Property #3, for net sales proceeds received by Debtor after the close of the three (3) properties is a negative Twelve Thousand Nine Hundred Forty-One Dollars( - $12,941.00).

It is absolutely critical for the closings of Property #1, Property #2 and Property #3, that the Notice of Lis Pendens that has been recorded against each of these improved real properties

be expunged and that no monies attach to escrow on account of these Notices of Lis Pendens being expunged.  The wife of Debtor's principal Luke Fitzgerald recorded these Lis Pendens in an attempt to garner her monies to be paid out in the parties' divorce action, which is an end-run on her securing some of the Debtor's assets in violation of the absolute priority rule.  Debtor has been advised that Buyer #1, Buyer #2 and Buyer #3 are ready to close escrow by May 15, 2026, but given the absolute need for a Court order approving each of the proposed sales, a close by May 1, 2026, has been agreed to.

18. Debtor believes the sale of each of the Property #1, Property #2 and Property #3, is in the best interest of the estate because these sales have been market tested from several years of developing, constructing and selling residential homes in the Elko, Nevada urban area. Currently, the Debtor believes  in its best business judgment that each of the real properties has been properly market tested and that the offers that the Debtor has accepted are the best and highest offers for each of Property #1, Property #2 and Property #3, and on that basis, there should be no overbidding at the hearing that considers Court approval for these sales.

**LEGAL ARGUMENT**

**A. The Debtor can assume the Agreements and Listing Agreement under 11 U.S.C. § 365 as executory contracts.**

11 U.S.C. § 365(a) permits a debtor, subject to the Court's approval, to assume any unexpired lease or executory contract. If there is any default at the time of the assumption of the contract, the debtor is required as a condition of assumption to cure the default or provide adequate assurance that the debtor will promptly cure any default. 11 U.S.C. § 365(b)(1).

The proper standard for a bankruptcy court to use in determining whether to authorize a debtor in possession or trustee to assume or reject an executory contract or lease is the "business judgment test." The United States Supreme Court originally set forth the business judgment test as the appropriate standard for court approval of the assumption or rejection of executory contracts in *Grp. of Institutional Investors v. Chicago, Milwaukee, St. Paul and Pacific R. Co.*, 318 U.S. 523, 550 (1943).

In more recent decisions, courts have overwhelmingly applied the business judgment test

as the standard for reviewing the assumption or rejection of executory contracts and unexpired leases. *See, e.g., Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1982) (affirming bankruptcy court's authorization of assumption of lease); *In re Huang*, 23 B.R. 798, 800 (B.A.P. 9th Cir. 1982) (reversing bankruptcy court's refusal to authorize rejection of contract); *In re Grayhill Resources, Inc.*, 63 B.R. 382, 384 (Bankr. D. Colo. 1986) (authorizing assumption of lease); and *Allied Technology, Inc. v. R.B. Brunemann & Sons (In re Allied Technology, Inc.)*, 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982) (authorizing assumption of lease).

In *Allied Technology*, the bankruptcy court explained the significance of the business judgment test in the context of the assumption of a lease:

> Court approval of a debtor in possession's judgment that assumption of a lease is in the best interest of the debtor's business should not be withheld on the basis of second-guessing of the debtor's judgment, unless the matter is presented in the context of 11 U.S.C. § 1104(a)(1) for the determination of the larger question of the competency of the debtor in possession's business judgment. It is not the function of the Court to operate the debtor. . .. As long as the assumption of a lease appears to enhance the debtor's estate, the **Court approval of a debtor in possession's decision to assume a lease should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code, and particularly 11 U.S.C. § 365.**

*Id*. at 495 (emphasis added).

The Debtor previously explained that it exercised its business judgment in deciding to sell Property #1, Property #2 and Property #3. *See Fitzgerald Declaration*. Accordingly, Debtor entered into Agreements #1 through #3. The Debtor made the decision to sell the three (3) houses prepetition, the three (3) houses were properly marketed and negotiated at arm's length with the proposed Buyers, and there are no facts suggesting that the Debtor's judgment is clearly erroneous or too speculative. *See id.*

Debtor is not aware of any defaults of the Listing Agreement and the Agreements that require curing. Thus, to the extent those agreements are considered to be executory and require assumption, then Debtor seeks authorization to assume the Listing Agreements and Agreements under 11 U.S.C. § 365(a). Debtor's primary remaining obligation under the Listing Agreements and Agreements are to consummate the proposed sales, which Debtor seeks to do after obtaining

this Court's authorization through this Motion. It is thus self-evident that the Debtor can perform under the agreements and can assume the Listing Agreements and Agreements.

### B. Payment to the Broker.

Next, the Debtor seeks authorization to pay LPT Realty under the Listing Agreements. As previously discussed, the consideration agreed to be paid to LPT Realty under the Listing Agreement is 3% of the gross sales prices. If another broker delivers a buyer(s) to the sale, then typically the Seller, or Debtor in this case, may pay an additional 3% sales commission due at closing.  These are standard rates in the industry, and Debtor believes the sales commissions are reasonable and necessary. Finally, this basis of compensation is authorized pursuant to sections 330 and 331of the Bankruptcy Code.

Finally, Debtor requests authorization from this Court to pay LPT Realty and any cooperating broker directly from escrow upon successful closing of the sale of the Property as set forth above and in the Listing Agreement without the necessity of filing a fee application.

### C. The proposed sale is in the best interest of the estate and should be approved.

Bankruptcy Code § 363(b)(1) provides that "the trustee [or debtor-in-possession], after notice and hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate." This provision generally allows debtors-in-possession, subject to court approval, to sell property of the estate outside of the ordinary course of business when the proposed sale is a sound exercise of debtor's business judgment and when the sale is proposed in good faith and for fair value. *Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Ernst Homes Center, Inc.*, 209 B.R. 974, 980 (Bankr. W.D. Wash. 1997); *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14 (B.A.P. 9th Cir. 1988). When a debtor articulates a reasonable basis for its business decisions, "Courts will generally not entertain objections to the debtor's conduct." *Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns- Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D. N.Y. 1986).

Rule 6004(f) of the Federal Rules of Bankruptcy Procedure provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."  A trustee [or debtor-in-possession] has broad discretion in determining the manner of sale, including whether

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

to sell property by public or private sale. *In re Canyon Partnership*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1986); *In re Frezzo*, 217 B.R. 985, 989 (Bankr. M.D. Penn. 1988). Sales of property other than in the ordinary course of business of a debtor are to be approved only after notice and a hearing. 11 U.S.C. §§ 363(a) and (b). A trustee or debtor in possession is entitled to utilize its business judgment in determining the merits of a sale such as the one contemplated in this Motion. The rule is as stated in *Southwestern Media, Inc. v. Rau*, 708 F.2d 419 (9th Cir. 1983):

> The decision concerning the form of sale therefore rested within the business judgment of the trustee. Liability will not be imposed for the exercise of such judgment, absent negligence.

*Id. (*citing *Mosser v. Darrow*, 341 U.S. 267, 272-73 (1952); *In re Cochise College Park, Inc.,* 703 F.2d 1339, 1357. (9th Cir. 1982)).

Here, the decision to sell Property #1, Property #2 and Property #3 has substantial business justification. Debtor, his advisors, and real estate broker have evaluated the three (3) houses against the current economic climate and made the strategic decision to sell the three (3) houses.

The Agreements were negotiated at arm's length, in good faith, and Debtor believes the terms are fair and reasonable after customary marketing and exposure to a broad base of potential buyers. *See Fitzgerald Declaration*. Each of the Buyers are not insiders of Debtor and the Debtor does not have any non-disclosed financial interest in the transactions contemplated by the Agreements. Debtor also believes that the prices to be paid by Buyers represent a fair and reasonable consideration for each of the three (3) houses.

Debtor further requests that the Court authorize the sale of the Property #1, Property #2 and Property #3 free and clear of all liens, claims, and encumbrances which may be asserted against the three (3) houses, pursuant to 11 U.S.C. §§ 363(b) and (f), with any disputed liens, claims, and encumbrances, except the Notice of Lis Pendens, to attach to the proceeds of the sales. Debtor requests that the Notice of Lis Pendens should be cancelled by this Court, given that its maintenance  is in violation of NRS § 14.010.

The Buyers will only buy the Properties if it is free and clear of liens. Section 363(f) of the Bankruptcy Code provides a mechanism whereby assets of the estate may be sold

unencumbered while at the same time protecting the interests of secured creditors. Pursuant to 11 U.S.C. § 363(f), the Debtor may sell property of the estate free and clear of any interest in such property of an entity other than the estate, only if…

> (1) Applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) Such entity consents;
>
> (3) Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) Such interest is in bona fide dispute; or
>
> (5) Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). In the interests of full disclosure, the Debtor's principal Luke Fitzgerald, is a Plaintiff in a divorce action with his wife Lisa Jane Turner, as Defendant, in Case No. DC-FM-25-126, in the Fourth Judicial District Court of the State of Nevada, In and For the County of Elko. In that divorce proceeding, the Plaintiff and Defendant entered into a Stipulation And Order Following Case Management Conference, filed July 28, 2025, and attached hereto as **Exhibit "M,"** and incorporated herein by that reference. This Stipulation And Order Following Case Management Conference followed an Ex Parte Order Preventing Dissipation Of Assets, entered on April 11, 2025, attached hereto as **Exhibit "N,"** and incorporated herein by that reference

In the proposed sales, Debtor anticipates that the Lenders will consent to the sales closing based on full payment on account of their secured first priority deeds of trust.

In summary, the Court can order a sale of the Property #1, Property #2 and Property #3, free and clear of any liens, claims, and encumbrances under 11 U.S.C. § 363(f).

**D. The Buyer is a good faith purchaser subject to safe harbor provisions.**

The Agreements were negotiated at arm's length, in good faith, and the Debtor believes their terms are fair and reasonable as dictated by current market conditions. There are no known insider connections between the proposed Buyer #1, Buyer #2 and Buyer #3 and the Debtor. Accordingly, the proposed Buyer #1, Buyer #2 and Buyer #3, or their assignees, is each a good

faith purchaser and subject to the protections afforded to it pursuant to 11 U.S.C. § 363(m).

**E. Debtor seeks a waiver of the 14-day stay under Fed. R. Bankr. P. 6004(h).**

Any order approving the use or sale of estate property is subject to a 14-day stay under Fed. R. Bankr. P. 6004(h). Debtor seeks a waiver of the 14-day stay to permit the Debtor to close escrow as soon as possible as expected by the proposed Buyers and to avoid any alleged default by the Debtor under the Agreements. The sale will allow the Debtor to perform under the Agreements, thus reducing potential liabilities against the estate, and will also provide for payment to the Lenders, reduce ongoing expenses related to maintaining and preserving the Properties and overall reduce the Debtor's scheduled debts. Accordingly, cause exists for the Court to waive the stay so that an order is immediately effective upon entry by the Court.

**CONCLUSION**

As set forth above, the proposed sale is in the best interest of the estate and is the result of the sound exercise of the Debtor's business judgment. In conclusion, the Debtor respectfully requests entry of an Order, detailed as follows:

a) Authorize the Debtor to sell its improved real property located at 2427 N. 5th Street, Elko, Nevada 89801, APN# 001-61M-007 ("Property #1"), for the purchase price of Three Hundred Forty-Seven Thousand Dollars ($347,000.00), pursuant to a Residential Purchase Agreement with Addendum #1 ("Agreement #1"), to Buyer Galia Meiri ("Buyer #1");

b) Authorize the Debtor to sell its improved real property located at 2511 N. 5th Street, Elko, Nevada 89801, APN# 001-61M-023 ("Property #2"), for the purchase price of Three Hundred Forty Thousand Dollars ($340,000.00), pursuant to a Residential Purchase Agreement with Counteroffer #1 and Counteroffer #2 ("Agreement #2"), to Buyer Luna Estela Caballero ("Buyer #2");

c) Authorize the Debtor to sell its improved real property located at 2519 N. 5th Street, Elko, Nevada 89801, APN# 001-61M-025 ("Property #3"), for the purchase price of Three Hundred Forty Thousand Dollars ($340,000.00), pursuant to a Residential

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

15

Purchase Agreement and Counteroffer ("Agreement #3"), to Buyer Feras Elias ("Buyer #3");

d) Authorize the Debtor to perform all its obligations with respect to the proposed sale of "Property #1," pursuant to Agreement #1 and with Buyer #1, for a purchase price of Three Hundred Forty-Seven Thousand Dollars ($347,000.00), with closing to occur on or before April 30, 2026, or as soon thereafter as practicable. Debtor is authorized to pay the Liens that need to be paid in the approximate amount Two Hundred Fifty-Three Thousand Dollars ($253.000.00) plus accruing interest and fees, to Mortgage Electronic Registrations Systems, acting solely as nominee for Sound Capital Loans, LLC, which Lender has a Deed of Trust recorded against Property #1 that secures an indebtedness in the principal amount of Two Hundred Fifty-Three Thousand Dollars ($253.000.00), dated February 28, 2025, and recorded on February 28, 2025, in the Official Records No. 847052 in the County of Elko, State of Nevada. The Debtor anticipates net proceeds due Debtor after the close of escrow of approximately Forty-Eight Thousand Dollars ($48,000.00);

e) Authorize the Debtor to perform all its obligations with respect to the proposed sale of "Property #2," pursuant to Agreement #2 with Buyer #2, for a purchase price of Three Hundred Forty Thousand Dollars ($340,000.00), with closing to occur on or before April 30, 2026, or as soon thereafter as practicable. Debtor is authorized to pay the Liens that need to be paid approximate Two Hundred Sixty-Two Thousand Five Hundred Dollars ($262,500.00) plus accruing interest and fees, to Sound Capital Passive Income Fund LLC, which Lender has a Deed of Trust recorded against Property #2 that secures an indebtedness in the principal amount of Two Hundred Sixty-Two Thousand Five Hundred Dollars ($262,500.00) dated March 21, 2025, recorded on March 25, 2025, in the Official Records No. 847761 in the County of Elko, State of Nevada. Other liens that require payment at the close of escrow include past due taxes in the amount of Five Hundred Seventy-One Dollars and Seventy-Seven Cents ($571.77) to the Elko County Treasurer, Three Hundred Fifty Dollars ($350.00)

to Air Tight LLC for release of a Mechanics Lien, Six Thousand One Hundred Eighteen Dollars and Eight Cents ($6,118.08) to Alside Supply Center for release of a Mechanics Lien, Five Thousand Three Hundred Ninety-Four Dollars ($5,394.00) to Elko Truss for release of a Mechanics Lien, Three Thousand Eighteen Dollars and Twenty-Five Cents ($3,018.25) to Harney Rock and Paving Co. for a release of a Mechanics Lien, Seventy Dollars and Seventy-Nine Cents ($70.79) to Lindsay Eindow & Door LLC for a release of a Mechanics Lien, Three Thousand Two Hundred Seventy-Eight Dollars and Forty Cents ($3,278.40) to Parker Solutions LLC for release of a Mechanics Lien, Twenty-Nine Thousand Eight Hundred Forty-Four Dollars and Twenty-Three Cents ($29,844.23) to Quality Truss and Lumber for release of a Mechanics Lien, Three Thousand Nine Hundred Dollars ($3,900.00) to Simply Topzz for release of a Mechanics Lien, Six Hundred Twelve Dollars and Nine Cents ($612.09) to Triple S-Steel for release of a Mechanics Lien and Three Thousand Nine Hundred Thirty-One  Dollars and Sixty-Seven Cents ($3,931.67) to Western Nevada Supply for release of a Mechanics Lien.  The Debtor anticipates net payment due from Debtor after the close of escrow of approximately Thirty-Two Thousand Dollars ($32,000.00); and

d)  Authorize the Debtor to perform all its obligations with respect to the proposed sale of "Property #3", pursuant to Agreement #3 with Buyer #3, for a purchase price of Three Hundred Forty Thousand Dollars ($340,000.00), with closing to occur on or before May 15, 2026, or as soon thereafter as practicable.  Debtor is authorized to pay the Lien that needs to be paid approximate  Two Hundred Eighty-One Thousand Eight Hundred Twenty-Nine and Seventy Cents ($281,829.70) plus accruing interest and reasonable fees, to Sound Capital, which Lender has a Deed of Trust recorded against Property #3 that secures an indebtedness in the principal amount of Two Hundred Sixty-Two Thousand Five Hundred Dollars ($262,500.00) dated March 21, 2025, recorded on March 25, 2025, in the Official Records No. 847760 in the County of Elko, State of Nevada, and thereafter assigned to FCI Lender Services.  Other liens

that require payment at the close of escrow include past due taxes in the amount of Five Hundred Seventy-One Dollars and Seventy-Seven Cents ($571.77) to the Elko County Treasurer, Six Thousand One Hundred Eighteen Dollars and Eight Cents ($6,118.08) to Alside Supply Center, Salt Lake City Division of Associated Materials LLC, for release of a Mechanics Lien, Three Thousand Fifty Dollars ($3,050.00) to Elko Overhead Door LLC for release of a Mechanics Lien, Five Thousand Three Hundred Ninety-Four ($5,394.00) to Elko Truss for release of a Mechanics Lien, Three Thousand Six Hundred Ninety-Four Dollars and Ninety-Five Cents ($3,694.95) to Harney Rock and Paving Co. for a release of a Mechanics Lien, Three Thousand Two Hundred Seventy-Nine Dollars ($3,279.00) to Parker Solutions LLC for release of a Mechanics Lien, Twenty-Seven Thousand Two Hundred Ninety-Two Dollars and Thirty-Six Cents ($27,292.36) to Quality Truss and Lumber for release of a Mechanics Lien, Three Thousand Nine Hundred Dollars ($3,900.00) to Simply Topzz for release of a Mechanics Lien and Four Thousand Seven Hundred Seventy-Nine Dollars and Fifty Cents ($4,779.50) to Western Nevada Supply for release of a Mechanics Lien. The Debtor anticipates net payment due from Debtor after the close of escrow of approximately Twenty-Eight Thousand Nine Hundred Forty-One Dollars ($28,941.00).

f) The Debtor is authorized to have no overbidding for the sales of Property #1, Property #2 and Property #3, given the fact that these proposed sales are in the ordinary course of Debtor's business of developing, constructing and selling residential homes in the City of Elko, State of Nevada;

g) This Court finds that the proposed Buyer #1, Buyer #2 and Buyer #3, or each of their assignees, is a good faith purchaser entitled to the safe harbor protections of 11 U.S.C. § 363(m) and that the fourteen-day stay imposed by Fed. R. Bankr. P. 6004(h) is waived so that the sales can close as soon as practicable after an order is entered by the Court approving this Motion;

h) waiving the 14-day stay under Fed. R. Bankr. P. 6004(h) so that the order approving

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

this Motion is immediately effective upon its entry on the Court's docket; and

i)   granting any other relief the Court deems appropriate.

DATED May 6, 2026.

HARRIS LAW PRACTICE LLC

*/s/ Stephen R. Harris*

_____

STEPHEN R. HARRIS, ESQ.
Attorneys for Debtor

# EXHIBIT "A"

dotloop signature verification: dtlp.us/Y6R7-fpW8-sjru

 

## RESIDENTIAL PURCHASE AGREEMENT

### (Joint Escrow Instructions)

Date 03/19/2026

Galia Meiri ("Buyer", hereby offers to purchase

2427 N 5th St, Elko, NV 89801 ("Property"),

within the city or unincorporated area of Elko , County of Elko ,

State of Nevada, Zip 89801     A.P.N # 00161M007 for the purchase price of

$ 355000     (Three hundred fifty five thousand (dollars) ("Purchase Price")

on the terms and conditions contained herein: BUYER ☐ does -OR- ☑ does not intend to occupy the Property as a residence.

---

## Buyer's Offer

**1.    FINANCIAL TERMS & CONDITIONS:**

$3500    **A. EARNEST MONEY DEPOSIT ("EMD")** is evidenced by:
☐ Check          ☐ Wire transfer          ☑ Other:TBD
The EMD shall be deposited within one (1) or _____ business day(s) following the date of Acceptance (as defined in Section 24) into the account of:-: ☑ Escrow Holder, ☐ Buyer's Broker Trust Account **OR** ☐ Seller's Broker's Trust Account.

$_____    **B. ADDITIONAL DEPOSIT** to be placed in escrow on or before (date) _____. The additional deposit ☐ will —**OR**— ☐ will not be considered part of the EMD. (Any conditions on the additional deposit should be set forth in Section 30 herein.)

$_____    **C. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING FOR A <u>NEW LOAN</u>:**
☐ Conventional, ☐ FHA, ☐ VA, ☐ Other (specify) _____.

$_____    **D. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING TO <u>ASSUME THE FOLLOWING EXISTING LOAN(s)</u>:**
☐ Conventional, ☐ FHA, ☐ VA, ☐ Other (specify) _____.
Interest: ☐ Fixed rate, _____ years —OR— ☐ Adjustable Rate, _____ years. Seller further agrees to provide the Promissory Note and the most recent monthly statement of all loans to be assumed by Buyer within FIVE (5) calendar days following the date of Acceptance.

$_____    **E. BUYER TO EXECUTE A <u>PROMISSORY NOTE SECURED BY DEED OF TRUST</u> PER TERMS IN THE "FINANCING ADDENDUM" which is attached hereto.**

$_____    **F. BALANCE OF PURCHASE PRICE** (Balance of Down Payment) in Good Funds to be paid prior to Close of Escrow ("COE").

$355000    **G. TOTAL PURCHASE PRICE** (This price DOES NOT include closing costs, prorations, or other fees and costs associated with the purchase of the Property as defined herein.

---

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name(s): Galia Meiri _____ BUYER(S) INITIALS: [GM] [ ] [ ] [ ]

Property Address: 2427 N 5th St, Elko, NV 89801 _____ SELLER(S) INITIALS [ ] [ ] [ ] [ ]

Residential Purchase Agreement Rev. 10/25     ©2025 Greater Las Vegas Association of REALTORS®

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com

dotloop signature verification: dtlp.us/Y6R7-fpW8-sjru

2. **BUYER REPRESENTATIVE/BUYER BROKER COMPENSATION:** At the close of escrow or the exchange of the subject property, Seller shall pay the Buyer's Representative/Buyer's Broker ("Buyer's Representative/Buyer's Broker") 3_____% of the gross sales price of the property or $_____. Upon execution of this Residential Purchase Agreement or subsequent Counter Offer(s), this clause is no longer negotiable exclusively between Buyer and Seller and any modification thereafter must be ratified in writing by the Buyer's Representative/Buyer's Broker.

3. **ADDITIONAL FINANCIAL TERMS & CONTINGENCIES:**

   A. **NEW LOAN APPLICATION:** Within 1_____ business days following the date of Acceptance, Buyer agrees to (1) submit completed loan application to a lender of Buyer's choice and (2) furnish a preapproval letter to Seller based upon a standard factual credit report and review of debt-to-income ratios. If Buyer fails to complete any of these conditions within the applicable time frame, Seller reserves the right to terminate this Agreement. In such event, both parties agree to cancel the escrow and return EMD to Buyer. Buyer shall use Buyer's best efforts to obtain financing under the terms and conditions outlined in this Agreement.

   B. **APPRAISAL CONTINGENCY:** Buyer's obligation to purchase the property is contingent upon the property appraising for not less than the Purchase Price. If after the completion of an appraisal by a licensed appraiser, Buyer receives written notice from the lender or the appraiser that the Property has appraised for less than the purchase price (a "Notice of Appraised Value") Buyer may attempt to renegotiate or cancel the RPA by providing written notice to the Seller (with a copy of the Appraisal) no later than 30_____ calendar days following the date of Acceptance of the RPA; whereupon Buyer is entitled to a whole refund of their EMD, referenced in Section 1(A), by a fully cooperated and executed cancellation of escrow instructions and the release of Buyer's funds through their reserved right to cancel pursuant to this contingency per NRS 645A.175. **IF this Residential Purchase Agreement is not cancelled, in writing on or before the Appraisal Deadline, Buyer shall be deemed to have waived the appraisal contingency.**

   C. **LOAN CONTINGENCY:** Buyer's obligation to purchase the property is contingent upon Buyer obtaining the loan referenced in Section 1(C) or 1(D) of the RPA unless otherwise agreed in writing. Buyer shall remove the loan contingency in writing, attempt to renegotiate, or cancel the RPA by providing written notice to the Seller no later than -_____ calendar days following the date of Acceptance of the RPA; whereupon Buyer is entitled to a whole refund of their EMD, referenced in Section 1(A), by a fully cooperated and executed cancellation of escrow instructions and the release of Buyer's funds through their reserved right to cancel pursuant to this contingency per NRS 645A.175. **IF this Residential Purchase Agreement is not cancelled, in writing on or before the Loan Contingency Deadline, Buyer shall be deemed to have waived the loan contingency.**

   D. **CASH PURCHASE:** Within -_____ business days following the date of Acceptance, Buyer agrees to provide written evidence from a bona fide financial institution of sufficient cash available to complete this purchase. If Buyer does not submit the written evidence within the above period, Seller reserves the right to terminate this Agreement.

4. **SALE OF OTHER PROPERTY:**

   A. This Agreement is NOT contingent upon the sale of any property owned by the Buyer. —OR—

   B. ☐ (if checked): The attached Contingent Upon Sale Addendum is hereby incorporated into this agreement.

5. **FIXTURES AND PERSONAL PROPERTY:** The following items will be transferred, free of liens, with the sale of the Property with no real value unless stated otherwise herein. Unless an item is covered under Section 8(F) of this Agreement, all items are transferred in an "AS IS" condition. All EXISTING fixtures and fittings including, but not limited to: electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fan(s), fireplace insert(s), gas logs and grates, solar power system(s), built-in appliance(s) including ranges/ovens, window and door screens, awnings, shutters, window coverings, attached floor covering(s), television antenna(s), satellite dish(es), private integrated telephone systems, air coolers/conditioner(s), pool/spa equipment, garage door opener(s)/remote control(s), mailbox, in-ground landscaping, trees/shrub(s), water softener(s), water purifiers, security systems/alarm(s).

   The following additional items of personal property are also included:

   Furnishings and appliances to remain with the home at no monetary value.

   _____

   _____

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name(s): Galia Meiri _____ _BUYER(S) INITIALS

Property Address: 2427 N 5th St, Elko, NV 89801 _____ _SELLER(S) INITIALS:

Residential Purchase Agreement Rev. 10/25    ©2025 Greater Las Vegas Association of REALTORS®

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com

dotloop signature verification: dtlp.us/Y6R7-fpW8-sjru

**6.  ESCROW:**

**A.  OPENING OF ESCROW:** The purchase of the Property shall be consummated through Escrow ("Escrow"). Opening of Escrow shall take place by the end of one (1) business day following the date of Acceptance of this Agreement ("Opening of Escrow"), at Landmark Title _____ title or escrow company ("Escrow Company" or "ESCROW HOLDER") with Breanna Keil _____ ("Escrow Officer") (or such other escrow officer as Escrow Company may assign). Opening of Escrow shall occur upon Escrow Company's receipt of this fully accepted Agreement. ESCROW HOLDER is instructed to notify the Parties (through their respective Agents) of the opening date and the Escrow Number.

**B.  EARNEST MONEY:** Following the date of Acceptance, Buyer's EMD as shown in Section 1(A), and 1(B) if applicable, of this Agreement, shall be deposited pursuant to the language in Section 1(A) and 1(B) if applicable, and subject to NRS 645A.175.

**C.  CLOSE OF ESCROW:** Close of Escrow ("COE") shall be on or before 04/30/2026 _____ (date). If the designated date falls on a weekend or holiday, COE shall be the next business day.

**D. IRS DISCLOSURE:** Seller is hereby made aware that there is a regulation that requires all ESCROW HOLDERS to complete a modified 1099 form, based upon specific information known only between parties in this transaction and the ESCROW HOLDER. Seller is also made aware that ESCROW HOLDER is required by federal law to provide this information to the Internal Revenue Service after COE in the manner prescribed by federal law.

**7.  TITLE INSURANCE:** This Purchase Agreement is contingent upon the Seller's ability to deliver, good and marketable title as evidenced by a policy of title insurance, naming Buyer as the insured in an amount equal to the purchase price, furnished by the title company identified in Section 6(A). Said policy shall be in the form necessary to effectuate marketable title or its equivalent and shall be paid for as set forth in Section 9(A).

**8.  BUYER'S DUE DILIGENCE:** Buyer's obligation ☑is –OR–☐is not conditioned on the Buyer's Due Diligence as defined in this section 8(A) below. This condition is referred to as the "Due Diligence Condition". If checked in the affirmative, Sections 8 (A) through (C) shall apply. Otherwise, they do not. Buyer shall have 15 ____ calendar days following the date of Acceptance of the RPA (as defined in Section 24 herein) to complete Buyer's Due Diligence. Seller agrees to cooperate with Buyer's Due Diligence. **Seller shall ensure that all necessary utilities (gas, power and water) and all operable pilot lights are on for Buyer's investigations and through the close of escrow.**

**A.  PROPERTY INSPECTION/CONDITION:** During the Due Diligence Period, Buyer shall take such action as Buyer deems necessary to determine whether the Property is satisfactory to Buyer, including, but not limited to, whether the Property is insurable to Buyer's satisfaction, whether there are unsatisfactory conditions surrounding or otherwise affecting the Property (such as location of flood zones, airport noise, noxious fumes or odors, environmental substances or hazards, whether the Property is properly zoned, locality to freeways, railroads, places of worship, schools, golf courses, etc.) or any other concerns Buyer may have related to the Property. During such Period, Buyer shall have the right to conduct, non-invasive/ non-destructive inspection of all structural, roofing, mechanical, electrical, plumbing, heating/air conditioning, water/well/septic, pool/spa, survey, square footage, and any other property or systems, through licensed and bonded contractors or other qualified professionals. Seller agrees to provide reasonable access to the Property to Buyer and Buyer's inspectors. Buyer agrees to indemnify and hold Seller harmless with respect to any injuries suffered by Buyer or third parties present at Buyer's request while on Seller's Property conducting such inspections, tests or walk-throughs. Buyer's indemnity shall not apply to any injuries suffered by Buyer or third parties present at Buyer's request that are the result of an intentional tort, gross negligence or any misconduct or omission by Seller, Seller's Agent or other third parties on the Property. Buyer is advised to consult with appropriate professionals regarding neighborhood or Property conditions, including but not limited to: schools, proximity and adequacy of law enforcement; proximity to commercial, industrial, or agricultural activities; crime statistics; fire protection; other governmental services; existing and proposed transportation; construction and development; noise or odor from any source; and other nuisances, hazards or circumstances. If Buyer cancels this Agreement due to a specific inspection report, Buyer shall provide Seller at the time of cancellation with a copy of the report containing the name, address, and telephone number of the inspector.

**B.  BUYER'S RIGHT TO CANCEL OR RESOLVE OBJECTIONS:** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 8, cancel the Residential Purchase Agreement by providing written notice to the Seller, whereupon Buyer is entitled to a whole refund of their EMD, referenced in Section 1(A), by

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name(s): Galia Meiri                                          BUYER(S) INITIALS: [GM] [ ] [ ] [ ]

Property Address: 2427 N 5th St, Elko, NV 89801                      SELLER(S) INITIALS: [ ] [ ] [ ] [ ]

Residential Purchase Agreement Rev. 10/25                            ©2025 Greater Las Vegas Association of REALTORS®

Page 3 of 11

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com

dotloop signature verification: dtlp.us/Y6R7-fpW8-sjru

a fully cooperated and executed cancellation of escrow instructions and the release of Buyer's funds through their reserved right to cancel pursuant to this provision (NRS 645A.175) or (ii) no later than the Due Diligence Deadline referenced in Section 8, resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

**C. FAILURE TO CANCEL OR RESOLVE OBJECTIONS:** If Buyer fails to cancel the Residential Purchase Agreement or fails to resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 8, **Buyer shall be deemed to have waived the Due Diligence Condition.**
BUYER'S INITIALS: [ *GM* ] [ ] [ ] [ ]

**D. INSPECTIONS:** Acceptance of this offer is subject to the following reserved right. Buyer may have the Property inspected and select the licensed contractors, certified building inspectors and/or other qualified professionals who will inspect the Property. Seller will ensure that necessary utilities (gas, power and water and all operable pilot lights) are turned on and supplied to the Property within two (2) business days following the date of Acceptance of this Agreement, to remain on until close of escrow ("COE"). It is strongly recommended that Buyer retain licensed Nevada professionals to conduct inspections. If any inspection is not completed and requests for repairs are not delivered to Seller within the Due Diligence Period, Buyer is deemed to have waived the right to that inspection and Seller's liability for the cost of all repairs that inspection would have reasonably identified had it been conducted, except as otherwise provided by law. The foregoing expenses for inspections will be paid outside of Escrow unless the Parties present instructions to the contrary prior to COE, along with the applicable invoice. (Identify which party shall pay for the inspection noted below either: SELLER, BUYER,50/50, WAIVED OR N/A.)

| Type | Paid By | Type | Paid By | Type | Paid By |
|---|---|---|---|---|---|
| Home Inspection | Buyer | Termite Inspection | NA | Soil Inspection | NA |
| Pool/Spa Inspection | NA | Pest Inspection | NA | Survey (type): | NA |
| Roof Inspection | NA | Septic Lid Removal | NA | Fungal Contaminant | NA |
| HVAC/Furnace Inspection | NA | Septic Pumping | NA | Air Quality Testing | NA |
| Electrical Inspection | NA | Septic Inspection | NA | Radon Testing | NA |
| Plumbing/Sewer Inspection | NA | Well Inspection | NA | Lead Based Paint Testing | NA |
| Structural Inspection | NA | Water Quality Report | NA | Elevator | NA |
| Wood-Burning Device / Chimney Inspection | NA | Water Quantity Report | NA | Other: | |

**E. ADDITIONAL INSPECTIONS AND/OR CERTIFICATIONS:** In the event an inspection reveals areas of concern with the roof, septic system, well, wood burning device/chimney or the possible presence of a fungal contaminant, or any other issue/concern that was discovered on the home inspection or any other disclosures per section 12, Buyer reserves the right to require a certification or additional inspections within their due diligence period. The expenses for certifications or additional inspections will be paid outside of Escrow unless the Parties present instructions to the contrary prior to COE (along with the applicable invoice). A certification is not a warranty.

**F. BUYER'S REQUEST FOR REPAIRS:** It is Buyer's responsibility to inspect the Property sufficiently as to satisfy Buyer's use. Buyer reserves the right to request repairs, based upon the Seller's Real Property Disclosure or items which materially affect value or use of the Property revealed by an inspection, certification or appraisal. Items of a general maintenance or cosmetic nature which do not materially affect value or use of the Property, which existed at the time of Acceptance, and which are not expressly addressed in this Agreement are deemed accepted by the Buyer, except as otherwise provided in this Agreement. The Brokers herein have no responsibility to assist in the payment of any repair, correction or deferred maintenance on the Property which may have been revealed by the above inspections, agreed upon by the Buyer and Seller or requested by one party.

9.    **FEES, AND PRORATIONS** (Identify which party shall pay the costs noted below either: SELLER, BUYER, 50/50, WAIVED or N/A.)

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.
Buyer's Name(s): _Galia Meiri_

BUYER(S) INITIALS [ *GM* ] [ ] [ ] [ ]

Property Address: 2427 N 5th St, Elko, NV 89801
SELLER(S) INITIALS: [ *JF* ] [ ] [ ] [ ]
Residential Purchase Agreement Rev. 10/25
©2025 Greater Las Vegas Association of REALTORS®

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com

dotloop signature verification: dtlp.us/Y6R7-fpW8-sjru

**A. TITLE, ESCROW & APPRAISAL FEES:**

| Type | Paid By | Type | Paid By | Type | Paid By |
|---|---|---|---|---|---|
| Escrow Fees | 50/50 | Lender's Title Policy | Buyer | Owner's Title Policy | Seller |
| Real Property Transfer Tax | Seller | Appraisal | Buyer | Other: | |

**B. PRORATIONS:** Any and all rents, taxes, interest, homeowner association fees, trash service fees, sewer service fees, payments on bonds, SIDs, LIDs, and assessments assumed by the Buyer, and other expenses of the property shall be prorated as of the date of the recordation of the deed. Security deposits, advance rentals or considerations involving future lease credits shall be credited to the Buyer. All prorations will be based on a 30-day month and will be calculated as of COE. Prorations will be based upon figures available at closing. Any supplements or adjustments that occur after COE will be handled by the parties outside of Escrow.

**C. PRELIMINARY TITLE REPORT:** Within ten (10) business days of Opening of Escrow, Title Company shall provide Buyer with a Preliminary Title Report ("PTR") to review, which must be approved or rejected within five (5) business days of receipt thereof. If Buyer does not object to the PTR within the period specified above, the PTR shall be deemed accepted. If Buyer makes an objection to any item(s) contained within the PTR, Seller shall have five (5) business days after receipt of objections to correct or address the objections. If, within the time specified, Seller fails to have each such exception removed or to correct each such objection, Buyer shall have the option to: (a) terminate this Agreement by providing notice to Seller and Escrow Officer, entitling Buyer to a refund of the EMD or (b) elect to accept title to the Property as is. All title exceptions approved or deemed accepted are hereafter collectively referred to as the "Permitted Exceptions."

**D. CLOSING FEES:** In addition to the Seller's expenses identified in this Agreement, Seller agrees to contribute: ☑ $15000_____, or ☐_____% of the total purchase price toward Buyer's closing costs. These costs may include, but are not limited to: lender fees, title and escrow fees, and the Buyer's recurring or non-recurring closing expenses.

**E. HOME PROTECTION PLAN:** Buyer and Seller acknowledge that they have been made aware of Home Protection Plans that provide coverage to Buyer after COE. **Buyer ☐ waives –OR– ☑ requires** a Home Protection Plan with 1 year new home warranty through Koinonia Construction Inc . **☑ Seller –OR– ☐ Buyer** will pay for the Home Protection Plan at a price not to exceed $ 0_____. **Buyer** will order the Home Protection Plan. Neither Seller nor Brokers make any representation as to the extent of coverage or deductibles of such plans.

**10.    TRANSFER OF TITLE:** Upon COE, Buyer shall tender to Seller the agreed upon Purchase Price, and Seller shall tender to Buyer marketable title to the Property free of all encumbrances other than (1) current real property taxes, (2) covenants, conditions and restrictions (CC&R's) and related restrictions, (3) zoning or master plan restrictions and public utility easements; and (4) obligations assumed, and encumbrances accepted by Buyer prior to COE. Buyer is advised the Property may be reassessed after COE which may result in a real property tax increase or decrease.

**11.    COMMON-INTEREST COMMUNITIES:** If the Property is subject to a Common Interest Community ("CIC"), **Seller shall provide AT SELLER'S EXPENSE the CIC documents as required by NRS 116.4109** (collectively, the "resale package"). Seller shall request the resale package within two (2) business days following the date of Acceptance and provide the same to Buyer within one (1) business day of Seller's receipt thereof.
- **Pursuant to NRS 116.4109, Buyer may cancel this Agreement without penalty until midnight of the fifth (5th) calendar day following the date of receipt of the resale package.** If Buyer elects to cancel this Agreement pursuant to this statute, he/she must deliver, via hand delivery, prepaid U.S. mail, or electronic transmission, a written notice of cancellation to Seller or his or her authorized agent.
- **If Buyer does not receive the resale package within fifteen (15) calendar days following the date of Acceptance, this Agreement may be cancelled in full by Buyer without penalty.** Notice of cancellation shall be delivered pursuant to Section 25 of the RPA.
- Upon such written cancellation, Buyer shall promptly receive a refund of the EMD. The parties agree to execute any documents requested by ESCROW HOLDER to facilitate the refund. If written cancellation is not received within the specified time period, the resale package will be deemed approved. Seller shall pay all outstanding CIC fines or penalties at COE.

**A. CIC RELATED EXPENSES:** (Identify which party shall pay the costs noted below either: SELLER, BUYER, 50/50, WAIVED or N/A.)

| Type | Paid By | Type | Paid By |
|---|---|---|---|

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name(s): Galia Meiri

Property Address: 2427 N 5th St, Elko, NV 89801
Residential Purchase Agreement Rev. 10/25

BUYER(S) INITIALS: [GM]  [ ]  [ ]  [ ]

SELLER(S) INITIALS: [JF]  [ ]  [ ]  [ ]

©2025 Greater Las Vegas Association of REALTORS®

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com

dotloop signature verification: dtlp.us/Y6R7-fpW8-sjru

| CIC Demand | NA | CIC Capital Contribution | NA |
|---|---|---|---|
| Final Inspection Fee | NA | CIC Transfer Fee/Setup Fee | NA |

12. **DISCLOSURES: Within five (5) calendar days following the date of Acceptance of this Agreement, Seller will provide the following Disclosures and/or documents. Check applicable boxes.**

☑ **Seller Real Property Disclosure Form:** (NRS 113.130)
☐ **Open Range Disclosure:** If seller has marked "Yes" to paragraph 2(g) of the Sellers real property disclosure (NRS 113.130)
☐ **Construction Defect Claims Disclosure:** If Seller has marked "Yes" to Paragraph 1(d) of the Sellers Real Property Disclosure Form (NRS 40.688)
☐ **Lead-Based Paint Disclosure and Acknowledgement:** required if constructed before 1978 (24 CFR 745.113)
☐ **"Hey..." It's A Smart Home Disclosure**
☐ **Solar Panel Addendum (Photovoltaic-PV)**
☑ **Other:** (list) CIC                                                   .

13. **FAIR HOUSING COMPLIANCE AND DISCLOSURES:** All properties are offered without regard to race, color, religion, sex, national origin, age, gender identity or expression, familial status, sexual orientation, ancestry, or handicap and any other current requirements of federal or state fair housing laws.

14. **WALK-THROUGH INSPECTION OF PROPERTY:** Buyer is entitled under this Agreement to a walk-through of the Property within 3____ calendar days prior to COE to ensure the Property and all major systems, appliances, heating/cooling, plumbing and electrical systems and mechanical fixtures are as stated in Seller's Real Property Disclosure Statement, and that the Property and improvements are in the same general condition as when this Agreement was Accepted by Seller and Buyer. To facilitate Buyer's walk-through, Seller is responsible for keeping all necessary utilities on, including all operable pilot lights. If any systems cannot be checked by Buyer on walk-through due to non-access or no power/gas/water, then Buyer reserves the right to hold Seller responsible for defects which could not be detected on walk-through because of lack of such access or power/gas/water. The purpose of the walk-through is to confirm (a) the Property is being maintained (b) repairs, if any, have been completed as agreed, and (c) Seller has complied with Seller's other obligations. **If Buyer elects not to conduct a walk-through inspection prior to COE, then all systems, items and aspects of the Property are deemed satisfactory, and Buyer releases Seller's liability for costs of any repair that would have reasonably been identified by a walk-through inspection, except as otherwise provided by law.**

15. **DELIVERY OF POSSESSION:** Seller shall deliver the Property along with any keys, alarm codes, garage door opener/controls and, if freely transferable, parking permits and gate transponders outside of Escrow, upon COE. Seller agrees to vacate the Property and leave the Property in a neat and orderly, broom-clean condition and tender possession no later than ☑ COE –OR–-- _____ . In the event Seller does not vacate the Property by this time, Seller shall be considered a trespasser in addition to Buyer's other legal and equitable remedies. Any personal property left on the Property after the date indicated in this section shall be considered abandoned by Seller.

16. **RISK OF LOSS:** Risk of loss shall be governed by NRS 113.040. This law provides generally that if all or any material part of the Property is destroyed before transfer of legal title or possession, Seller cannot enforce the Agreement and Buyer is entitled to recover any portion of the sale price paid. If legal title or possession has transferred, risk of loss shall shift to Buyer.

17. **ASSIGNMENT OF THIS AGREEMENT:** Unless otherwise stated herein, this Agreement is non-assignable unless agreed upon in writing by all parties.

18. **CANCELLATION OF AGREEMENT:** In the event this Agreement is properly cancelled in accordance with the terms contained herein, the Buyer is entitled to a whole refund of their EMD, referenced in Section 1(A), by a fully cooperated and executed cancellation of escrow instructions. Neither Buyer nor Seller will be reimbursed for any expenses incurred in conjunction with due diligence, inspections, appraisals or any other matters pertaining to this transaction (unless otherwise provided herein or except as otherwise provided by law).

19. **DEFAULT:**

**Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**
Buyer's Name(s): Galia Meiri                                    BUYER(S) INITIALS: [initials]

Property Address: 2427 N 5th St, Elko, NV 89801                SELLER(S) INITIALS: [initials]
Residential Purchase Agreement Rev. 10/25                      ©2025 Greater Las Vegas Association of REALTORS®

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com

dotloop signature verification: dtlp.us/Y6R7-fpW8-sjru

**A. MEDIATION:** Before any legal action is taken to enforce any term or condition under this Agreement, the parties agree to engage in mediation, a dispute resolution process, through a mediator mutually agreed upon by the parties. Mediation fees, if any, shall be divided equally among the parties involved. Notwithstanding the foregoing, in the event the Buyer finds it necessary to file a claim for specific performance, this section shall not apply. Each party is encouraged to have an independent lawyer of their choice review this mediation provision before agreeing thereto. By initialing below, the parties confirm that they have read and understand this section and voluntarily agree to the provisions thereof.

**BUYER(s) INITIALS:** [GM] /[  ] /[  ] /[  ]   **SELLER(s) INITIALS:** [JF] /[  ] /[  ] /[  ]

**B. IF SELLER DEFAULTS:** If Seller defaults in performance under this Agreement, Buyer reserves all legal and/or equitable rights (such as specific performance) against Seller, and Buyer may seek to recover Buyer's actual damages incurred by Buyer due to Seller's default.

**C. IF BUYER DEFAULTS:** If Buyer defaults in performance under this Agreement, as Seller's sole legal recourse, Seller may retain, as liquidated damages, the EMD. In this respect, the Parties agree that Seller's actual damages would be difficult to measure and that the EMD is in fact a reasonable estimate of the damages that Seller would suffer as a result of Buyer's default. Seller understands that any additional deposit not considered part of the EMD in Section 1(B) herein will be immediately released by ESCROW HOLDER to Buyer.

## Instructions to Escrow

**20. ESCROW:** If this Agreement or any matter relating hereto shall become the subject of any litigation or controversy, Buyer and Seller agree, jointly and severally, to hold ESCROW HOLDER free and harmless from any loss or expense, except losses or expenses as may arise from ESCROW HOLDER'S negligence or willful misconduct. If conflicting demands are made or notices served upon ESCROW HOLDER with respect to this Agreement, the parties expressly agree that Escrow is entitled to file a suit in interpleader and obtain an order from the Court authorizing ESCROW HOLDER to deposit all such documents and monies with the Court and obtain an order from the Court requiring the parties to interplead and litigate their several claims and rights among themselves. Upon the entry of an order authorizing such Interpleader, ESCROW HOLDER shall be fully released and discharged from any obligations imposed upon it by this Agreement; and ESCROW HOLDER shall not be liable for the sufficiency or correctness as to form, manner, execution or validity of any instrument deposited with it, nor as to the identity, authority or rights of any person executing such instrument, nor for failure of Buyer or Seller to comply with any of the provisions of any agreement, contract or other instrument filed with ESCROW HOLDER or referred to herein. ESCROW HOLDER'S duties hereunder shall be limited to the safekeeping of all monies, instruments or other documents received by it as ESCROW HOLDER, and for their disposition in accordance with the terms of this Agreement. In the event an action is instituted in connection with this escrow, in which ESCROW HOLDER is named as a party or is otherwise compelled to make an appearance, all costs, expenses, attorney fees, and judgments ESCROW HOLDER may expend or incur in said action, shall be the responsibility of the parties hereto.

**21. UNCLAIMED FUNDS:** In the event that funds from this transaction remain in an account, held by ESCROW HOLDER, for such a period of time that they are deemed "abandoned" under the provisions of Chapter 120A of the Nevada Revised Statutes, ESCROW HOLDER is hereby authorized to impose a charge upon the dormant escrow account. Said charge shall be no less than $5.00 per month and may not exceed the highest rate of charge permitted by statute or regulation. ESCROW HOLDER is further authorized and directed to deduct the charge from the dormant escrow account for as long as the funds are held by ESCROW HOLDER.

## Brokers

**22. BROKER'S COMPENSATION/FEES:** Buyer herein requires, and Seller agrees, as a condition of this Agreement per Section 2, that Seller will pay Listing Broker and Buyer's Broker, who becomes by this clause a third-party beneficiary to this Agreement, that certain sum and/or percentage of the Purchase Price (commission), that Seller, or Seller's Broker, offered for the procurement of ready, willing and able Buyer per this Residential Purchase Agreement. Seller understands and agrees that if Seller defaults hereunder, Buyer's Broker, as a third-party beneficiary of this Agreement, has the right to pursue all legal recourse against Seller for any commission due. In addition to any amount due to Buyer's Broker from Seller or Seller's Broker, Buyer ☐ will –OR– ☐ will not pay Buyer's Broker additional compensation in an amount determined between the Buyer and Buyer's Broker.

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name(s): Galia Meiri                                    BUYER(S) INITIALS: [GM] [ ] [ ] [ ]

Property Address: 2427 N 5th St, Elko, NV 89801              SELLER(S) INITIALS: [JF] [ ] [ ] [ ]
Residential Purchase Agreement Rev. 10/25                    ©2025 Greater Las Vegas Association of REALTORS®

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com

dotloop signature verification: dtlp.us/Y6R7-fpW8-sJru

23. **HOLD HARMLESS AND WAIVER OF CLAIMS:** Buyer and Seller agree that they are not relying upon any representations made by Brokers or Broker's agent. Buyer acknowledges that at COE, the Property will be sold AS-IS, WHERE-IS without any representations or warranties, unless expressly stated herein. Buyer agrees to satisfy himself/herself, as to the condition of the Property, prior to COE. Buyer acknowledges that any statements of acreage or square footage by Brokers are simply estimates, and Buyer agrees to make such measurements, as Buyer deems necessary, to ascertain actual acreage or square footage. Buyer waives all claims against Brokers or their agents for (a) defects in the Property; (b) inaccurate estimates of acreage or square footage; (c) environmental waste or hazards on the Property; (d) the fact that the Property may be in a flood zone; (e) the Property's proximity to freeways, airports or other nuisances; (f) the zoning of the Property; (g) tax consequences; or (h) factors related to Buyer's failure to conduct walk-throughs or inspections. Buyer assumes full responsibility for the foregoing and agrees to conduct such tests, walk-throughs, inspections and research, as Buyer deems necessary. In any event, Broker's liability is limited, under any and all circumstances, to the amount of that Broker's commission/fee received in this transaction.

## Other Matters

24. **DEFINITIONS:** **"Acceptance"** means the date that both parties have consented to a final, binding contract by affixing their signatures to this Agreement and all counteroffers and said Agreement and all counteroffers have been delivered to both parties pursuant to Section 25 herein. **"Agent"** means a licensee working under a Broker or licensees working under a developer. **"Agreement"** includes this document as well as all accepted counteroffers and addenda. **"Appraisal"** means a written appraisal or Notice of Value as required by any lending institution prepared by a licensed or certified professional. **"Bona Fide"** means genuine. **"Buyer"** means one or more individuals or the entity that intends to purchase the Property. **"Broker"** means the Nevada licensed real estate broker listed herein representing Seller and/or Buyer (and all real estate agents associated therewith). **"Business Day"** excludes Saturdays, Sundays, and legal holidays. **"Calendar Day"** means a calendar day from/to midnight unless otherwise specified. **"CFR"** means the Code of Federal Regulations. **"CIC"** means Common Interest Community (formerly known as "HOA" or homeowners' associations). **"CIC Capital Contribution"** means a one-time non-administrative fee, cost or assessment charged by the CIC upon change of ownership. "CIC Transfer Fees" means the administrative service fee charged by a CIC to transfer ownership records. **"Close of Escrow (COE)"** means the time of recordation of the deed in Buyer's name. **"Default"** means the failure of a Party to observe or perform any of its material obligations under this Agreement. **"Delivered"** means personally delivered to Parties or respective Agents, transmitted by facsimile machine, electronic means, overnight delivery, or mailed by regular mail. **"Down Payment"** is the Purchase Price less loan amount(s). **"EMD"** means Buyer's earnest money deposit. **"Escrow Holder"** means the neutral party that will handle the closing. **"FHA"** is the U.S. Federal Housing Administration. **"GLVAR"** means the Greater Las Vegas Association of REALTORS®. **"Good Funds"** means an acceptable form of payment determined by ESCROW HOLDER in accordance with NRS 645A.171. **"IRC"** means the Internal Revenue Code (tax code). **"LID"** means Limited Improvement District. **"N/A"** means not applicable. **"NAC"** means Nevada Administrative Code. "NRS" means Nevada Revised Statues as Amended. **"Party"** or **"Parties"** means Buyer and Seller. **"PITI"** means principal, interest, taxes, and hazard insurance. **"PMI"** means private mortgage insurance. **"PST"** means Pacific Standard Time and includes daylight savings time if in effect on the date specified. **"PTR"** means Preliminary Title Report. **"Property"** means the real property and any personal property included in the sale as provided herein. **"Receipt"** means delivery to the party or the party's agent. **"RPA"** means Residential Purchase Agreement. **"Seller"** means one or more individuals or the entity that is the owner of the Property. **"SID"** means Special Improvement District. **"Title Company"** means the company that will provide title insurance. **"USC"** is the United States Code. **"VA"** is the Veterans Administration.

25. **SIGNATURES, DELIVERY, AND NOTICES:**

   A. This Agreement may be signed by the parties on more than one copy, which, when taken together, each signed copy shall be read as one complete form. This Agreement (and documents related to any resulting transaction) may be signed by the parties manually or digitally. Facsimile signatures may be accepted as original.

   B. When a Party wishes to provide notice as required in this Agreement, such notice shall be sent regular mail, personal delivery, overnight delivery, by facsimile, and/or by electronic transmission to the Agent for that Party. The notification shall be effective when postmarked, received, faxed, delivery confirmed, and/or read receipt confirmed in the case of email. Delivery of all instruments or documents associated with this Agreement shall be delivered to the Agent for Seller or Buyer if represented. Any cancellation notice shall be contemporaneously delivered to Escrow in the same manner.

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name(s): Galia Meiri                                      BUYER(S) INITIALS

Property Address: 2427 N 5th St, Elko, NV 89801                   SELLER(S) INITIALS
Residential Purchase Agreement Rev. 10/25                         ©2025 Greater Las Vegas Association of REALTORS®

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com

dotloop signature verification: dtlp.us/Y6R7-fpWB-sjru

26. **IRC 1031 EXCHANGE:** Seller and/or Buyer may make this transaction part of an IRC 1031 exchange. The party electing to make this transaction part of an IRC 1031 exchange will pay all additional expenses associated therewith, at no cost to the other party. The other party agrees to execute any and all documents necessary to effectuate such an exchange.

27. **HUD/VA/FHA ESCAPE CLAUSE:** "It is expressly agreed that, notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or incur any penalty by forfeiture of earnest money or otherwise unless the purchaser has been given, in accordance with HUD/FHA or VA requirements, a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the property of not less that the agreed upon contract purchase price. The purchaser shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure or percent the Department of Veterans Affairs will guarantee. HUD/FHA or VA does not warrant the value or condition of the property. The purchaser should satisfy himself/herself that the price and condition of the property are acceptable.

28. **OTHER ESSENTIAL TERMS:** Time is of the essence emphasizes the punctual performance of each and every essential requirement of the Agreement. It is important for all parties to meet the deadlines and complete their obligations on time. No change, modification or amendment of this Agreement shall be valid or binding unless such change, modification or amendment shall be in writing and signed by each party. This Agreement will be binding upon the heirs, beneficiaries and devisees of the parties hereto. This Agreement is executed and intended to be performed in the State of Nevada, and the laws of that state shall govern its interpretation and effect. The parties agree that the county and state in which the Property is located is the appropriate forum for any action relating to this Agreement. Should any party hereto retain counsel for the purpose of initiating litigation to enforce or prevent the breach of any provision hereof, or for any other judicial remedy, then the prevailing party shall be entitled to be reimbursed by the losing party for all costs and expenses incurred thereby, including, but not limited to, reasonable attorney's fees and costs incurred by such prevailing party.

**THIS IS A LEGALLY BINDING CONTRACT. All parties are advised to seek independent legal and tax advice to review the terms of this Agreement.**

**THIS FORM HAS BEEN APPROVED BY THE GREATER LAS VEGAS ASSOCIATION OF REALTORS® (GLVAR). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

29. **ADDENDUM/ADDENDA ATTACHED:** _____

_____

_____

30. **ADDITIONAL TERMS:** Earnest money to be made out to Landmark Title, and non-refundable and released to

Koinonia Construction upon receipt. _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name(s): Galia Meiri _____   BUYER(S) INITIALS: [ _GM_ ] [ ] [ ] [ ]

Property Address: 2427 N 5th St, Elko, NV 89801   SELLER(S) INITIALS: [ _JF_ ] [ ] [ ] [ ]
Residential Purchase Agreement Rev. 10/25   ©2025 Greater Las Vegas Association of REALTORS®

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com

dotloop signature verification: dtlp.us/Y6R7-fpW8-sjru

---

## Buyer's Acknowledgement of Offer

**Confirmation of Representation:** The Buyer is represented in this transaction by:

| | |
|---|---|
| Buyer's Broker: Jen McDonald | Agent's Name: Jennifer Welch |
| Company Name: LPT Realty LLC | Agent's License Number: S.0203284 |
| Broker's License Number: B.3279 | Office Address:1755 E Plumb Ln #251 |
| Phone: 208-404-4061 | City, State, Zip:Reno, NV 89502 |
| Fax: | Email: kconelko@gmail.com |

**BUYER LICENSEE DISCLOSURE OF INTEREST:** Pursuant to NRS 645.252(1)(c), a real estate licensee must disclose if he/she is a principal in a transaction or has an interest in a principal to the transaction. Licensee declares that he/she: ☑ **DOES NOT** have an interest in a principal to the transaction. –OR– ☐ **DOES** have the following interest, direct or indirect, in this transaction: ☐ Principal (Buyer) –OR– ☐ family or firm relationship with Buyer or ownership interest in Buyer (if Buyer is an entity): (specify relationship) _____ .

_____

**Seller must respond by:** 10 (☑AM ☐PM) on (month) March , (day) 21 , (year) 2026 . **Unless this Agreement is accepted, rejected or countered below and delivered to the Buyer's Broker before the above date and time, this offer shall lapse and be of no further force and effect. Following the date of Acceptance, Buyer agrees to be bound by each provision of this Agreement, and all signed addenda, disclosures, and attachments.**

| | | | | |
|---|---|---|---|---|
| *Galia Meiri* dotloop verified 03/20/26 2:44 PM PDT BOTH-JO59-5ECT-81GL | Galia Meiri | | : ☐ AM ☐ PM | |
| Buyer's Signature | Buyer's Printed Name | Date | Time | |
| | | | : ☐ AM ☐ PM | |
| Buyer's Signature | Buyer's Printed Name | Date | Time | |
| | | | : ☐ AM ☐ PM | |
| Buyer's Signature | Buyer's Printed Name | Date | Time | |
| | | | : ☐ AM ☐ PM | |
| Buyer's Signature | Buyer's Printed Name | Date | Time | |

**Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name(s): Galia Meiri _____  BUYER(S) INITIALS: [GM]

Property Address: 2427 N 5th St, Elko, NV 89801  SELLER(S) INITIALS: [JF]

Residential Purchase Agreement Rev. 10/25  ©2025 Greater Las Vegas Association of REALTORS®

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com

dotloop signature verification: dtlp.us/Y6R7-fpW8-sjru

## Seller's Response

**Confirmation of Representation:** The Seller is represented in this transaction by:

| | |
|---|---|
| Seller's Broker: Jen McDonald | Agent's Name: Jennifer Welch |
| Company Name: LPT Realty, LLC | Agent's License Number: S.0203284 |
| Broker's License Number: | Office Address:1755 E Plumb Ln #251 |
| Phone:2084044061 | City, State, Zip:Reno, NV 89502 |
| Fax: | Email:kconelko@gmail.com |

**SELLER LICENSEE DISCLOSURE OF INTEREST:** Pursuant to NRS 645.252(1)(c), a real estate licensee must disclose if he/she is a principal in a transaction or has an interest in a principal to the transaction. Licensee declares that he/she: ☐ **DOES NOT** have an interest in a principal to the transaction. –OR– ☑ **DOES** have the following interest, direct or indirect, in this transaction: ☐ Principal (Seller) –OR– ☑ family or firm relationship with Seller or ownership interest in Seller (if Seller is an entity): (specify relationship) Girlfriend                                                          .

☐**FIRPTA:** If applicable (as designated in the Seller's Response herein), Seller agrees to complete, sign, and deliver to Buyer's FIRPTA Designee a certificate indicating whether Seller is a foreign person or a nonresident alien pursuant to the Foreign Investment in Real Property Tax Act (FIRPTA). A foreign person is a nonresident alien individual; a foreign corporation not treated as a domestic corporation; or a foreign partnership, trust or estate.  A resident alien is not considered a foreign person under FIRPTA. Additional information for determining status may be found at www.irs.gov. Buyer and Seller understand that if Seller is a foreign person, then the Buyer must withhold a tax in an amount to be determined by Buyer's FIRPTA Designee in accordance with FIRPTA, unless an exemption applies. Seller agrees to sign and deliver to the Buyer's FIRPTA Designee the necessary documents, to be provided by the Buyer's FIRPTA Designee, to determine if withholding is required. (See 26 USC Section 1445).

SELLER DECLARES that he/she ☑ **is not –OR–** ☐ is a foreign person therefore subjecting this transaction to FIRPTA withholding. **SELLER(S) INITIALS:** [ _J_ ] / [    ] / [    ] / [    ]

☑ **ACCEPTANCE:** Seller(s) acknowledges that he/she accepts and agrees to be bound by each provision of this Agreement, and all signed addenda, disclosures, and attachments.

☐ **COUNTER OFFER:** Seller accepts the terms of this Agreement subject to the attached Counter Offer #1.

☐**REJECTION:** In accordance with NAC 645.632, Seller hereby informs Buyer the offer presented herein is **not** accepted.

| Seller's Signature | Seller's Printed Name | Date | Time | |
|---|---|---|---|---|
| _signed_ | | | : ☐ AM ☐ PM | |
| | | | : ☐ AM ☐ PM | |
| | | | : ☐ AM ☐ PM | |
| | | | : ☐ AM ☐ PM | |

**Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name(s): Galia Meiri                                    BUYER(S) INITIALS [ _GM_ ][ ][ ][ ]

Property Address: 2427 N 5th St, Elko, NV 89801               SELLER(S) INITIALS [ _J_ ][ ][ ][ ]
Residential Purchase Agreement Rev. 10/25                     ©2025 Greater Las Vegas Association of REALTORS®

Page 11 of 11

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com



# Pre-Approval Letter

Date: 03/13/2026

Re: Pre-Approval

Borrower(s): Galia Meiri

The above referenced buyer(s) has applied for a home loan and has been pre-approved with Empire Home Loans Inc. This approval is based on our review of the credit report, income and asset documentation verified to date. This loan is subject to approval by a primary financing agency, which cannot be finalized until a fully executed purchase contract is received and the application is reviewed.

***Rates are subject to change without any notice. ***

Type: Conventional
Term: 30 years
Sales Price: $355,000
Loan Amount: $266,250

Conditions PRIOR TO LOAN DOCS are as follows but are not limited to:

1. Satisfactory appraisal report to support sales price
2. Estimated Settlement Statement reflecting all closing costs
3. Lock-In interest rate
4. Updated documentation to support income, assets, credit and other qualifying tools
5. Fully executed purchase contract, counter offers and addendums, (if applicable)
6. Preliminary Title Report

Conditions PRIOR TO FUNDING are as follows but are not limited to:
1. Proof of Home Owners Insurance
2. Executed loan documents
3. Verbal Verification of Employment

If you have any questions, please feel free to contact me at (775) 240-4261 or sheryl@empirehomeloans.com.

Sincerely,

**Sheryl Verdugo**
**Producing Branch Manager**
**NMLS: 336906**
**Mobile: (775) 240-4261**
**Email: sheryl@empirehomeloans.com**

---

6170 Ridgeview Ct., Ste. B, Reno, NV. 89519 - Telephone: (775) 240-4261
BROKER NMLS 1894859

dotloop signature verification: dtlp.us/uqgU-onuc-f3mK



# ADDENDUM #   1



This addendum to the Purchase Contract dated  03/19/2026 , regarding
the property located at 2427 N 5th St, Elko, NV 89801                                          ,
between Galia Meiri                                                          (BUYER/TENANT)
and Luke Fitzgerald, President of Koinonia Construction Inc.                  (SELLER/LANDLORD),
is being attached this date  04/13/2026   and becomes effective when signed by all parties.

1. Purchase price to be reduced from $355,000 to $347,000.

2. Seller concessions to be reduced from $15,000 to $7000. Seller concessions to be applied toward both recurring and non-recurring closing costs.

All other terms to remain the same.

Dated: _____  Time: _____   Dated: _____  Time: _____

| | | |
|---|---|---|
| BUYER/TENANT | *Galia Meiri*  dotloop verified 04/13/26 2:00 PM PDT OT4I-M60Y-ADOR-VNAY | SELLER/LANDLORD | *Luke Fitzgerald, President of Koinonia Construction Inc.*  dotloop verified 04/13/26 2:02 PM PDT 4K2T-CDKZ-Q73N-TPEZ |
| BUYER/TENANT | | SELLER/LANDLORD | |
| BUYER/TENANT | | SELLER/LANDLORD | |
| BUYER/TENANT | | SELLER/LANDLORD | |

This copyright protected form was created by and for the use of the members of SNR.

SNR® 01/26
ADD 1/1

# EXHIBIT "B"

Landmark Title Assurance Agency of Nevada
ALTA Universal ID:
455 8th Street
Elko, NV 89801
(775) 302-8955

ALTA Seller's Estimated Settlement Statement

| | | | | | |
|---|---|---|---|---|---|
| **File #:** | 26-1748-BRK | **Property** | 2427 N 5th St | **Settlement Date** | 04/30/2026 |
| **Print Date & Time:** | 04/07/2026 at 11:20 AM PDT | | Elko, NV 89801 | **Disbursement Date** | 04/30/2026 |
| | | **Buyer** | Galia Jill Meiri | | |
| **Escrow Officer:** | Breanna R Keil | | 5150 Mae Anne Avenue | | |
| **Settlement Location:** | 455 8th Street | | ste 405 pmb209 | | |
| | Elko, NV, 89801 | | Reno, NV 89523 | | |
| | | **Seller** | Koinonia Construction Inc | | |
| | | **Lender** | Kind Lending, LLC | | |
| | | | 1920 Main Street | | |
| | | | Suite 1200 | | |
| | | | Irvine, CA 92614 | | |

| Description | Seller | |
|---|---|---|
| | **Debit** | **Credit** |
| **Financial** | | |
| Sale Price of Property | | $355,000.00 |
| Seller Credit | $15,000.00 | |
| | | |
| **Prorations/Adjustments** | | |
| County Taxes 04/30/2026 to 07/01/2026 | | $583.19 |
| | | |
| **Payoff(s)** | | |
| Payoff to ESTIMATED Pay off lender TBD | $252,633.00 | |
| | | |
| **Government Recording and Transfer Charges** | | |
| County Transfer Tax (Deed) to Elko County Recording Office | $1,384.50 | |
| | | |
| **Commission** | | |
| Listing Agent Commission to LPT Realty | $10,650.00 | |
| Selling Agent Commission to LPT Realty | $10,650.00 | |
| | | |
| **Title Charges & Escrow / Settlement Charges** | | |
| Title - Settlement or Closing Fee to Landmark Title Assurance Agency of Nevada | $830.00 | |
| Title -Courier fee to Landmark Title Assurance Agency of Nevada | $30.00 | |
| Title-Investor Discount 25% off escrow fee to Landmark Title Assurance Agency of Nevada | | $207.50 |
| Title-Notary Fee to IF NEEDED | $200.00 | |
| Title - Owner's Title Policy to First National Title Insurance Company | $1,415.00 | |
| | | |
| **Miscellaneous** | | |
| EMD Released to Seller none refundable to Koinonia Construction Inc | $3,500.00 | |
| | **Debit** | **Credit** |
| **Subtotals** | $296,292.50 | $355,790.69 |
| **Due to Seller** | $59,498.19 | |
| **Totals** | $355,790.69 | $355,790.69 |

Produced by Landmark Title Assurance Agency of Nevada
Using Qualia                                Page 1 of 2                                File # 26-1748-BRK
Printed on 04/07/2026 at 11:20 AM PDT

**Acknowledgement**

This is an estimate only and subject to change.

We/I have carefully reviewed the Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the Settlement Statement.

We/I authorize Landmark Title Assurance Agency of Nevada to cause the funds to be disbursed in accordance with this statement.

Koinonia Construction Inc, a Corporation

By: _____

Luke Fitzgerald                                           Date

_____

Settlement Agent                                         Date

# EXHIBIT "C"

American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)



## ALTA COMMITMENT FOR TITLE INSURANCE
### issued by
### FIRST NATIONAL TITLE INSURANCE COMPANY

### NOTICE

**IMPORTANT – READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

### COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I – Requirements; Schedule B, Part II – Exceptions; and the Commitment Conditions, First National Title Insurance Company, a(n) Texas corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Amount of Insurance and the name of the Proposed Insured.

If all of the Schedule B, Part I – Requirements have not been met within 180 days after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

### COMMITMENT CONDITIONS

1.  DEFINITIONS
    a.  "Discriminatory Covenant": Any covenant, condition, restriction, or limitation that is unenforceable under applicable law because it illegally discriminates against a class of individuals based on personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or other legally protected class.
    b.  "Knowledge" or "Known": Actual knowledge or actual notice, but not constructive notice imparted by the Public Records.
    c.  "Land": The land described in Item 5 of Schedule A and improvements located on that land that by State law constitute real property. The term "Land" does not include any property beyond that described in Schedule A, nor any right, title, interest, estate, or easement in any abutting street, road, avenue, alley, lane, right-of-way, body of water, or waterway, but does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
    d.  "Mortgage": A mortgage, deed of trust, trust deed, security deed, or other real property security instrument, including one evidenced by electronic means authorized by law.
    e.  "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
    f.  "Proposed Amount of Insurance": Each dollar amount specified in Schedule A as the Proposed Amount of Insurance of each Policy to be issued pursuant to this Commitment.
    g.  "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

---

h.  "Public Records": The recording or filing system established under State statutes in effect at the Commitment Date under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge. The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters.

i.  "State": The state or commonwealth of the United States within whose exterior boundaries the Land is located. The term "State" also includes the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and Guam.

j.  "Title": The estate or interest in the Land identified in Item 3 of Schedule A.

2.  If all of the Schedule B, Part I – Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3.  The Company's liability and obligation is limited by and this Commitment is not valid without:
    a.  the Notice;
    b.  the Commitment to Issue Policy;
    c.  the Commitment Conditions;
    d.  Schedule A;
    e.  Schedule B, Part I – Requirements;
    f.  Schedule B, Part II – Exceptions; and
    g.  a counter-signature by the Company or its issuing agent that may be in electronic form.

4.  COMPANY'S RIGHT TO AMEND
    The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company is not liable for any other amendment to this Commitment.

5.  LIMITATIONS OF LIABILITY
    a.  The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
        i.   comply with the Schedule B, Part I – Requirements;
        ii.  eliminate, with the Company's written consent, any Schedule B, Part II – Exceptions; or
        iii. acquire the Title or create the Mortgage covered by this Commitment.
    b.  The Company is not liable under Commitment Condition 5.a. if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.
    c.  The Company is only liable under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.
    d.  The Company's liability does not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Condition 5.a. or the Proposed Amount of Insurance.
    e.  The Company is not liable for the content of the Transaction Identification Data, if any.
    f.  The Company is not obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I – Requirements have been met to the satisfaction of the Company.
    g.  The Company's liability is further limited by the terms and provisions of the Policy to be issued to the Proposed Insured.

6.  LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT; CHOICE OF LAW AND CHOICE OF FORUM
    a.  Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

---

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

b.   Any claim must be based in contract under the State law of the State where the Land is located and is restricted to the terms and provisions of this Commitment. Any litigation or other proceeding brought by the Proposed Insured against the Company must be filed only in a State or federal court having jurisdiction.

c.   This Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

d.   The deletion or modification of any Schedule B, Part II – Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

e.   Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

f.   When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

7.   IF THIS COMMITMENT IS ISSUED BY AN ISSUING AGENT
The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for closing, settlement, escrow, or any other purpose.

8.   PRO-FORMA POLICY
The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

9.   CLAIMS PROCEDURES
This Commitment incorporates by reference all Conditions for making a claim in the Policy to be issued to the Proposed Insured. Commitment Condition 9 does not modify the limitations of liability in Commitment Conditions 5 and 6.

10.  CLASS ACTION
ALL CLAIMS AND DISPUTES ARISING OUT OF OR RELATING TO THIS COMMITMENT, INCLUDING ANY SERVICE OR OTHER MATTER IN CONNECTION WITH ISSUING THIS COMMITMENT, ANY BREACH OF A COMMITMENT PROVISION, OR ANY OTHER CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THE TRANSACTION GIVING RISE TO THIS COMMITMENT, MUST BE BROUGHT IN AN INDIVIDUAL CAPACITY. NO PARTY MAY SERVE AS PLAINTIFF, CLASS MEMBER, OR PARTICIPANT IN ANY CLASS OR REPRESENTATIVE PROCEEDING. ANY POLICY ISSUED PURSUANT TO THIS COMMITMENT WILL CONTAIN A CLASS ACTION CONDITION.

11.  ARBITRATION
The Policy contains an arbitration clause. All arbitrable matters when the Proposed Amount of Insurance is $2,000,000 or less may be arbitrated at the election of either the Company or the Proposed Insured as the exclusive remedy of the parties. A Proposed Insured may review a copy of the arbitration rules at http://www.alta.org/arbitration.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

**American Land Title Association**

**FIRST NATIONAL TITLE INSURANCE COMPANY**
2400 Dallas Parkway Ste. 200, Plano, TX 75093

By:_____
President

By:_____
Treasurer

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

**Page 4 of 10**

American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

---

**Transaction Identification Data, for which the Company assumes no liability as set forth in Commitment Condition 5.e.:**

Issuing Agent: Landmark Title Assurance Agency of Nevada
Issuing Office: 455 8th Street
                 Elko, NV 89801
Issuing Office's ALTA® Registry ID:
Loan ID Number:
Commitment Number: 26-1748-BRK
Issuing Office File Number: 26-1748-BRK
Property Address: 2427 N 5th St, Elko, NV 89801
Revision Number:

## SCHEDULE A

1.  Commitment Date: March 20, 2026 at 8:00 AM

2.  Policy to be issued:

    (a)   2021 ALTA Owner's Policy

| | |
|---|---|
| Proposed Insured: | **Galia Meiri, an unmarried woman** |
| Proposed Amount of Insurance: | **$355,000.00** |
| The estate or interest to be insured: | **fee simple** |

    (b)   2021 ALTA Loan Policy

| | |
|---|---|
| Proposed Insured: | **Empire Home Loans** |
| | **7455 Arroyo Crossing Parkway, Suite 220, Las Vegas, NV 89113** |
| Proposed Amount of Insurance: | **$266,250.00** |
| The estate or interest to be insured: | **fee simple** |

3.  The estate or interest in the Land at the Commitment Date is:
    fee simple

4.  The Title is, at the Commitment Date, vested in:
    Koinonia Construction Inc., a Nevada corporation

5.  The land is described as follows:
    The land is described as set forth in Exhibit A attached hereto and made a part hereof.

**LANDMARK TITLE ASSURANCE AGENCY OF NEVADA**
455 8th Street, Elko, NV 89801
Telephone: (775) 302-8955

Countersigned by:

_____
Brant Remaley
Landmark Title Assurance Agency of Nevada,
License #

**FIRST NATIONAL TITLE INSURANCE COMPANY**
2400 Dallas Parkway Ste. 200, Plano, TX 75093



By:_____
    President

By:_____
    Treasurer

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION



American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

---

## SCHEDULE B, PART I – Requirements

All of the following Requirements must be met:

1. Pay the premiums, fees, and charges for the Policy to the Company.

2. Pay the agreed amount for the estate or interest to be insured.

3. The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

4. Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

   b) Deed of Trust/Mortgage from Galia Meiri, an unmarried woman to Empire Home Loans encumbering the land described in Schedule 'A'.

5. NOTICE: Due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale or marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

6. As a condition to the issuance of the requested Policy(ies) of Title Insurance, we hereby request that we be furnished with a fully completed and executed Owners Affidavit.

7. REQUIREMENT - PAYMENT IN FULL OF THE FOLLOWING:

   Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:
   Amount:          $253,000.00
   Dated:           February 28, 2025
   Trustor:           Koinonia Construction Inc., a Nevada corporation
   Trustee:         Landmark Title Assurance Agency of Nevada
   Beneficiary:       Mortgage Electronic Registrations Systems, acting solely as nominee for Sound Capital Loans, LLC, a Delaware limited liability company
   Recorded:        February 28, 2025
   Instrument No.: 847052 , Official Records.

8. REQUIREMENT - RELEASE OF THE FOLLOWING:

   Notice of Lis Pendens and any claims or rights that may be reflected by, or judgments or others orders rendered pursuant to, the Notice or suit:
   Case No.          : DC-FM-25-126
   Court           : District Court State of Nevada County of Elko
   Plaintiff          : Luke Fitzgerald
   Defendent        : Lisa Jane Turner
   Recorded         : May 16, 2025
   Instrument No. : 849637 , Official Records.

9. At the date of this report, the Company is not aware of any matters which would cause it to decline to attach an ALTA 9.10-06 (Reservations, Encroachments, Minerals - Current Violations Endorsement), an ALTA 22-06 (Location Endorsement) indicating that this is a Single Family Residence - Townhouse known as 2427 5th St,

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

---

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



**American Land Title Association**                                    **Commitment for Title Insurance**
                                                                    **2021 v. 01.00 (07-01-2021)**

Reno, NV, an ALTA 5.1-06 (Planned Unit Development Endorsement) and a ALTA 8.1-06 (Environmental Protection Loan Endorsement) to any ALTA Extended Loan Policy.

10. There have been NO CONVEYANCES within the 24 months preceding this report except:
    <u>Vesting Deed</u>

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.


AMERICAN
LAND TITLE
ASSOCIATION

## SCHEDULE B, PART II – Exceptions

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage.**

The Policy will not insure against loss or damage resulting from the terms and conditions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I—Requirements are met.

2. Taxes or assessments which are not now payable or which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

3. Any facts, rights, interests, or claims that are not shown by the Public Record, but that could be ascertained by an inspection of the land or that may be ascertained by persons
   in possession of the Land

4. Easements, liens or encumbrances or claims thereof, not shown by the Public Records.

5. Any encroachment, encumbrance, violation, variation or adverse circumstance affecting the title that would be disclosed by an accurate and complete survey of the Land and not shown by the Public Records.

6. Any lien or right to lien for services, labor or material not shown by the Public Records.

7. (a) Unpatented mining claims, (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records, (d) Indian tribal codes or regulations, Indian Treaty or Aboriginal Rights, including easements or equitable servitudes.

8. Rights or claims of parties in possession not recorded in the public records.

9. State, County and City Taxes for the fiscal period 2025 to 2026, are paid in full in the total amount of $3,441.76 PARCEL NO.: 001-61M-007 TAX DISTRICT: 11.0 LOCATION: Elko

10. The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 361.260 of the Nevada Revised Statutes.

11. The herein described property lies within the boundaries of the City of Elko and is subject to any and all fees that may be due said District/City.

12. Mineral Rights, Reservations, easements and exclusions in the patent from the United States of America and/ or the State of Nevada.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



13. Easement, rights of way, terms and provisions as set forth in instrument:
    In Favor of      : Elko Lamoille Power Company
    For              : Utilities
    Recorded         : April 9, 1953
    Instrument No. : Book 63, Page 116, Deed Records, Official Records.

14. Easements, rights of way, dedications and other matters as indicated or delineated on the Parcel Map recorded October 30, 1997 as File No. 416535 , Official Records. (See map for full particulars)

15. Easement, rights of way, terms and provisions as set forth in instrument:
    In Favor of      : Southwest Gas Corporation
    For              : Pipelines
    Recorded         : April 13, 2022
    Instrument No. :  804152 , Official Records.

16. Easement, rights of way, terms and provisions as set forth in instrument:
    In Favor of      : Sierra Pacific Power Company, a Nevada Corporation, dba NV Energy
    For              : Utilities
    Recorded         : August 30, 2022
    Instrument No. :  810153 , Official Records.

17. Easements, rights of way, dedications and other matters as indicated or delineated on the plat of said subdivision recorded March 15, 2023 as File No. 817169 , Official Records. (See map for full particulars)

18. Terms, provisions, covenants, conditions, restrictions, easements, charges, assessments and liens provided in the Covenants, Conditions and Restrictions recorded October 30, 2023,  as Instrument Number 828252 ,  Official Records, but omitting any covenant, condition or restriction, if any, based on race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that the covenant, condition or restriction (a) is exempt under Title 42 of the United States Code, or (b) relates to handicap, but does not discriminate against handicapped persons.

    RIGHT TO LEVY ASSESSMENTS: The right to levy certain charges or assessments against said land which shall become a lien if not paid as set forth in the above Declaration of Restrictions is conferred upon Mountain View Townhomes Association.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

## EXHIBIT "A"

The Land referred to herein below is situated in the County of Elko, State of Nevada and is described as follows:

Lot 7 as shown on the final map of Mountain View Town Homes Unit Number 1, filed in the office of the County Recorder of Elko County, State of Nevada, on March 15, 2023, as File No. 817169, being a portion of Section 9, Township 34 North, Range 55 East, M.D.B.&M..

Tax ID: 001-61M-007

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



# EXHIBIT "D"

dotloop signature verification: dtlp.us/8jC5-02bU-9sX0



# EXCLUSIVE AUTHORIZATION AND RIGHT TO SELL, EXCHANGE, OR LEASE BROKERAGE LISTING AGREEMENT (ER)



**This is intended to be a legally binding contract. No representation is made as to the legal or tax consequences of this contract. If you desire legal or tax advice, consult your attorney or tax advisor.**

**1. EXCLUSIVE RIGHT TO SELL:**

We, Koinonia Construction Inc. ("Seller"), hereby engage and grant LPT Realty, LLC (Company Name, hereinafter "Broker") the exclusive and irrevocable right, commencing on 02/06/2026 , and expiring at 11:59 p.m. Pacific Time on 02/06/2027 , to sell, lease or exchange the Real Property located in the City of Elko , County Elko , Nevada, APN#: 00161M007 commonly known as: 2427 N 5th St, Elko, NV 89801 ("the Property").

**2. TERMS OF SALE:** The listing price shall be $ 369900 , with a suggested amount of an Earnest Money Deposit (EMD) of $ 3700 .

Terms available: ☑ Cash  ☑ CONV  ☑ FHA  ☐ Lease  ☑ VA  ☐ Lease Option  ☐ Owner Will Carry  ☐ Other: _____

**(Note: If the Property is offered for lease, then the term "Seller" used in this Agreement includes "Lessor" as applicable.)**

Seller ☑ **does** -OR-☐ **does not** authorize Broker to disclose the existence of multiple offers to purchase the property to potential buyers. **SELLER(S) INITIALS:** [ JF ] / [ ] / [ ] / [ ]

Seller ☐ **does** -OR-☑ **does not** authorize Broker to disclose the offer(s), price and terms. **SELLER(S) INITIALS:** [ JF ] / [ ] / [ ] / [ ]

**3. PROPERTY OFFERED FOR SALE:** The listing price noted above includes the Property and all improvements and fixtures permanently affixed and installed.

a. The following items of Personal Property are **included** in the above price and shall be conveyed unencumbered in escrow by a valid bill of sale:

_____
_____
_____

b. The following items of Personal Property are **excluded** from the above price and not included in the sale:

_____
_____
_____

c. This property **Does Contain** ☐ -OR- **Does Not Contain** ☑ SMART technology which powers and/or automates, not limited to, surveillance systems, security, environmental controls and home entertainment features. If the property so does contain SMART Technology seller will complete a SMART Home Disclosure which is incorporated as part of this agreement and identifies the items seller intends to convey with the sale. All Attached Fixtures must convey unless identified above.

d. This property **Does** ☐ -OR- **Does Not** ☑ include a solar power system (photovoltaic-PV). If this property does include a solar power system, the Solar Addendum is hereby attached and made part of this contract.

Seller identifies above items as included or excluded in offering of the Property for sale. Seller understands that the purchase agreement takes precedence over any intention identified above and will ultimately determine what items are included and excluded in the sale. Seller further understands it is their responsibility to ensure the items not included in the sale are addressed in any counter offer to ensure Buyer's understanding of Seller's intent.

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: [ JF ] / [ ] / [ ] / [ ]

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com      TRANSACTIONS TransactionDesk Edition

dotloop signature verification: dtlp.us/BjC5-02bU-9sZ0

e. Leased or Licensed Items: The following items are leased or subject to a lien in securing payment:
☐ Alarm system        ☐ Propane tank        ☐ Water softener
☐ Other(s)_____.

Seller will provide to Buyer, as a part of the purchase agreement, copies of lease documents, or other documents obligating Seller to pay for such leased or lien items.

**4. TITLE INSURANCE:** Seller agrees to provide Buyer with an owner's policy of title insurance in the amount of the selling price.

**5. COMPENSATION TO BROKER:** COMPENSATION/COMMISSIONS ARE NOT SET BY LAW OR BY ANY REALTOR® ASSOCIATION. THEY ARE FULLY NEGOTIABLE.  If during the Listing Term, Seller sells the property and the sale closes, or the sale fails to close due to Seller's breach of the terms of the Residential Purchase and Sale Agreement, Seller shall pay the following:

The Seller agrees to pay a commission of____ 3% ☐ and / ☐ or $_____ of the final sale price or lease amount to the Listing Broker upon the successful closing of the subject property. This commission is exclusively for the Listing Broker's services and is not subject to sharing, splitting, or otherwise distributing to any Buyer's Broker or agent. The Seller acknowledges that any commission arrangement with a Buyer's Broker, if applicable, must be covered by a separate agreement/Residential Purchase Agreement and is not covered under this Listing Agreement.

**Compensation shall be due:**
        a. if the Property is sold or leased by Broker, or through any other person including Seller, on the above terms or any other price and terms acceptable to Seller during the above time period or any extension of said time period;

        b. if the Property is transferred, conveyed, leased, rented, or made unmarketable by a voluntary act of Seller without the consent of Broker, during the time period or any extension of said time period;

        c. if within_____ calendar days of the final termination, including extensions, of this Agreement, the Property is sold, conveyed, or otherwise transferred to anyone with whom the Broker has had negotiations or to whom the Property was shown prior to the final termination. This section (c) shall not apply if Seller enters into a valid Brokerage Listing Agreement with another licensed real estate Broker after the final termination of this Exclusive Brokerage Listing Agreement.

        d. in the event of an exchange, permission is hereby given to the Broker to represent such parties as Broker may deem appropriate and collect compensation from them provided that there is full disclosure to all parties. If completion of sale is prevented by default of Seller, or the refusal of Seller to accept an offer in accordance with the price and terms of this Agreement, then upon event, Broker is authorized to take any action reasonably necessary to collect said commission. If completion of sale is prevented by a party to the transaction other than Seller, Broker may collect its commission only if and when Seller collects damages by suit or otherwise, and then in an amount not less than one-half of the damages recovered, but not to exceed the above compensation after first deducting title expenses, escrow expenses and the expenses of collections if any.

        e. Seller hereby irrevocably assigns to Broker the funds and proceeds of Seller in escrow equal to the above compensation. In the event any sum of money due under this Agreement remains unpaid for a period of thirty (30) days, such sum shall bear interest at the rate of (_____) percent per annum from the due date until paid.

**6. DEPOSIT:** Broker is authorized to accept on Seller's behalf a deposit to be applied toward purchase price or lease. Said deposit shall be held by: (SELECT ONE)☒ Escrow **-OR-** ☐ Broker **-OR-** ☐ Other_____.

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: [ _signature_ ] [ ] [ ] [ ]

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com    **TRANSACTIONS** TransactionDesk Edition

dotloop signature verification: dtlp.us/BjC5-02bU-9sX0

**7. AGENCY RELATIONSHIP:**

a. Broker warrants that he holds a current, valid Nevada real estate license. Broker shall act as the agent of the Seller and may also assign or designate a licensee of the Broker who shall act as the representative of the Seller in any resulting transaction.

b. Depending upon the circumstances, it may be necessary or appropriate for the designated licensee to act as agent for both Seller and Buyer, exchange parties, or one or more additional parties.  If applicable, Broker and the designated licensee shall disclose to Seller any election to act as an agent representing more than one party and obtain the written Consent To Act Form signed by all parties to the transaction.

c. Broker may also have licensees in its company who are agents of the Buyer who may show and negotiate an offer to purchase Seller's Property. In this event, the licensees who represent the Buyer will only represent the Buyer in the transaction with all duties owed to the Buyer and not the Seller. This, therefore, does not require a Consent To Act Form.

**8. REQUIRED DISCLOSURES:**

a. Unless exempt under NRS chapter 113, Seller shall truthfully complete and sign a Seller's Real Property Disclosure Statement concerning the condition of the Property.  Seller shall update the Seller's Real Property Disclosure as necessary.

b. If the Property is or has been the subject of a construction defect claim, whether litigated or not, Seller shall provide the disclosure required by NRS 40.688.

c. If the Property was built prior to 1978, Seller shall complete the Disclosure of Information on Lead-Based Paint Hazards in accordance with Federal Regulations.

d. Seller acknowledges receipt of the Residential Disclosure Guide:

**SELLER(S) INITIALS:**

**9. INDEMNIFICATION:** Seller agrees to save, defend, and hold Broker, GLVAR, and the MLS harmless from all claims, disputes, litigation, and/or judgments arising from (i) any misrepresentation, breach of warranty or breach of a promise by Seller in this Listing Agreement (ii) any incorrect information supplied by Seller, (iii) any facts concerning the Property not disclosed by Seller, including any facts known to Seller relating to adverse conditions or latent defects, (iv) the use of a keybox, or (v) any injury or damage to persons or property in connection with the marketing or showing of the Property. This indemnification shall survive Broker's performance and any transfer of title.

**10. FAIR HOUSING:** Broker shall offer the Property for sale or lease without regard to race, religious creed, color, national origin, disability, sexual orientation, gender identity or expression, ancestry, familial status or sex and any other current requirements of federal or state fair housing laws.

**11. COMMON INTEREST COMMUNITY:** The Property ☑is –OR– ☐ is not located within a Common Interest Community (CIC). If yes, please complete the following:

Name of CIC(s): Mountainview Townhome Association

Telephone: 775-303-8492          Dues: $100          payable ☑monthly -OR-☐ quarterly

Seller ☑ is -OR- ☐ is not current on all dues and assessments.

Name of CIC(s): _____

Telephone: _____          Dues: $_____          payable ☐monthly -OR-☐ quarterly

Seller ☐ is -OR- ☐ is not current on all dues and assessments.

Name of CIC(s): _____

Telephone: _____          Dues: _____          payable ☐ monthly -OR-☐ quarterly

Seller ☐ is -OR- ☐ is not current on all dues and assessments.

If the Property is located within a CIC, Seller acknowledges and agrees to obtain (at Seller's own expense as required by NRS 116.4109) and/or provide the information required by NRS 116.4109 and 116.41095 to Broker for delivery to Buyer.

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS:



This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com    TRANSACTIONS TransactionDesk Edition

dotloop signature verification: dtlp.us/BjC5-02bU-9sX0

**12. SPECIAL ASSESSMENTS:** The Property ☐ is –OR– ☑ **is not** subject to special government assessments, such as SID and LID. (For information please go to: www.amgnv.com)
If yes, please complete the following:
    Balance remaining: $_____
    Payment amount: $_____
    Payment Due: select one (1) Monthly☐   Quarterly☐   Semi Annually☐   Annually☐

**13. KEYBOX:** Seller ☑ **does** -OR- ☐ **does not** authorize Broker to install a keybox (**electronic☐-OR-mechanical ☑** ) in connection with the showing of the Property. A mechanical keybox is a combination-type box that can be opened by anyone who has access to the combination/code. The MLS requires that a valid working code for a mechanical keybox be included in the listing for ease of showing. The code is a confidential field that is not intended to be available to the public. Seller acknowledges that they have been advised that:
    a. The purpose and function of the keybox is to permit access to the interior of the Property by all members of GLVAR's MLS as well as any licensed professionals necessary to facilitate the sale of the Property;
    b. Seller should safeguard Personal Property and valuables located within the Property;
    c. It is not a requirement of the GLVAR's MLS for a Seller to allow the use of a keybox;
    d. Where a tenant occupies the Property, the tenant's consent is also required, which shall be obtained by the Seller or his/her Property Manager;
    e. Seller ☐ **does** -OR- ☑ **does not** authorize Broker to issue "One Day Codes" to access the electronic keybox installed on the property. A "One Day Code" is an electronic means to allow access to the keybox key compartment. Broker shall only issue such codes to licensed professionals. Broker further agrees to use all reasonable means to verify the identity of said licensed professionals.
    f. Owner acknowledges that GLVAR, the MLS, Broker or its Listing Agent is not insuring owner or occupant against theft, loss or vandalism resulting from such access. Owner is responsible for taking such steps as may be necessary to secure and protect the Property during any time that a keybox is being used and obtaining appropriate insurance.

**14. RENT/LEASE:** The Property ☐ **is** -OR- ☑ **is not** currently occupied by a Tenant.
The Property ☐ **is** -OR- ☑ **is not** subject to a management agreement with: (name of Property Manager and phone number):_____ Seller agrees to not rent or lease the Property during the term of this Agreement without fourteen (14) days prior written notice to Broker.

**15. TAX WITHHOLDING:** Seller agrees to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act (FIRPTA). If applicable (as designated in the Seller's Response herein), Seller agrees to complete, sign, and deliver to ESCROW HOLDER a certificate indicating whether Seller is a foreign person or a nonresident alien pursuant to the Foreign Investment in Real Property Tax Act (FIRPTA). A foreign person is a nonresident alien individual; a foreign corporation not treated as a domestic corporation; or a foreign partnership, trust or estate. A resident alien is not considered a foreign person under FIRPTA. Additional information for determining status may be found at www.irs.gov. Seller understands that if Seller is a foreign person then the Buyer must withhold a tax in an amount to be determined by ESCROW HOLDER in accordance with FIRPTA, unless an exemption applies. Seller agrees to sign and deliver to the ESCROW HOLDER the necessary documents, to be provided by the ESCROW HOLDER, to determine if withholding is required (see 26 USC Section 1445).

**FIRPTA DECLARATION:** Seller declares that he/she
☑ **is not** –OR– ☐ **is** a foreign person therefore subjecting this transaction to FIRPTA withholding.

**SELLER(S) INITIALS:** [ _signature_ ] / [ ] / [ ] / [ ]

Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.

SELLER(S) INITIALS: [ _signature_ ] / [ ] / [ ] / [ ]

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com



dotloop signature verification: dtlp.us/8jC5-02bU-9sX0

**16.  MEDIATION:** The Broker and Seller agree to negotiate in good faith in an effort to resolve any dispute related to this Listing Agreement that may arise between the parties. If the dispute cannot be resolved by negotiation, the dispute will be submitted to a mediator agreed to by the parties. Mediation fees, if any, shall be divided equally among the parties involved. In no event, shall Seller sue the Broker or be party to any class action litigation against Broker or related entities. By initialing below, the parties confirm that they have read and understand this section and voluntarily agree to the provisions thereof.

**SELLER(S) INITIALS:**  **BROKERS INITIALS:**

**17. MULTIPLE LISTING SERVICE (MLS):** Broker shall provide to the GREATER LAS VEGAS ASSOCIATION OF REALTORS® (GLVAR) Multiple Listing Service (MLS) all listing information about the Property that is required by the MLS and such additional information as may be permitted by the MLS. The information provided to the MLS in accordance with MLS rules and policies will be published and disseminated to its Participants and Subscribers in accordance with its Rules and Regulations and Sections 18, 19, 20 and 22 herein, unless Seller selects the Office Exclusive option in Section 21 and signs the Office Exclusive Form. Broker is authorized to cooperate with other real estate Brokers, and to report the sale, its price, terms and financing for the publication, dissemination information and use by authorized Association members, MLS Participants and Subscribers.  Seller acknowledges and agrees that Broker may not include in the listing of the Property on the MLS, any offer of cooperation and compensation to the Buyer Broker.

**18.  MARKETING  AND  ADVERTISING:** Seller acknowledges that, unless Seller signs a Photo Exclusion Agreement, photographs of the Property may be taken for publication in the MLS computer system.  Subject to Section 20, Seller agrees that the Property may be advertised in any and all formats of media including but not limited to electronic and print advertising. Should Seller provide photographs of the Property, Seller warrants and represents that Seller has the ownership rights to said photographs and, by providing said photographs, Seller irrevocably assigns any and all ownership rights in such photographs to the Broker. Seller further acknowledges that once images are placed on the Internet, neither the Broker nor the Seller have control over who can view such images and what use viewers may make of the images or how long such images may remain on the internet. Seller acknowledges that prospective Buyers and/or other persons coming on to the property may take photographs, video and/or other images of the property. Seller understands that Broker does not have the ability to control or block the taking of and use of images by such persons. Once the images are taken and or put into electronic display on the Internet or otherwise published neither the Broker nor the Seller has control over how such images are used.

Seller ☑ **does -OR-**☐ **does not** authorize Broker to commence public marketing and advertising activities.

**SELLER(S) INITIALS:**

**19. SIGN:** Seller☑ **does -OR-**☐**does not** authorize Broker to install a FOR SALE/LEASE sign on the Property. (**Seller may only authorize a sign if Seller has authorized marketing/advertising in Section 18.)**

**20. SELLER OPT OUTS:** Seller further understands and acknowledges that MLS will disseminate the Property's listing information to those MLS Brokers and Agents (and/or their web vendors) who operate Internet sites, as well as other online providers, and that such sites are generally available to the public. Some, but not all, of these websites may include a commentary section where consumers may include reviews and comments about the Property in immediate conjunction with the listing (blogging), or provide a link to the comments. In addition, some, but not all, of these websites may display an automated estimate of the market value of the Property in immediate conjunction with the listing, or provide a link to the estimate. Seller can instruct Broker to have the MLS not display the property on the Internet. Seller also can instruct the MLS to not display the Property address on the Internet. Seller understands that these opt outs would mean consumers searching for listings on the Internet may not see the Property or the Property's address in response to their search.

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS:

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com     **TRANSACTIONS** TransactionDesk Edition

dotloop signature verification: dtlp.us/8jC5-02bU-9sX0

Seller may opt-out of any of the following features by initialing the appropriate space(s) below:

a. [ *JF* ] / [   ] / [   ] / [   ] I/we have advised the Broker that I/we **DO NOT** want a **commentary section** displayed or linked to the listed Property (the site operator may indicate that the feature was disabled at the request of the seller).

b. [   ] / [   ] / [   ] / [   ] I/we have advised the Broker that I/we **DO NOT** want an **automated estimate of value** displayed or linked to the listed Property (the site operator may indicate that the feature was disabled at the request of the seller). *Please note that this automated estimate of value restriction applies to VOW offices only. Virtual Office Websites ("VOWs") are Internet sites operated by MLS Participant Brokers through which they establish relationships and work with clients and customers in cyberspace in ways similar to how real estate professionals interact with clients and customers in a "brick and mortar" environment. This restriction does not apply to automated estimates of value created by non-MLS Participant websites.

—**OR**—

c. [   ] / [   ] / [   ] / [   ] Seller does **NOT** opt out of any of the above.

**21. OFFICE EXCLUSIVE:** Seller does not authorize Broker to disseminate listing information about the Property via GLVAR MLS. However, Seller acknowledges and agrees that Broker will file the fully executed Office Exclusive Form with GLVAR MLS in accordance with GLVAR MLS Rules and Regulations. Further, Seller acknowledges and agrees that if there is any Public Marketing of an Office Exclusive listing, then Broker must submit the listing to GLVAR MLS for dissemination to its participants within one (1) business day of the Public Marketing. Public Marketing includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays (including IDX and VOW), digital communications marketing (email blasts), multi-brokerage listing sharing networks, and applications available to the general public.

Seller ☐ does -OR- ☑ does **NOT** select an Office Exclusive listing. (**Seller may not select this option if Seller has authorized marketing/advertising in Section 18.**)

**SELLER(S) INITIALS:** [ *JF* ] / [   ] / [   ] / [   ]

**22. USE OF LISTING CONTENT:** Seller acknowledges and agrees that all photographs, images, graphics, video recordings, virtual tours, drawings, written descriptions, remarks, narratives, pricing information, and other copyrightable elements relating to the Property provided by Seller to Broker or Broker's agent (the "Broker Listing Content") and any changes thereto, may be filed with MLS, included in compilations of listings, and otherwise distributed, publicly displayed and reproduced in any medium. Seller hereby grants to Broker a non-exclusive, irrevocable, worldwide, royalty-free license to use, sublicense through multiple tiers, publish, display, and reproduce the Broker Listing Content, to prepare derivative works of the Broker Listing Content, and to distribute the Broker Listing Content or any derivative works thereof in any medium. This non-exclusive license shall survive the termination of this Agreement for any reason whatsoever. Seller represents and warrants to Broker that the Broker Listing Content, and the license granted to Broker for the Broker Listing Content, do not violate or infringe upon the rights, including any copyright rights, of any person or entity. Seller acknowledges and agrees that as between Seller and Broker, all Broker Listing Content is owned exclusively by Broker, and Seller has no right, title or interest in or to any Broker Listing Content.

**23. NEVADA LAW:** This Agreement is executed and intended to be performed in the State of Nevada, and the laws of Nevada shall govern its interpretation and effect. The parties agree that the State of Nevada, and the county in which the Property is located, is the appropriate judicial forum for any litigation, related to this Agreement.

**24. ENTIRE CONTRACT:** All prior negotiations and agreements between the parties are incorporated in this Agreement, which constitutes the entire contract. Its terms are intended by the parties as a final, complete, and exclusive expression of their agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. This Agreement and any supplement, addendum, or modification, including any photocopy or facsimile, may be executed in two or more counterparts, all of which shall constitute one and the same writing. The terms of this Agreement may not be amended, modified or altered except through a written agreement signed by all of the parties hereto. **The parties agree that an MLS Change Order signed by Broker and Seller shall act as a valid written addendum to this Agreement.**

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: [ *JF* ] / [   ] / [   ] / [   ]



dotloop signature verification: dtlp.us/BjC5-02bU-9sZ0

**25. PARTIAL INVALIDITY:** In the event that any provision of this Agreement shall be held to be invalid or unenforceable, such ruling shall not affect the validity or enforceability of the remainder of the Agreement in any respect whatsoever.

**26. FORCE MAJEURE:** Either party may terminate this Agreement without liability to the other in the event of a force majeure such as acts of terrorism, war, epidemics, pandemics or other development beyond the control of the party that makes fulfillment of that party's obligations hereunder illegal, impossible, or impractical.

**27. DAMAGES CAP** Notwithstanding any provision to the contrary contained in this Agreement, if Broker shall be liable to Seller for any matter arising from this Agreement, whether based upon an action or claim in contract, warranty, equity, negligence, intended conduct or otherwise (including any action or claim arising from an act or omission, negligence or otherwise, of the liable party) the maximum aggregate liability of Broker to Seller under this agreement shall not exceed the aggregate commission amount that has been paid by Seller to Broker.

**28. WARRANTY OF OWNERSHIP:** Seller warrants that Seller is the sole owner of the Property or has the authority to execute this Agreement. By signing below Seller acknowledges that Seller has read and understands this Agreement and agrees to the terms thereof.

**29. FORECLOSURE:** Seller understands that failure to make loan payments may result in foreclosure of the Property by a mortgage holder and/or lien holder. Information regarding the foreclosure or litigation status of a property is available from the County Recorder where the Property is located. Seller represents that at the time of this listing (complete parts a and b):

a. A Notice of Default (Breach) and Election to Sell ☑ **has not –OR–** ☐ **has (date:_____)** been recorded against the Property. **If a Notice of Default has not been recorded against the Property as of the date of this Agreement, Seller agrees to notify Broker within five (5) business days of receipt of such a notice.** Seller understands that the recording of a Notice of Default begins a statutory foreclosure period, which varies in duration. At the end of the foreclosure period, the Property typically will be sold at a Trustee's Sale (foreclosure sale) and Seller will lose all rights and interest in the Property.

b. Seller ☑ **has not –OR–** ☐ **has (date:_____)** been served with a Summons and Complaint from Lender seeking to foreclose the property in court. The Parties understand that the filing and service of a Summons and Complaint begins a judicial foreclosure process which varies in duration, and which may result in a judgment against Seller. The judgment will typically be enforced through a foreclosure sale conducted by the Sheriff for the county where the Property is located and Seller will lose all rights and interest in the Property.

c. Seller understands that if the Property is not sold to a buyer before a foreclosure sale of the Property, Seller will lose all rights and interest in the Property. Seller understands that Broker cannot stop a foreclosure.

**SELLER(S) INITIALS:** [initialed] / [ ] / [ ] / [ ]

**30. SIGNATURES:** This Agreement may be signed by the parties manually or electronically (digitally) and on more than one copy, which, when taken together, each signed copy shall be read as one complete form. Facsimile signatures may be accepted as original.

**31. RECOMMENDATIONS:** If Broker recommends a builder, contractor, escrow company, title company, pest control service, appraiser, lender, home inspection company or home warranty company or any other person or entity to Seller for any purpose, said recommendation shall be independently investigated and evaluated by Seller, who hereby acknowledges that any decision to enter into any contractual arrangement with any such person or entity recommended by Broker will be based solely upon such independent investigation.

**32. DEFAULT:** If Seller materially breaches this Listing, Seller is in default and will be liable to Broker for the amount of the Broker's fee specified in Section 5 and any other fees Broker is entitled to receive under this Agreement. If a sales price is not determinable in the event of an exchange or breach of this Listing, the Listing Price will be the sales price for purposes of computing Broker's fee. If Broker breaches this Agreement, Broker is in default and Seller may exercise any remedy at law.

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: [initialed] / [ ] / [ ] / [ ]

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com           TRANSACTIONS
TransactionDesk Edition

dotloop signature verification: dtlp.us/BjC5-02bU-9sX0

**33. BINDING EFFECT:** Seller's obligation to pay Broker an earned fee is binding upon Seller and Seller's heirs, administrators, executors, successors and permitted assignees.

**34. JOINT AND SEVERAL:** All Sellers executing this Listing are jointly and severally liable for the performance of all its terms.

**35. TIME OF ESSENCE:** Time is of the essence of this Agreement and each of its terms.

**36.** Seller hereby agrees that once an offer has been accepted the MLS Status shall be (choose one only):
☑ Under Contract Show: The property may be shown even after an offer has been accepted.
☐ Under Contract No Show: The property will not be shown once an offer has been accepted.
☐ Determined by seller upon acceptance of the offer.

**37. 1031 EXCHANGE:** The Seller ☐**does -OR- ☑does not** intend to perform an IRC Section 1031 tax deferred exchange. If yes, Broker is aware and acknowledges that Seller intends to perform an IRC Section 1031 tax deferred exchange. Broker will cooperate in such an exchange and Seller agrees to hold Broker harmless from any and all claims, costs, liabilities or delays in time resulting from such an exchange.

**ADDITIONAL TERMS:**

_____

_____

_____

_____

**THE PRE-PRINTED PORTION OF THIS AGREEMENT HAS BEEN APPROVED BY THE GREATER LAS VEGAS ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OR THE TAX CONSEQUENCES THEREOF.  FOR LEGAL OR TAX ADVICE, CONSULT YOUR ATTORNEY OR TAX ADVISOR.**

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS:

 

dotloop signature verification: dtlp.us/BjC5-02bU-9sX0

**By signing below, Seller consents to receive transmissions sent from Broker to the e-mail address(es) set forth. Seller agrees to keep Broker advised of his/her address and telephone number (or a number where they may be reached within 24 hours) at all times during the term of this Agreement.**

**SELLER:**

Date _____ Time _____ ☐ AM ☐ PM

Seller's Signature [Luke Fitzgerald President of Koinonia Construction / dotloop verified 02/06/26 9:02 AM PST SER1-HE6S-H42Q-YXC9] Printed Name: Luke Fitzgerald, President of Koinonia Construction Inc.

Phone _____ E-Mail elkoluke@gmail.com   Address _____

Date _____ Time _____ ☐ AM ☐ PM

Seller's Signature [_____] Printed Name: _____

Phone _____ E-Mail _____   Address _____

Date _____ Time _____ ☐ AM ☐ PM

Seller's Signature [_____] Printed Name: _____

Phone _____ E-Mail _____   Address _____

Date _____ Time _____ ☐ AM ☐ PM

Seller's Signature [_____] Printed Name: _____

Phone _____ E-Mail _____   Address _____

**BROKER:**

Company LPT Realty, LLC

Address 2403 N 5th St   City Elko   State _____ Zip 89801

Phone 2084044061   E-Mail kconelko@gmail.com

Designated Licensee Signature [Jennifer Welch / dotloop verified 02/06/26 8:44 AM PST KWQO-IDTX-UML4-BULH]   License No. S.0203284

Printed Name: Jennifer Welch   Licensee's Phone: 2084044061

Broker's Signature [Jen Mcdonald / dotloop verified 02/06/26 11:26 AM PST 1JEE-YB2V-X2AX-Z902] License No. B.3279

Printed Name: Jen Mcdonald   Date _____ Time: _____ ☐ AM ☐ PM

**AN EXCLUSIVE BROKERAGE AGREEMENT MUST BE SIGNED BY THE BROKER TO BE VALID**

Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.

SELLER(S) INITIALS:  ☐ ☐ ☐

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com    TRANSACTIONS TransactionDesk Edition

dotloop signature verification: dtlp.us/8jC5-02bU-9sX0



# WHAT EVERYONE SHOULD KNOW ABOUT EQUAL OPPORTUNITY IN HOUSING



The sale and purchase of a home is one of the most significant events that any person will experience in their lifetime. It is more than the simple purchase of housing, for it includes the hopes, dreams, aspirations, and economic destiny of those involved.

## THE LAW - Civil Rights Act of 1866

The Civil Rights Act of 1866 prohibits all racial discrimination in the sale or rental of property.

## Fair Housing Act

The Fair Housing Act declares a national policy of fair housing throughout the United States. The law makes illegal any discrimination in the sale, lease or rental of housing, or making housing otherwise unavailable, because of race, color, religion, sex, handicap, familial status, or national origin.

## Americans with Disabilities Act

Title III of the Americans with Disabilities Act prohibits discrimination against the disabled in places of public accommodations and commercial facilities.

## Equal Credit Opportunity Act

The Equal Credit Opportunity Act makes discrimination unlawful with respect to any aspect of a credit application on the basis of race, color, religion, national origin, sex, marital status, age or because all or part of the applicant's income derives from any public assistance program.

## State and Local Laws

State and Local laws often provide broader coverage and prohibit discrimination based on additional classes not covered by federal law.

## THE RESPONSIBILITIES

The home seller, the home seeker, and the real estate professional all have rights and responsibilities under the law.

## For the Home Seller

You should know that as a home seller or landlord you have a responsibility and a requirement under the law not to discriminate in the sale, rental and financing of property on the basis of race, color, religion, sex, handicap, familial status, or national origin. You cannot instruct the licensed broker or salesperson acting as your agent to convey for you any limitations in the sale or rental, because the real estate professional is also bound by law not to discriminate. Under the law, a home seller or landlord cannot establish discriminatory terms or conditions in the purchase or rental, deny that housing is available or advertise that the property is available only to persons of a certain race, color, religion, sex, handicap, familial status, or national origin.

## For the Home Seeker

You have the right to expect that housing will be available to you without discrimination or other limitation based on race, color, religion, sex, handicap, familial status, or national origin.

This includes the right to expect:

- housing in your price range made available to you without discrimination
- equal professional service
- the opportunity to consider a broad range of housing choices
- no discriminatory limitations on communities or locations of housing
- no discrimination in the financing, appraising or insuring of housing
- reasonable accommodations in rules, practices and procedures for persons with disabilities
- non-discriminatory terms and conditions for the sale, rental, financing, or insuring of a dwelling
- to be free from harassment or intimidation for exercising your fair housing rights.



Seller(s) Initials

## FOR THE Real Estate Professional

**As a home seller or home seeker, you** should know that the term REALTOR® identifies a licensed professional in real estate who is a member of the NATIONAL ASSOCIATION OF REALTORS®. Not all licensed real estate brokers and salespersons are members of the National Association, and only those who are can identify themselves as REALTOR®. They conduct their business and activities in accordance with a strict Code of Ethics. As agents in a real estate transaction, licensed brokers or salespersons are prohibited by law from discriminating on the basis of race, color, religion, sex, handicap, familial status, or national origin. A request from the home seller or landlord to act in a discriminatory manner in the sale, lease or rental cannot legally be fulfilled by the real estate professional.

## DEED AND PROPERTY COVENANTS OR RESTRICTIONS OF RECORD

During the history of our country, some persons have placed restrictions on property based on race, color, religion, sex, handicap, familial status, or national origin. Generally, these restrictions are void and unenforceable, with limited exceptions for particular types of religious housing and housing for older persons. The publication of these void restrictions may convey a message that the restrictions continue to be valid. Any time a sales associate or broker is asked to provide a copy of the covenants or restrictions of record relating to the use of a property the following message should be included:

*These documents may contain restrictions or covenants based on race, color, religion, sex, handicap, familial status, or national origin.*
*Such restrictions or covenants generally are void and unenforceable as violations of fair housing laws.*
*Be assured that all property is marketed and made available without discrimination based on race, color, religion, sex, handicap, familial status, or national origin. Should you have any questions regarding such restrictions, please contact your attorney.*

## THE EQUAL OPPORTUNITY PROGRAM

The NATIONAL ASSOCIATION OF REALTORS® has developed a Fair Housing Program to provide resources and guidance to REALTORS® in ensuring equal professional services for all people.

## The Code of Ethics

Article 10 of the NATIONAL ASSOCIATION OF REALTORS® Code of Ethics requires that "REALTORS® shall not deny equal professional services to any person for reasons of race, color, religion, sex, handicap, familial status, or national origin. REALTORS® shall not be a party to any plan or agreement to discriminate against a person or persons on the basis of race, color, religion, sex, handicap, familial status, or national origin."

A REALTOR® pledges to conduct business in keeping with the spirit and letter of the Code of Ethics. Article 10 imposes obligations upon REALTORS® and is also a firm statement of support for equal opportunity in housing.

## Fair Housing Partnership

The Fair Housing Partnership negotiated with the U.S. Department of Housing and Urban Development (HUD) outlines a program of voluntary compliance. REALTORS® voluntarily participate in activities and program to acquaint the community with the availability of equal housing opportunity, to establish office procedures to ensure that there is no denial of equal professional service, to make materials available which will explain this commitment, and to work with other groups within the community to identify and remove barriers to fair housing.

## FURTHER ASSISTANCE

Local Boards of REALTORS® will accept complaints alleging violations of the Code of Ethics filed by a homeseeker who alleges discriminatory treatment in the availability, purchase or rental of housing. Local Boards of REALTORS® have a responsibility to enforce the Code of Ethics through professional standards procedures and corrective action in cases where a violation of the Code of Ethics is proven to have occurred. Complaints alleging discrimination in housing may be filed with the nearest office of the Department of Housing and Urban Development (HUD), or by calling HUD's Discrimination Hotline at 1-800-669-9777, 1-800-290-1617 (TYY). For information and publications on fair housing, call HUD's Fair Housing Information Clearinghouse at 1-800-343-3442.

Exclusive Right (ER) Listing Agreement Rev. 07.24        Page 10 of 10        © 2022 Greater Las Vegas Association of REALTORS®

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com        **TRANSACTIONS** TransactionDesk Edition

dotloop signature verification: dtlp.us/7Jxe-eVQs-CQJA





## The Greater Las Vegas Association of REALTORS®
## Multiple Listing Service
## CHANGE ORDER

ADDRESS/DESCRIPTION 2427 N 5th St, Elko, NV 89801                                      MLS# 3624562

PROPERTY TYPE Townhouse                                          PRICE $ 369900

In reference to the Listing Agreement (hereinafter "Agreement") executed by Koinonia Construction Inc.

_____ as Seller(s)

and LPT Realty, LLC                                   as Broker dated 02/06/2026                    the parties hereby agree as follows:

☐    (1)   The Agreement is renewed. The parties agree to extend the expiration date of the Agreement from _____, terminating at midnight, to _____ (If #1 is selected, a copy of the Change Order must be submitted to the MLS)

☑    (2)   To change the selling price from $ 369900                    to $ 350000                    .

☐    (3)   To place the subject property back on the market.

☐    (4)   To change the MLS Status to Under Contract Show ("UCS") which means the listing is under contract, but showings are still being scheduled.

☐    (5)   To change the MLS Status to Under Contract No Show ("UCNS") which means the listing is under contract, but showings are no longer being scheduled.

☐    (6) To change the terms and/or conditions of the Agreement as follows:

This Change Order is hereby acknowledged, pursuant to the Agreement and is effective as of the date below.

| *Luke Fitzgerald, President of Koinonia Construction Inc.* | dotloop verified 02/07/26 12:12 PM PST P0T6-V8RQ-OT6J-BEHX | Seller | | Seller |

Date _____          Date _____

| *Jen McDonald* | dotloop verified 02/09/26 10:21 AM PST JHW5-PM7L-XAM4-TBJ7 | Broker | Date _____ |

Designated Licensee (NAME) Jennifer Welch

### A CHANGE ORDER MUST BE SIGNED BY BOTH BROKER AND SELLER TO BE VALID

**GLVAR MLS Department**                    **Fax: 702-732-3154**                    **Mls@glvar.org**

MLS Change Order Rev 11.19                         ©2019 Greater Las Vegas Association of REALTORS® MLS

1525079v.1

This form presented by Jenia N McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com    TRANSACTIONS
TransactionDesk Edition

# EXHIBIT "E"

dotloop signature verification: dtlp.us/onu0-Evjt-IxhN
DigiSign Verified - f68acd85-52d6-462b-8864-8e9c4474e233



# RESIDENTIAL OFFER AND ACCEPTANCE AGREEMENT



REALTOR

__Luna Caballero_____

_____ (BUYER),

agrees to purchase the real property commonly described as __4511 N 5th street__,

situated in the ☑ City OR ❑ Unincorporated Area of __Elko_____, County of __Elko_____,

State of Nevada, APN __001-61M-023_____ (PROPERTY) (legal description will be

supplied in escrow), on the following terms: **COE**

BUYER ☑ does, ❑ does not intend to occupy the Property as a residence.

**EARNEST MONEY DEPOSIT (EMD)**     Evidenced by ❑ Check or ❑ Wire Transfer or ❑ other _____

payable to __Landmark Title_____, and then deposited **within** ❑ **two (2) OR** ❑ __5__ **business days**

from Acceptance, with __Breanna_____.

Authorized escrow holder to be selected by ❑ BUYER ☑ SELLER.                                     $ __2,500.00__

**BALANCE OF CASH DOWN PAYMENT** (not including closing costs)                  $ __34,000.00__

Source of down payment __Personal Funds_____.

**CASH PURCHASE**     BUYER to provide evidence, satisfactory to SELLER, of sufficient cash

available to complete this purchase within _____ days from Acceptance.

**NEW FIRST LOAN**: TYPE ☑ Conventional ❑ FHA ❑ VA ❑ Rural ❑ Private

❑ Other _____                              $ __3,035.00__

**NEW SECOND LOAN**: TYPE ❑ Conventional ❑ Private

❑ Other _____                              $ _____

**OTHER** (Specify in Additional Terms and Conditions or Financing Addendum):              $ _____

All remaining loan fees will be paid as required by law, ordinance and/or regulation.

**TOTAL PURCHASE PRICE** in the sum of (not including closing costs):                  $ __340,000.00__

**SELLER** will compensate Buyer's Broker, __3__ % of the PURCHASE PRICE, or $ _____, at COE,

paid to __Robinhood Realty_____ (Brokerage).

**SELLER** to credit ☑ __6__ % of the PURCHASE PRICE, or ❑ $ _____, at CLOSE OF ESCROW

(COE) towards BUYER's recurring and/or non-recurring closing costs.

**CLOSING**     Close of Escrow (COE) will occur on __04/30/2026__ or such earlier date as agreed in writing by Buyer and

Seller. The parties will deposit, with the authorized escrow holder, all funds and instruments necessary to complete the

transaction in accordance with the terms in this Agreement.

**TIME IS OF THE ESSENCE**     Time is of the essence of this Agreement.

Address __4511 N 5th street, Elko   Nv 89445_____

Buyer [ _LC_____ / _____ / _____ / _____ ] and Seller [ _____ / _____ / _____ / _____ ] have read this page.

Page 1 of 12                    This copyright protected form was ___03/26/26___ REALTORS® of SNR.                    SNR© 03/26

6:16 PM PDT                    ROA 1/12

dotloop verified

Created by Waylon Huber with SkySlope® Forms

dotloop signature verification: dtlp.us/onu0-Evjt-lxhN
DigiSign Verified - f68acd85-52d6-462b-8864-8e9c4474e233

**SATISFACTION OF CONTINGENCIES (BUYER Initial Required)**

[ *LC* / / / ]   All contingencies will be satisfied according to their terms within the time limits specified, expire according to the time limits specified, or be waived in writing. If BUYER exercises their right to terminate this Agreement under any contingency, BUYER is not in default and is entitled to a refund of the EMD, less BUYER incurred expenses. If a contingency expires, it is waived. BUYER and SELLER will cooperate in providing written waivers of those contingencies.

**LOAN APPLICATION REQUIREMENT (BUYER initial required if applying for a Loan)**

[ *LC* / / / ]   **Within five (5) business days** from Acceptance, BUYER agrees to (1) submit a completed loan application, including all documentation, to a lender of BUYER's choice and (2) furnish a pre-approval letter to SELLER based upon a standard factual credit report, acceptable debt to income ratios and sufficient funds to complete the transaction and (3) agrees to authorize ordering of the appraisal. If BUYER fails to complete any of the above requirements, SELLER may terminate this Agreement **within two (2) business days** and EMD will be returned to BUYER less BUYER incurred expenses.

**INSURANCE CONTINGENCY (BUYER Initial Required)**

|  | Included |  |  |  | Waived |  |  |
|---|---|---|---|---|---|---|---|
| [ *LC* | / | / | / ] | [ | / | / | / ] |

BUYER to have __30__ days from Acceptance to verify the ability to secure satisfactory Property insurance.

**APPRAISAL**

☑ BUYER ☐ SELLER ☐ split equally ☐ other _____ will pay the appraisal fee.
☐ BUYER ☑ SELLER ☐ split equally ☐ other _____ will pay the re-inspection fee.
BUYER's Lender may require an appraisal. BUYER may elect to obtain an appraisal even if an appraisal waiver is available.

**APPRAISAL CONTINGENCY (BUYER Initial Required)**

|  | Included |  |  |  | Waived |  |  |
|---|---|---|---|---|---|---|---|
| [ *LC* | / | / | / ] | [ | / | / | / ] |

BUYER's Appraisal contingency will expire after __30__ days from Acceptance.

If the appraisal does not meet or exceed the purchase price or there are appraisal conditions, BUYER has the right to exercise one of the following options within the contingency period:
    (A) proceed with the transaction without regard to the amount of the appraised valuation or appraisal conditions; or
    (B) renegotiate with SELLER, provided that if such renegotiation is not successful within 3 business days, then either
    party may terminate this Agreement upon written notice and EMD will be returned to BUYER less BUYER incurred
    expenses; or
    (C) terminate this Agreement.
Parties acknowledge that FHA and VA guidelines may supersede this provision.

**LOAN CONTINGENCY (BUYER Initial Required)**

|  | Included |  |  |  | Waived |  |  |
|---|---|---|---|---|---|---|---|
| [ *LC* | / | / | / ] | [ | / | / | / ] |

BUYER's loan contingency will expire after __30__ days from Acceptance.
BUYER consents to the lender's release of loan status and conditions of approval to SELLER and Brokers. SELLER has no obligation to cooperate with BUYER's efforts to obtain any financing other than as specified in this Agreement.

Address __4511 N 5th street, Elk_____9445_____

Buyer [ *LC* / / / ] and Seller [ / / / ] have read this page.

This copyright protected form was created by REALTORS® of SNR.   SNR® 03/26
ROA 2/12

dotloop signature verification: dtlp.us/onu0-Evjt-IxhN
DigiSign Verified - f68acd85-52d6-462b-8864-8e9c4474e233

**CONTINGENT ON SALE AND CONVEYANCE OF OTHER PROPERTY**

☑ This Agreement **IS NOT** contingent upon the sale and conveyance of BUYER's property;

**OR**

❑ This Agreement **IS** contingent upon the sale and conveyance of BUYER's property described as

_____. **BUYER to select option A or B.**

A. ❑ BUYER's property is in escrow scheduled to close on or before _____. The sale of BUYER's property **is not** contingent on the sale and conveyance of a third party's property.

**OR**

❑ BUYER's property is in escrow scheduled to close on or before _____. The sale of BUYER's property **is** contingent on the sale and conveyance of a third party's property.

B. ❑ BUYER's property is currently listed in the MLS System by a REALTOR®.

**OR**

❑ BUYER's property will be listed within _____ days in the MLS System by a REALTOR®.

If BUYER's property does not obtain an accepted offer within _____ days of this Acceptance with a scheduled closing on or before _____, then this Agreement will terminate unless BUYER and SELLER otherwise agree in writing. BUYER will not accept an offer contingent on the sale of a third party's property without SELLER's written approval. If BUYER accepts an offer contingent on the sale of a third party's property without SELLER's written approval, SELLER may terminate this Agreement.

SELLER will have the right to continue to offer this Property for sale and accept written backup offers only, subject to BUYER's rights under this Agreement.

If escrow on BUYER's property does not close on or before _____, this Agreement will terminate, unless BUYER and SELLER otherwise agree in writing, and the parties agree to cancel the escrow and return the EMD to BUYER less BUYER incurred expenses.

BUYER will provide information regarding the listing, the escrow, and related escrows for the contingent property, including but not limited to, the closing date, loan status, inspections, and all additional contingencies on BUYER's property within _____ days of each event. BUYER authorizes SELLER and Brokers to obtain updates on BUYER's listing or escrow.

If any of the contingencies in the Contingent on Sale and Conveyance of Other Property section are not satisfied, SELLER reserves the right to terminate this Agreement. If SELLER terminates this Agreement, the parties agree to cancel the escrow and return the EMD to BUYER less BUYER incurred expenses.

**COMMON-INTEREST COMMUNITY DISCLOSURE**

Property ❑ is or ❑ is not located in a Common-Interest Community (CIC).

If so, complete the following:

SELLER will provide, at SELLER's expense, the CIC documents ("Resale Package(s)" including the statement of demand) as required by NRS 116. SELLER will order the Resale Package(s) **within five (5) days from Acceptance** and deliver to BUYER upon receipt. BUYER is aware there may be additional CIC documents that may be ordered. BUYER is aware there may be an inspection of the property by CIC management company. The amount of any delinquent assessments, including penalties, attorney's fees, and other charges provided for in the management documents will be paid current by SELLER at COE.

BUYER will have **five (5) days** from receipt of the Resale Package to review it. If BUYER does not approve the Resale Package, then written notice to cancel must be given **within that same five (5) day period**.

Address __4511 N 5th street, Elko, Nv 89445_____

Buyer [ _LC___ / _____ / _____ / _____ ] and Seller [ _____ / _____ / _____ / _____ ] have read this page.

Page 3 of 12            This copyright protected form was ___03/26/26___ REALTORS® of SNR.            SNR© 03/26
6:14 PM PDT
dotloop verified            ROA 3/12

dotloop signature verification: dtlp.us/onu0-Evjt-lxhN
DigiSign Verified - f68acd85-52d6-462b-8864-8e9c4474e233

**COMMON-INTEREST COMMUNITY FEES**

SELLER is responsible for payment of recurring CIC dues until COE.

BUYER is responsible for payment of recurring CIC dues after COE.

❑ BUYER ❑ SELLER ❑ split equally ❑ other _____ will pay for CIC Transfer Fees.

❑ BUYER ❑ SELLER ❑ split equally ❑ other _____ will pay for CIC Set Up Fees.

❑ BUYER ❑ SELLER ❑ split equally ❑ other _____ will pay for Other CIC Fees.

❑ BUYER ❑ SELLER ❑ split equally ❑ other _____ will pay for CIC Capital Contribution fees.

❑ BUYER ❑ SELLER ❑ split equally ❑ other _____ will pay for Existing special CIC assessments levied.

❑ BUYER ❑ SELLER ❑ split equally ❑ other _____ will pay for Existing special CIC assessments levied, but not yet due.

**AREA RECREATION PRIVILEGES AND RULES**    SELLER will comply with CIC (including area recreation privileges) rules regarding the return or transfer of any passes, identification cards, or keys for access to the CIC facilities and general improvements. BUYER will become familiar with the current CIC facilities and general improvement policies regarding recreation privileges and associated costs prior to COE.

**VESTED TITLE**    Title will vest as designated in the escrow instructions.

**EXAMINATION OF TITLE**    In addition to any encumbrances referred to in this Agreement, BUYER will take title to the Property subject to: (1) real estate taxes not yet due, and (2) Covenants, Conditions, & Restrictions (CC&Rs), rights of way, and easements of record, if any, that do not materially affect the value or intended use of the Property. **Within two (2) business days** from Acceptance, SELLER will order a preliminary title report, and CC&Rs, if applicable. **Within five (5) days** of BUYER's receipt of the preliminary title report and CC&Rs, BUYER's objections will be delivered to SELLER's Broker **within this five (5) day** period. Should BUYER object to any of the preliminary title report or CC&R's, SELLER will use due diligence to remove those objections prior to COE. If those objections cannot be removed, BUYER may elect to purchase the Property, subject to the existing objections, or BUYER may elect to terminate all rights and obligations under this Agreement. The EMD will be returned to BUYER, less BUYER incurred expenses. If SELLER is unwilling or unable to remove BUYER's objections, SELLER will deliver written notification to BUYER's Broker **within ten (10) days** of receipt.

**TITLE AND CLOSING COSTS**

❑ BUYER ☑ SELLER ❑ split equally ❑ other _____ will pay for a (Standard) owner's policy of title insurance.

❑ BUYER ❑ SELLER ❑ split equally ❑ other _____ will pay for a (Standard) lender's policy of title insurance.

BUYER is aware additional coverage policies are available.

☑ BUYER ❑ SELLER ❑ split equally ❑ other _____.will pay all costs associated with additional coverage policies

❑ BUYER ❑ SELLER ☑ split equally ❑ other _____ will pay Escrow Fee.

❑ BUYER ☑ SELLER ❑ split equally ❑ other _____ will pay Transfer Tax(es).

All remaining closing costs will be paid in the customary manner as required by law, ordinance and/or regulation.

**HOME WARRANTY CONTRACT (BUYER Initial Required)**

|              Included              |              Waived              |
|------------------------------------|----------------------------------|
| [_____/_____/_____] | [ _LC_____/_____/_____] |

❑ BUYER ❑ SELLER ❑ split equally ❑ other _____ will select a home warranty contract.

❑ BUYER ❑ SELLER ❑ split equally ❑ other _____ will pay for home warranty contract. The home warranty confirmation will be delivered to escrow and become effective at COE for not less than one year, at a price NOT to exceed $ _____.

Address __4511 N 5th street, Elko  Nv  89445__

Buyer [ _LC_ /_____ /_____ /_____ ] and Seller [ _____ /_____ /_____ /_____ ] have read this page.

03/26/26
6:14 PM PDT
dotloop verified

dotloop signature verification: dtlp.us/onu0-Evjt-ixhN
DigiSign Verified - f68acd85-52d6-462b-8864-8e9c4474e233

**FIXTURES**   All items permanently attached to the Property as of the date of this Agreement are included in the purchase price and are free of liens. This includes, but is not limited to: light fixtures, attached floor coverings, attic fans, central vacuum and related equipment, humidifier systems, evaporative cooling unit, non-portable dishwasher, drapes/curtains, blinds/shades including rods/hardware, doors and window screens, storm sash, awnings, TV antennas, TV wall mounts, satellite dishes, burglar, fire and smoke alarms and fire sprinklers, built-in pools/spas/saunas and related equipment, solar systems, conforming woodstoves, intercom systems, water softener systems, water and air filtration systems, attached fireplace screens, keyless entries, audio/video doorbell, electric garage door openers with controls, outdoor plants and trees (other than in movable containers), **OTHER**

_____

_____

**EXCLUDING** _____

_____

**PERSONAL PROPERTY**   The following personal property, on the premises when inspected by BUYER is included in the purchase price, free of liens, with no warranty or value implied: **Dishwasher,** _____

_____

_____

**SYSTEMS AND MAINTENANCE**   Until possession of the Property is delivered, SELLER will maintain the Property, including but not limited to, all existing structures, landscaping, grounds, appliances and systems. SELLER agrees to deliver the Property in a neat and clean condition, and remove all debris and personal belongings, **EXCLUDING**: _____

_____

**DESTRUCTION OF IMPROVEMENTS**   If the improvements of the Property are destroyed, materially damaged, or found to be materially defective prior to COE, BUYER may terminate this Agreement by written notice delivered to SELLER's Broker, and EMD will be returned to BUYER less BUYER incurred expenses.

**OIL AND PROPANE**   If applicable, any oil or propane fuel existing at the time from Acceptance, allowing for normal use up to COE, will be ❏ purchased by BUYER ❏ included in the purchase price. If the fuel is purchased by BUYER, SELLER will contact the fuel company to measure the existing fuel **no later than five (5) days** prior to COE. The fuel credit amount will be submitted to Escrow for credit to SELLER. BUYER is responsible for any fuel contracts after close of escrow. BUYER may conduct due diligence on ownership of propane or oil tank.

**SELLER'S REAL PROPERTY DISCLOSURE FORM (SRPD)**      SELLER will provide BUYER, **at time of acceptance**, a completed **SRPD**. BUYER will return an acknowledged copy to SELLER or terminate this Agreement, in writing, **within four (4) business days of receipt**. SELLER is required to disclose any new defects between the time the **SRPD** is executed and COE.

**DISCLAIMER**   BUYER understands that the **SRPD** is for disclosure purposes and is not a substitute for property inspections by experts including, but not limited to, engineers, geologists, architects, general contractors, specialty contractors such as roofing contractors, and pest control operators. BUYER is advised to retain any experts believed appropriate. BUYER understands and acknowledges Brokers cannot warrant the condition of the Property or guarantee all defects have been disclosed by SELLER. BUYER and SELLER acknowledge Brokers will not investigate the status of permits, location of Property lines, code compliance or any other Property condition.

**ACCESS**   SELLER agrees to provide practical and reasonable access to the Property to BUYER, and inspectors, for inspections and re-inspections, appraisal, and final walkthrough with notice. SELLER agrees to have all utilities in service the day of any inspection and until COE. If this transaction fails to close, the parties remain obligated to pay for inspections performed as agreed.

Address **4511 N 5th street, Elko**~~NV 89445~~

Buyer [ *LC* ____ / _____ / _____ / _____ ] and Seller [ ____ / _____ / _____ / _____ ] have read this page.

dotloop signature verification: dtlp.us/onu0-EvJt-IxhN
DigiSign Verified - f68acd85-52d6-462b-8864-8e9c4474e233

**INSPECTION CONTINGENCY**   BUYER has the right to inspect the Property, order all inspections, and select qualified professionals including, but not limited to, licensed contractors, certified building inspectors, and any other qualified professionals to inspect the Property. Destructive and/or invasive inspections may not be performed without prior approval of the SELLER.

BUYER will indicate inspections to be included or waived in the list below. The following is not a comprehensive list of possible inspections; therefore, BUYER should add any additional inspections necessary to satisfy BUYER under "OTHER."

All inspections will be completed and copies of all inspections will be provided to BUYER and SELLER at no additional expense

❑ within _____ days from Acceptance; OR

❑ within _____ days from other contingency: _____

Within the time specified above, BUYER will deliver to SELLER, in writing, one of the following:

A. approval of the inspections without requiring any repairs; OR

B. approval of the inspections with a Notice of Required Repairs or an Addendum listing all required repairs. SELLER will respond in writing to BUYER's repair request **within five (5) business days** of delivery.

   i) In the event SELLER fails to respond to BUYER'S written request within those five (5) business days, BUYER may terminate this Agreement and EMD will be returned to BUYER less BUYER incurred expenses.

   ii) Upon SELLER's written response, BUYER must respond in writing within two (2) business days or SELLER may terminate this Agreement and EMD will be returned to BUYER less BUYER incurred expenses; OR

C. termination of this Agreement. If BUYER terminates, BUYER is released from any and all obligations to SELLER, and BUYER is entitled to a refund of the EMD, less BUYER incurred expenses.

If any inspection is not completed by the deadline, it is waived unless otherwise agreed to in writing. SELLER is released from liability for the cost of repairs that inspection would have reasonably identified had it been conducted, except as otherwise provided by law.

| INSPECTIONS | Included | Waived | N/A | Paid By | |
|---|---|---|---|---|---|
| PEST INSPECTION | ❑ | ❑ | | ❑ BUYER | ❑ SELLER |
| HOME INSPECTION | ☑ | ❑ | | ☑ BUYER | ❑ SELLER |
| HEATING SYSTEM INSPECTION | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |
| COOLING SYSTEM INSPECTION | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |
| SURVEY Type _____ | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |
| WELL QUALITY | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |
| WELL QUANTITY | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |
| SEPTIC LID LOCATION/REMOVAL | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |
| SEPTIC PUMPING | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |
| SEPTIC SYSTEM INSPECTION | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |
| SEWER LINE INSPECTION | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |
| OIL TANK TEST Type _____ | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |
| (If oil tank needs to be filled to perform test, BUYER ❑ will, ❑ will not reimburse SELLER.) | | | | | |
| LEAD BASED PAINT ASSESSMENT OR INSPECTION | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |
| RADON INSPECTION | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |
| FIREPLACE INSPECTION | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |
| WOOD BURNING DEVICE INSPECTION | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |
| WOOD BURNING DEVICE CERTIFICATION (if required) | ❑ | ❑ | ❑ | ❑ BUYER | ❑ SELLER |

Certification requires inspection. In the event device does not meet all applicable codes and/or laws, the cost of its removal will be the responsibility of SELLER. Stovepipe to be capped off at the ceiling or fireplace to be restored to working order at SELLER's expense. If the property is located in the Lake Tahoe Basin, TRPA requires SELLER to provide BUYER the Wood Heater Statement of Compliance prior to COE.

| OTHER _____ | ❑ | ❑ | | ❑ BUYER | ❑ SELLER |

[ _LC_ / _____ / _____ / _____ ] (BUYER Initials) BUYER affirms the above selections.

Address **4511 N 5th street, Elko   NV   89445** _____

Buyer [ _LC_ / _____ / _____ / _____ ] and Seller [ _____ / _____ / _____ / _____ ] have read this page.

This copyright protected form was ~~created by~~ REALTORS® of SNR.   SNR© 03/26
03/26/26 8:14 PM PDT
dotloop verified
ROA 6/12

dotloop signature verification: dtlp.us/onu6-Evjt-IxhN
DigiSign Verified - f68acd85-52d6-462b-8864-8e9c4474e233

**REPAIRS**    SELLER understands that BUYER has not yet completed inspections, if any. BUYER reserves the right to request repairs (1) identified by the inspections; (2) as allowed by Nevada law for SRPD related disclosures or newly discovered defects; (3) or for repairs indicated on the Appraisal Report. SELLER reserves the right to refuse to complete requested repairs, but understands BUYER then has the right to terminate this Agreement. For any repairs completed a copy of all repair invoices and receipts will be delivered to BUYER prior to COE. Brokers have no responsibility to assist in the payment of any repairs, corrections or deferred maintenance on the Property. Items of general maintenance or items of cosmetic nature, excluding conditions of safety, soundness, or security of the Property, not expressly addressed in this Agreement, are deemed accepted by BUYER.

**RE-INSPECTIONS**
☑ BUYER ☐ SELLER ☐ split equally ☐ other _____ will pay for re-inspections if any.

**OMISSIONS FROM ESCROW INSTRUCTIONS**    The omission from the escrow instructions of any provision in this Agreement will not preclude any party from enforcing that provision. All written representations and warranties will survive the conveyance of the Property.

**BONDS AND ASSESSMENTS (Other than CIC)**    In the event there is a bond or assessment with a principal balance or that requires settlement in full prior to COE, it will be paid by:
☐ BUYER ☐ assumed by BUYER if allowed ☑ SELLER ☐ split equally ☐ other _____.

**PRORATION**    Any and all rents, taxes, interest, homeowner association fees, payments on bonds, assessments and other Property expenses, assumed by BUYER will be prorated as of the date of recordation of the deed. Security deposits, advance rentals, or considerations involving future lease credits will be credited to BUYER at COE.

**REASSESSMENT OF PROPERTY TAX**    BUYER is advised the Property may be reassessed in the future, which may result in a tax increase or a tax decrease.

**LAND USE REGULATION**    BUYER is advised the Property may be subject to the authority of the city, county, state, federal governments, and/or various courts having jurisdiction. These governmental entities, from time to time, have adopted and revised land use and environmental regulations that may apply to the Property. BUYER is advised to research the possible effect of any applicable land use or environmental regulation. Brokers make no representations or warranties regarding the existing permissible uses or future revisions to the land use regulations.

**ENVIRONMENTAL CONDITIONS**    BUYER is advised the Property may be located in an area found to have special flood hazards as indicated by FEMA, avalanche conditions, freezing temperatures, snow loads, seismic activity and/or wildland fires. It may be necessary to purchase additional insurance in order to obtain a loan for the Property. For further information, consult your lender, insurance carrier, or other appropriate agency. BUYER is advised to take all precautionary measures to protect Property from damage due to freezing temperatures and snow loads after COE.

**WILDLIFE/LIVESTOCK**    Nevada is home to livestock, wild and feral horses and burros, and other wildlife which may enter or impact the property. Numerous statutes and codes govern the management and protection of these animals and their relation to homeowners. BUYER is encouraged to contact appropriate authorities for further information.

**WATER METERS**    BUYER may be required at a future date to incur the cost of installation of a water meter and/or conversion to metered rates.

**WELLS**    Many factors may affect the performance of a well system. If the Property includes a well, BUYER may be required at some future date to incur the cost of connecting the Property to a public water system.

**WATER SYSTEMS**    Some areas may have additional fees or charges for the remediation of water systems.

dotloop signature verification: dtlp.us/onu0-Evjt-lxhN
DigiSign Verified - f68acd85-52d6-462b-8864-8e9c4474e233

**SEPTIC SYSTEMS**   If the Property includes a septic system, BUYER may be required at some future date to incur the cost of connecting the Property's plumbing to a public sewer system.

At COE, BUYER assumes all future costs associated with water meters, wells, and septic systems.

**PRIVATE ROADS**   SELLER will disclose if the Property shares a common road, access driveway, or right-of-way with another property. If a road maintenance agreement exists, SELLER will provide the agreement to BUYER.

**WATER RIGHTS**   Water rights, if any, will be included with the Property unless specifically excluded by deed or mutual agreement.

**TAX DEFERRED EXCHANGE**   If BUYER or SELLER request to enter into a IRC tax deferred exchange for the Property, each party agrees to cooperate with the other in connection with the exchange, including the execution of documents deemed necessary to effectuate same. No party will be obligated to delay the closing. All additional costs in connection with the exchange will be borne by the party requesting it. No party will be obligated to execute any note, contract, deed, or other document providing for any personal liability that would survive the exchange. The other party will be indemnified and held harmless against any liability arising or that has arisen on account of the acquisition of ownership of the exchanged property.

**FinCEN**   The Anti-Money Laundering Regulations for Residential Real Estate Transfers found in Title 31 of the Code of Federal Regulations ("Regulations") Part 1031, may require certain real estate professionals to report the transaction contemplated by this Residential Offer and Acceptance Agreement. This rule typically applies when a property is purchased without a qualifying loan (including all cash purchases), and the buyer is a legal entity, such as a trust, LLC, or corporation. If this transaction is subject to the Regulations, both the BUYER and SELLER must provide the required information and documentation before the closing date to the person or entity required to make the report, which may include, without limitation, the settlement agent. This information may include, without limitation, the full legal name, date of birth, residential address, and IRS taxpayer ID number for the BUYER, SELLER, and beneficial owners of the buying entity, and any other information reasonably requested by the reporting person to complete the report. The BUYER is responsible for all costs associated with preparing and filing the FinCEN Report.

**ADDITIONAL TERMS AND CONDITIONS**
1. Seller to provide a stainless steel refrigerator.
2. Seller to tape and texture the garage.
3. Seller will have home cleaned prior to COE.

**DEFINITIONS**   SELLING BROKER (sometimes referred to as buyers broker), means BROKER and any of its licensees representing BUYER in this transaction. LISTING BROKER means broker and any of its licensees representing SELLER in this transaction. DAYS means calendar days unless otherwise specified. In computing any period of time prescribed under this Agreement, the day of the event from which the designated period of time begins to run will not be included. The last day of the period so computed will be included. BUSINESS DAY means a day other than Saturday, Sunday, or legal holiday recognized in the state of Nevada. ACCEPTANCE or DATE FROM ACCEPTANCE means the date on which this Agreement and any other counter offers are fully executed and delivered. DELIVERY or RECEIPT means personal delivery, transmission by Facsimile (Fax), electronic delivery, or certified mail to BUYER, SELLER, Broker, or other representative. In the event of Fax, delivery will be deemed to have occurred at the time noted on the confirmation sheet generated by the sender's Fax. In the event of certified mail, delivery and receipt will be deemed to have occurred three (3) days following the date of mailing evidenced by the postmark on the envelope containing the delivered material. In the event of electronic delivery, delivery and receipt will be deemed to have occurred as set forth in Nevada Revised Statutes (NRS) 719.320.



Address **4511 N 5th street, Elko** **445**

Buyer [ *LC* / / / ] and Seller [ / / / ] have read this page.
Page 8 of 12                         This copyright protected form was prepared by REALTORS® of SNR.                         SNR© 03/26
                                                                                                                              ROA 8/12

dotloop signature verification: dtlp.us/onu0-Evjt-ixhN
DigiSign Verified - f68acd85-52d6-462b-8864-8e9c4474e233

**VERIFICATION OF INFORMATION** Any information relating to square footage, land or its use, and/or improvements of the land are approximate or estimates only, and neither SELLER nor Brokers make any representation or guarantee regarding their accuracy. Any oral or written representations by SELLER or Brokers regarding the age of improvements, size, or square footage of a parcel or building, or the location of property lines, may not be accurate. Apparent boundary line indicators such as fences, hedges, walls, or other barriers may not represent the true boundary lines. Brokers are not obligated to investigate the status of permits, zoning, or code compliance. BUYER to satisfy any concerns with conditions that are an important or critical element of the purchase decision. BUYER agrees they have not received or relied upon any representation by Brokers or SELLER with respect to the condition of the Property not contained in this Agreement. The information contained in the Multiple Listing Service (MLS), computer, advertisements, and feature sheets pertaining to the Property are not warranted or guaranteed by Brokers. Errors and/or omissions in inputting information, while uncommon, are possible. BUYER will be responsible for verifying the accuracy of such information. Deposit of all funds necessary to close escrow will be deemed final acceptance of the Property. SELLER agrees to hold Brokers harmless and to defend and indemnify them from any claim, demand, action, or proceeding resulting from any omission or alleged omission by SELLER.

**FINAL WALKTHROUGH** BUYER must provide a completed Final Walkthrough or waiver in writing to SELLER prior to COE.

**PHYSICAL POSSESSION** Physical possession of the Property with any keys to Property locks, community mailboxes, alarms, and garage door openers will be delivered to BUYER ☑ upon recordation of the deed; **OR** ☐ upon completion of Agreement to Occupy After COE; **OR** ☐ per the terms of Residential Lease/Rental Agreement.

**NEVADA LAW** Nevada law will apply to the interpretation and enforcement of this Agreement.

**MEDIATION** If a dispute arises out of or relates to this Agreement or its breach, the parties are aware the local Association of REALTORS® has a Dispute Resolution Service (DRS) available. A DRS brochure is available upon request.

**ATTORNEY FEES** In the event either party is required to engage the services of an attorney to enforce this Agreement, the prevailing party in any proceeding will be entitled to an award of reasonable attorney's fees, legal expenses, and costs.

**REALTOR® CODE OF ETHICS** Not all real estate licensees are REALTOR(S)®. A REALTOR® is a member of the National Association of REALTORS® and therefore subscribes to a higher ethical standard, known as the REALTOR® Code of Ethics. To receive a copy of the REALTOR® Code of Ethics, ask your real estate professional or the local Association of REALTORS®.

**PROFESSIONAL CONSULTATION ADVISORY** A real estate Broker is qualified to advise on real estate. The parties are advised to consult with appropriate professionals including, but not limited to, engineers, surveyors, appraisers, lawyers, CPAs, or other professionals on specific topics, including but not limited to, land use regulation, boundaries and setbacks, square footage, physical condition, legal, tax, water rights, and other consequences of the transaction.

**SELLER DEFAULT** If SELLER defaults in the performance of this Agreement, BUYER will have the right to recover from SELLER all of BUYER's actual damages BUYER may suffer as a result of SELLER's default, and to pursue any and all remedies available at law or in equity.

**BUYER DEFAULT**
If BUYER Defaults in the performance of this Agreement, SELLER will have the right to retain, as their sole legal recourse, the EMD. BUYER and SELLER hereby acknowledge SELLER's actual damages would be difficult to measure and that the EMD is a fair and reasonable estimate of such damages.



Address **4511 N 5th street, Elko, Nv 89445**

Buyer [ _ℒℂ_ / / / ] and Seller [ _____ / _____ / _____ ] have read this page.
Page 9 of 12       This copyright protected form was 03/26/26 6:14 PM PDT REALTORS® of SNR.

SNR© 03/26
ROA 9/12

dotloop signature verification: dtlp.us/onuO-Evjt-IxhN
DigiSign Verified - f68acd85-52d6-462b-8864-8e9c4474e233

**THE FOLLOWING HAVE BEEN RECEIVED AND ACKNOWLEDGED BY BUYER:**
☑ Duties Owed by a Nevada Real Estate Licensee
❏ Consent to Act
❏ Environmental Contact List
❏ Equal Housing Opportunity (Fair Housing Form)
❏ HUD Inspection For your Protection: Get a Home Inspection
❏ Information Regarding Private Well and Septic System
❏ Lake Tahoe Basin Regional Disclosure
❏ New Reality of Homeowners Insurance
❏ Open Range Land Disclosure
❏ Residential Disclosure Guide
❏ Unrepresented Party
☑ Wire Fraud Advisory
❏ Other _____
❏ Other _____

**THE FOLLOWING ADDENDA AND EXHIBITS WILL BE INCORPORATED**
❏ Common Interest-Community Information Statement "Before You Purchase Property ..."
❏ Lead-Based Paint Disclosure Statement (for properties built prior to 1978)
❏ Solar Power System Disclosure
❏ Back Up Offer Addendum
❏ Residential/Lease Rental Agreement
❏ Seller Financing Addendum (Residential)
❏ Short Sale Addendum to the Offer and Acceptance Agreement
❏ Agreement to Occupy After Close of Escrow
❏ Used Manufactured/Mobile Home Disclosure
❏ TRPA Wood Heater Statement of Compliance (Tahoe Basin)
❏ TRPA Best Management Practices (Tahoe Basin)
❏ Other _____
❏ Other _____

**ENTIRE AGREEMENT**    This Agreement and attachments contain the entire Agreement of the parties and supersede all prior Agreements or representations with respect to the Property not expressly set forth in this Agreement. This Agreement may only be modified in writing, signed and dated by the parties. BUYER acknowledges having read and approved all provisions of this Agreement.

**ASSIGNMENT**    BUYER may not assign any of BUYER'S rights in this Agreement without prior written consent of SELLER, which consent will not be unreasonably withheld, conditioned, or delayed. Any purported assignment in violation of this Section will be null and void. No assignment will relieve the assigning party of its obligations in this Agreement.

**COUNTERPARTS AND SIGNATURES**    BUYER and SELLER acknowledge and agree this Agreement may be executed in counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument. BUYER and SELLER agree that this Agreement may be conducted by electronic delivery, and signatures so transmitted will be acceptable for all purposes. Signatures transmitted by electronic delivery will be deemed original.

dotloop signature verification: dtlp.us/onu0-Evjt-IxhN
DigiSign Verified - f68acd85-52d6-462b-8864-8e9c4474e233

**EXPIRATION OF OFFER**    Per NRS 645.254, all offers must be presented to SELLER. This Offer expires unless accepted, including delivery to BUYER, or _____ on/or before 03/28/2026 _____ ☐A.M. ☑P.M. on 5:00 _____ .

BUYER *Luna Caballero* _____ DATE 03/26/2026, 01:17:58 PM PDT Time _____

BUYER _____ DATE _____ Time _____

BUYER _____ DATE _____ Time _____

BUYER _____ DATE _____ Time _____

**BUYER's Representation:**

BUYER's Licensee Name  Waylon Huber _____    BUYER Broker Name  Waylon Huber _____

BUYER's Licensee License #  B.146400 _____    BUYER's Broker License #  B.146400 _____

BUYER's Licensee Email  waylon@robinhoodrealtynv.com    Brokerage Name  Robinhood Realty _____

Phone  (775) 527-0272 _____  Fax _____    Office Address  750 Grassvalley Rd Suite B

City/State/Zip  Winnemucca NV 89445 _____

BUYERS Licensee signature acknowledging receipt of EMD    _____

### SELLER'S ACCEPTANCE, COUNTER OFFER OR REJECTION OF AGREEMENT

SELLER acknowledges having read and approved each provision of this Agreement. Authorization is given to Brokers to deliver a signed copy to BUYER and disclose the terms of the sale to members of the MLS or Association of REALTORS® at COE.

[ _____/_____/_____/_____ ] SELLER warrants they have the authority to sell the Property on the terms and conditions stated in this Agreement.

03/26/26
dotloop verified

**TAX WITHHOLDING (FIRPTA)**    Unless the Property is acquired for use as a primary residence and is sold for no more than $300,000, SELLER agrees to provide BUYER with (a) Non-Foreign Seller Affidavit, or (b) Withholding Certificate Form from the Internal Revenue Service stating that withholding is not required. In the event none of the foregoing is applicable, BUYER requires a percentage of SELLER's proceeds to be escrowed to comply with the FOREIGN INVESTMENT AND REAL PROPERTY TAX ACT (IRC 1445).

[ _____/_____/_____/_____ ] One or more SELLER ☑ is not a foreign person OR ☐ is a foreign person and may be subject to FIRPTA withholding. If SELLER fails to comply with FIRPTA tax withholding, BUYER reserves the right to cancel this Agreement and retain EMD.

03/26/26
dotloop verified

Address  4511 N 5th street, Elko NV 89445 _____

Buyer [ *LC* ____/____/____/____ ] and Seller [ _____/____/____/____ ] have read this page.

03/26/26
dotloop verified

dotloop signature verification: dtlp.us/onu0-Evjt-lxhN
DigiSign Verified - f68acd85-52d6-462b-8864-8e9c4474e233

**SELLER** will check one of the following options, and date, time, and sign this Agreement.

❑ **Acceptance of Offer**    SELLER accepts this Offer.

☑ **Counter Offer #1**    SELLER signs this Offer subject to a Counter Offer #1 dated _3/26/26_ .

❑ **Rejection**    SELLER rejects the foregoing Offer.

SELLER _Luke Fitzgerald, President of Koinonia Construction Inc._    DATE _____    Time _____

dotloop verified
03/26/26 6:14 PM PDT
MC60-WPRS-QPIC-RNHJ

SELLER (Print Name) _____

SELLER _____    DATE _____    Time _____

SELLER (Print Name) _____

SELLER _____    DATE _____    Time _____

SELLER (Print Name) _____

SELLER _____    DATE _____    Time _____

SELLER (Print Name) _____

**SELLER's Representation:**

SELLER's Licensee Name _Jennifer Welch_    SELLER's Broker Name _Jen McDonald_

SELLER's Licensee License # _S.0203284_    SELLER's Brokers License # _B.3279_

Phone _208-404-4061_    Fax _____    Brokerage Name _LPT Realty LLC_

SELLER's Licensee Email _kconelko@gmail.com_    Office Address _1755 E Plumb Ln #251, Reno, NV 89502_

City/State/Zip _____

Address **4511 N 5th street, Elko, Nv 89445**

This copyright protected form was created by REALTORS® of SNR.    SNR© 03/26
ROA 12/12

dotloop signature verification: dtlp.us/Pdit-077E-RHsW
DigiSign Verified - 472101fb-358f-4db9-875b-db7461b92520



# COUNTER OFFER #1



SELLER submits this Counter Offer #1 to the Offer and Acceptance Agreement dated 03/26/2026    , regarding the property

Located at 2511 N 5th St, Elko, NV 89801                                                                                                              ,

between Koinonia Construction Inc.                                                                                    (SELLER)

and  Luna Caballero                                                                                             (BUYER),

which is being attached this date 03/26/2026         by SELLER and becomes effective when signed by all parties.

Address of property is 2511 N 5th St., Elko, NV 89801.

Seller will pay $5000 towards buyer's closing costs.

Seller will not provide a refrigerator.

Seller will not tape and texture the garage.

Buyer will pay lender's policy.

Property is in a Common Interest Community.

Earnest money to be $3400, non-refundable, and released to seller immediately.

**OTHER TERMS:** All other terms to remain the same.

**RIGHT TO ACCEPT OTHER OFFERS:** SELLER reserves the right to accept any other offer prior to BUYER's written acceptance of Counter Offer #1. Acceptance shall not be effective until a copy of this Counter Offer #1, dated and signed by BUYER, is received by SELLER and/or                                                             .

**EXPIRATION:**  This offer shall expire unless a copy with BUYERS's written acceptance is delivered to SELLER or SELLER's Broker or Licensee on or before 10          o'clock ☑ AM  ☐ PM, on 03/29/2026          .

SELLER: *Luke Fitzgerald, President of Koinonia Construction Inc.*  dotloop verified 03/26/26 6:10 PM PDT QSE2-KKOW-V0N1-EIUS     Dated: _____  Time: _____

SELLER: _____     Dated: _____  Time: _____

SELLER: _____     Dated: _____  Time: _____

SELLER: _____     Dated: _____  Time: _____

### BUYER'S ACCEPTANCE, COUNTER, OR REJECTION

☐ **Acceptance of Counter Offer #1:** BUYER accepts this Counter Offer #1.

☑ **Counter Offer #2:** BUYER signs this Counter Offer #1 subject to Counter Offer #2 dated 03/29/2026          .

☐ **Rejection:** BUYER rejects Counter Offer #1.

BUYER: *Luna Caballero*     Dated: 03/29/2026     Time: _____

BUYER: _____     Dated: _____  Time: _____

BUYER: _____     Dated: _____  Time: _____

BUYER: _____     Dated: _____  Time: _____

Page 1 of 1       This copyright protected form was created by and for the use of the members of SNR.       SNR© 01/23
                                                                                        CO1 1/1

dotloop signature verification: dtlp.us/DohF-UUcV-TPCr
DigiSign Verified - 472101fb-358f-4db9-875b-db7461b92520



# COUNTER OFFER #2



BUYER submits this Counter Offer #2 to Counter Offer #1 dated **03/26/2026**          , regarding the property located

at **4511 N 5th street, Elko, Nv 89445**                                                           ,

between **Luna Caballero**                                                              (BUYER)

and   **Koinonia Construction   Inc.**                                            (SELLER),

which is being attached this date   **03/29/2026**      by BUYER and becomes effective when signed by all parties.

**Seller to make earnest money refundable for unsatisfactory inspection during due diligence period for 15 days.**

**Seller to make earnest money refundable for lending contingency for 20 days.**

**Seller to contribute 7000.00 dollars towards buyers closing cost.**

**Buyers agent to reduce commission to 2.5%**

**OTHER TERMS:** All other terms to remain the same.

**EXPIRATION:**  This offer shall expire unless a copy with SELLER's written acceptance is delivered to BUYER or BUYER's Broker or Licensee on or before **5**          o'clock ❑ AM  ☑ PM, on **03/31/2026**      .

BUYER: *Luna Caballero*                          Dated: 03/29/2026, 12:14:00 PM PDT      Time: _____

BUYER: _____          Dated: _____          Time: _____

BUYER: _____          Dated: _____          Time: _____

BUYER: _____          Dated: _____          Time: _____

## SELLER'S ACCEPTANCE, COUNTER, OR REJECTION

☑**Acceptance of Counter Offer #2:** SELLER accepts this Counter Offer #2.

❑ **Counter Offer #3:** SELLER signs this Counter Offer #2 subject to Counter Offer #3 dated _____.

❑ **Rejection:** SELLER rejects this Counter Offer #2.

SELLER: *Luke Fitzgerald, President of Koinonia Construction Inc.* | dotloop verified 03/30/26 9:22 PM PDT BKPT-U3OD-LIM7-TOXY      Dated: _____          Time: _____

SELLER: _____          Dated: _____          Time: _____

SELLER: _____          Dated: _____          Time: _____

SELLER: _____          Dated: _____          Time: _____

This copyright protected form was created by and for the use of the members of SNR.

SNR® 01/23
CO2 1/1

Created by Waylon Huber with SkySlope® Forms

dotloop signature verification: dtlp.us/rS0c-4GOb-ii8I
DigiSign Verified - 27570318-c3d6-4655-a708-ef85bdb44a9e



# ADDENDUM #  1



This addendum to the Purchase Agreement                                    dated    03/26/2026   , regarding
the property located at 2511 N 5th St, Elko, NV 89801                                                              ,
between Luna Caballero                                                      (BUYER/TENANT)
and Luke Fitzgerald and Luke Fitzgerald, Manager of Koinonia Construction Inc.          (SELLER/LANDLORD),
is being attached this date    04/20/2026    and becomes effective when signed by all parties.

Closing to be extended to on or before 5/15/2026.
Seller to pay the actual loan lock extension fee, if any.
Address to be 2511 N 5th St, not 4511 N 5th St., Elko, NV 89801.

All other terms to remain the same.

| Dated: 04/23/2026 | Time: 04/23/2026, 03:44:57 PM PDT | Dated: | Time: |
|---|---|---|---|
| BUYER/TENANT *Luna Caballero* | | SELLER/LANDLORD | |
| BUYER/TENANT | | SELLER/LANDLORD | |
| BUYER/TENANT | | SELLER/LANDLORD | *Luke Fitzgerald, President of Koinonia Construction Inc.* — dotloop verified 04/20/26 3:55 PM PDT RUHE-RNWH-9QVJ-KU28 |
| BUYER/TENANT | | SELLER/LANDLORD | |

Page 1 of 1                This copyright protected form was created by and for the use of the members of SNR.                SNR© 01/26
                                                                                                                              ADD 1/1

# EXHIBIT "F"

| Landmark Title Assurance Agency of Nevada | ALTA Seller's Estimated Settlement Statement |
|---|---|
| ALTA Universal ID: | |
| 455 8th Street | |
| Elko, NV 89801 | |
| (775) 302-8955 | |

| File #: | 26-1915-BRK | Property | 2511 N. 5th St | Settlement Date | 04/30/2026 |
|---|---|---|---|---|---|
| Print Date & Time: | 04/07/2026 at 10:40 AM PDT | | Elko, NV 89801 | Disbursement Date | 04/30/2026 |
| | | Buyer | Luna Estela Caballero | | |
| Escrow Officer: | Breanna R Keil | | 397 Parkchester Drive | | |
| Settlement Location: | 455 8th Street | | unit 2 | | |
| | Elko, NV, 89801 | | Spring Creek, NV 89815 | | |
| | | Seller | Koinonia Construction Inc | | |
| | | Lender | Allied Mortgage Group, Inc. | | |
| | | | 225 E. City Avenue | | |
| | | | 102 | | |
| | | | Bala Cynwyd, PA 19004 | | |

| Description | Seller | |
|---|---|---|
| | Debit | Credit |
| **Financial** | | |
| Sale Price of Property | | $340,000.00 |
| Seller Credit | $7,000.00 | |
| | | |
| **Prorations/Adjustments** | | |
| County Taxes 04/30/2026 to 07/01/2026 | | $84.15 |
| | | |
| **Payoff(s)** | | |
| Payoff to ESTIMATED Pay off lender TBD | $268,584.27 | |
| Principal : $266,294.84 | | |
| Late Charge : $2,289.43 | | |
| | | |
| **Government Recording and Transfer Charges** | | |
| Recording Fees | $41.25 | |
| ---Open Range: $37.00 | | |
| ---E-record Fee: $4.25 | | |
| County Transfer Tax (Deed) to Elko County Recording Office | $1,326.00 | |
| | | |
| **Commission** | | |
| Listing Agent Commission to LPT Realty | $10,200.00 | |
| Selling Agent Commission to Robinhood Realty | $8,500.00 | |
| | | |
| **Title Charges & Escrow / Settlement Charges** | | |
| Title - Courier fee to Landmark Title Assurance Agency of Nevada | $30.00 | |
| Title - Settlement or Closing Fee to Landmark Title Assurance Agency of Nevada | $820.00 | |
| Title-Investor discount 25% off escrow fee to Landmark Title Assurance Agency of Nevada | | $205.00 |
| Title-Notary Fee to IF NEEDED | $200.00 | |
| Title - Owner's Title Policy to First National Title Insurance Company | $1,290.00 | |
| | | |
| **Miscellaneous** | | |
| 2025-2026 passed due taxes | $571.77 | |
| Air Tight LLC | $350.00 | |
| ALSIDE SUPPLY CENTER, SALT LAKE CITY DIV. OF ASSOCIATED MATERIALS LLC. | $6,118.08 | |
| Elko TRUSS | $5,394.00 | |
| Harney Rock and Paving Co | $3,018.25 | |

| Description | Seller | |
| --- | --- | --- |
| | Debit | Credit |
| Lindsay Window & Door LLC | $70.79 | |
| Parker Solutions LLC | $3,278.40 | |
| Quality Truss and Lumber | $29,844.23 | |
| Simply Topzz | $3,900.00 | |
| Triple S-Steel | $612.09 | |
| Western Nevada Supply | $3,931.67 | |
| | Debit | Credit |
| Subtotals | $355,080.80 | $340,289.15 |
| Due from Seller | | $14,791.65 |
| Totals | $355,080.80 | $355,080.80 |

**Acknowledgement**

This is an estimate only and subject to change.

We/I have carefully reviewed the Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the Settlement Statement.

We/I authorize Landmark Title Assurance Agency of Nevada to cause the funds to be disbursed in accordance with this statement.

Koinonia Construction Inc, a Nevada Corporation

By: _____

Luke Fitzgerald, President                                    Date

_____

Settlement Agent                                                Date

# EXHIBIT "G"



**ALTA COMMITMENT FOR TITLE INSURANCE**
**issued by**
**FIRST NATIONAL TITLE INSURANCE COMPANY**

**NOTICE**

**IMPORTANT – READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

**COMMITMENT TO ISSUE POLICY**

Subject to the Notice; Schedule B, Part I – Requirements; Schedule B, Part II – Exceptions; and the Commitment Conditions, First National Title Insurance Company, a(n) Texas corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Amount of Insurance and the name of the Proposed Insured.

If all of the Schedule B, Part I – Requirements have not been met within 180 days after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

**COMMITMENT CONDITIONS**

1.  DEFINITIONS
    a.  "Discriminatory Covenant": Any covenant, condition, restriction, or limitation that is unenforceable under applicable law because it illegally discriminates against a class of individuals based on personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or other legally protected class.
    b.  "Knowledge" or "Known": Actual knowledge or actual notice, but not constructive notice imparted by the Public Records.
    c.  "Land": The land described in Item 5 of Schedule A and improvements located on that land that by State law constitute real property. The term "Land" does not include any property beyond that described in Schedule A, nor any right, title, interest, estate, or easement in any abutting street, road, avenue, alley, lane, right-of-way, body of water, or waterway, but does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
    d.  "Mortgage": A mortgage, deed of trust, trust deed, security deed, or other real property security instrument, including one evidenced by electronic means authorized by law.
    e.  "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
    f.  "Proposed Amount of Insurance": Each dollar amount specified in Schedule A as the Proposed Amount of Insurance of each Policy to be issued pursuant to this Commitment.
    g.  "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

h. "Public Records": The recording or filing system established under State statutes in effect at the Commitment Date under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge. The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters.

i. "State": The state or commonwealth of the United States within whose exterior boundaries the Land is located. The term "State" also includes the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and Guam.

j. "Title": The estate or interest in the Land identified in Item 3 of Schedule A.

2. If all of the Schedule B, Part I – Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   a. the Notice;
   b. the Commitment to Issue Policy;
   c. the Commitment Conditions;
   d. Schedule A;
   e. Schedule B, Part I – Requirements;
   f. Schedule B, Part II – Exceptions; and
   g. a counter-signature by the Company or its issuing agent that may be in electronic form.

4. COMPANY'S RIGHT TO AMEND
   The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company is not liable for any other amendment to this Commitment.

5. LIMITATIONS OF LIABILITY
   a. The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
      i. comply with the Schedule B, Part I – Requirements;
      ii. eliminate, with the Company's written consent, any Schedule B, Part II – Exceptions; or
      iii. acquire the Title or create the Mortgage covered by this Commitment.
   b. The Company is not liable under Commitment Condition 5.a. if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.
   c. The Company is only liable under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.
   d. The Company's liability does not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Condition 5.a. or the Proposed Amount of Insurance.
   e. The Company is not liable for the content of the Transaction Identification Data, if any.
   f. The Company is not obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I – Requirements have been met to the satisfaction of the Company.
   g. The Company's liability is further limited by the terms and provisions of the Policy to be issued to the Proposed Insured.

6. LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT; CHOICE OF LAW AND CHOICE OF FORUM
   a. Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

b.  Any claim must be based in contract under the State law of the State where the Land is located and is restricted to the terms and provisions of this Commitment. Any litigation or other proceeding brought by the Proposed Insured against the Company must be filed only in a State or federal court having jurisdiction.

c.  This Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

d.  The deletion or modification of any Schedule B, Part II – Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

e.  Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

f.  When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

7.  IF THIS COMMITMENT IS ISSUED BY AN ISSUING AGENT
The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for closing, settlement, escrow, or any other purpose.

8.  PRO-FORMA POLICY
The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

9.  CLAIMS PROCEDURES
This Commitment incorporates by reference all Conditions for making a claim in the Policy to be issued to the Proposed Insured. Commitment Condition 9 does not modify the limitations of liability in Commitment Conditions 5 and 6.

10.  CLASS ACTION
ALL CLAIMS AND DISPUTES ARISING OUT OF OR RELATING TO THIS COMMITMENT, INCLUDING ANY SERVICE OR OTHER MATTER IN CONNECTION WITH ISSUING THIS COMMITMENT, ANY BREACH OF A COMMITMENT PROVISION, OR ANY OTHER CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THE TRANSACTION GIVING RISE TO THIS COMMITMENT, MUST BE BROUGHT IN AN INDIVIDUAL CAPACITY. NO PARTY MAY SERVE AS PLAINTIFF, CLASS MEMBER, OR PARTICIPANT IN ANY CLASS OR REPRESENTATIVE PROCEEDING. ANY POLICY ISSUED PURSUANT TO THIS COMMITMENT WILL CONTAIN A CLASS ACTION CONDITION.

11.  ARBITRATION
The Policy contains an arbitration clause. All arbitrable matters when the Proposed Amount of Insurance is $2,000,000 or less may be arbitrated at the election of either the Company or the Proposed Insured as the exclusive remedy of the parties. A Proposed Insured may review a copy of the arbitration rules at http://www.alta.org/arbitration.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**American Land Title Association**

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

**FIRST NATIONAL TITLE INSURANCE COMPANY**
2400 Dallas Parkway Ste. 200, Plano, TX 75093

By:_____
    President

By:_____
    Treasurer

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

**Transaction Identification Data, for which the Company assumes no liability as set forth in Commitment Condition 5.e.:**

Issuing Agent: Landmark Title Assurance Agency of Nevada
Issuing Office: 455 8th Street
　　　　　　Elko, NV 89801
Issuing Office's ALTA® Registry ID:
Loan ID Number:
Commitment Number: 26-1915-BRK
Issuing Office File Number: 26-1915-BRK
Property Address: 2511 N. 5th St, Elko, NV 89801
Revision Number:

## SCHEDULE A

1. Commitment Date: March 26, 2026 at 8:00 AM

2. Policy to be issued:

   (a) 2021 ALTA Owner's Policy
   Proposed Insured:　　　　　　　　**Luna Caballero**
   Proposed Amount of Insurance:　**$340,000.00**
   The estate or interest to be insured:　**fee simple**

   (b) 2021 ALTA Loan Policy
   Proposed Insured:
   Proposed Amount of Insurance:　**$306,000.00**
   The estate or interest to be insured:　**fee simple**

3. The estate or interest in the Land at the Commitment Date is:
   fee simple

4. The Title is, at the Commitment Date, vested in:
   Koinonia Construction Inc, a Nevada Corporation

5. The land is described as follows:
   The land is described as set forth in Exhibit A attached hereto and made a part hereof.

**LANDMARK TITLE ASSURANCE AGENCY OF NEVADA**
455 8th Street, Elko, NV 89801
Telephone: (775) 302-8955

Countersigned by:

Brant Remaley
Landmark Title Assurance Agency of Nevada,
License #

**FIRST NATIONAL TITLE INSURANCE COMPANY**
2400 Dallas Parkway Ste. 200, Plano, TX 75093

By:_____
President

By:_____
Treasurer

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION


## SCHEDULE B, PART I – Requirements

All of the following Requirements must be met:

1. Pay the premiums, fees, and charges for the Policy to the Company.

2. Pay the agreed amount for the estate or interest to be insured.

3. The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

4. Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5. NOTICE: Due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale or marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

6. As a condition to the issuance of the requested Policy(ies) of Title Insurance, we hereby request that we be furnished with a fully completed and executed Owners Affidavit.

7. REQUIREMENT - PAYMENT IN FULL OF THE FOLLOWING:

   Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:
   Amount:         $262,500.00
   Dated:          March 21, 2025
   Trustor:         Koinonia Construction, Inc.
   Trustee:        Landmark Title Assurance Agency of Nevada
   Beneficiary:     Sound Capital Passive Income Fund, LLC a Delaware limited liability company
   Recorded:       March 25, 2025
   Instrument No.: 847761 , Official Records.

   The beneficial interest under above referenced Deed of Trust was assigned numerous times, the last of which was to:
   Assignee: Athene Annuity and Life Company
   Recorded  June 17, 2025, as Instrument No. 850836 , Official Records

8. REQUIREMENT - RELEASE OF THE FOLLOWING:

   Notice of Lis Pendens and any claims or rights that may be reflected by, or judgments or others orders rendered pursuant to, the Notice or suit:
   Case No.        : DC-FM-25-126
   Court           : Elko County Judicial District
   Plaintiff        : Luke Fitzgerald
   Defendent       : Lisa Jane Turner
   Recorded        : May 16, 2025
   Instrument No. : 849628 , Official Records.

9. At the date of this report, the Company is not aware of any matters which would cause it to decline to attach an ALTA 9.10-06 (Reservations, Encroachments, Minerals - Current Violations Endorsement), an ALTA 22-06

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



(Location Endorsement) indicating that this is a Single Family Residence - Townhouse known as 2511 N 5th St, Spring Creek, NV , and a ALTA 8.1-06 (Environmental Protection Loan Endorsement) to any ALTA Extended Loan Policy.

10. There have been NO CONVEYANCES within the 24 months preceding this report except:
<u>Vesting Deed</u>

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



## SCHEDULE B, PART II – Exceptions

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage.**

The Policy will not insure against loss or damage resulting from the terms and conditions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I—Requirements are met.

2. Taxes or assessments which are not now payable or which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

3. Any facts, rights, interests, or claims that are not shown by the Public Record, but that could be ascertained by an inspection of the land or that may be ascertained by persons in possession of the Land

4. Easements, liens or encumbrances or claims thereof, not shown by the Public Records.

5. Any encroachment, encumbrance, violation, variation or adverse circumstance affecting the title that would be disclosed by an accurate and complete survey of the Land and not shown by the Public Records.

6. Any lien or right to lien for services, labor or material not shown by the Public Records.

7. (a) Unpatented mining claims, (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records, (d) Indian tribal codes or regulations, Indian Treaty or Aboriginal Rights, including easements or equitable servitudes.

8. Rights or claims of parties in possession not recorded in the public records.

9. State, County and City Taxes for the fiscal period 2025 to 2026, a lien now due and payable in the total amount of $495.42
   PARCEL NO.: 001-61M-023  TAX DISTRICT: 11.0 LOCATION: Elko
   1st installment of $124.20 unpaid, delinquent
   2nd installment of $123.74 unpaid, delinquent
   3rd installment of $123.74 unpaid, delinquent
   4th installment of $123.74 unpaid, delinquent

   In addition to the amounts shown above, Penalties in the amount of $76.35 are due and payable.

10. Any possible additional tax assessment and any penalties and interest, because of construction and improvements.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

11. The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 361.260 of the Nevada Revised Statutes.

12. The herein described property lies within the boundaries of the City of Elko and is subject to any and all fees that may be due said District/City.

13. Mineral Rights, Reservations, easements and exclusions in the patent from the United States of America and/ or the State of Nevada.

14. Easements, rights of way, dedications and other matters as indicated or delineated on the Parcel Map 19177 recorded October 30, 1997 as File No. 416535 Official Records. (See map for full particulars)

15. Easements, rights of way, dedications and other matters as indicated or delineated on the Bounty Line Adjustment Record of Survey #3500, recorded February 25, 2020 as File No. 765673 , Official Records. (See map for full particulars)

16. Easement, rights of way, terms and provisions as set forth in instrument:
    In Favor of      : City of Elko
    For              : Slope Easement
    Recorded         : May 28, 2020
    Instrument No. : 769073 , Official Records.

17. Easement, rights of way, terms and provisions as set forth in instrument:
    In Favor of      : City of Elko
    For              : Slope Easement
    Recorded         : August 7, 2020
    Instrument No. : 772192 , Official Records.

18. Easements, rights of way, dedications and other matters as indicated or delineated on the plat of said subdivision recorded March 15, 2023 as File No. 817169 , Official Records. (See map for full particulars)

19. Terms, Covenants, Conditions, Restrictions, Easements and Provisions in that certain instrument entitled Conditional Use Permit, recorded July 6, 2023, as Instrument No. 821333 , Official Records.

20. Terms, Covenants, Conditions, Restrictions, Easements and Provisions in that certain instrument entitled City of Elko Resolution No. 03-20 - A Resolution of the Elko City Council Adopting a Change in Zoning District Boundaries, recorded October 19, 2023, as Instrument No. 827859 , Official Records.

21. Terms, provisions, covenants, conditions, restrictions, easements, charges, assessments and liens provided in the Covenants, Conditions and Restrictions recorded October 30. 2023,  as Instrument Number 828252 ,  Official Records, but omitting any covenant, condition or restriction, if any, based on race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that the covenant, condition or restriction (a) is exempt under Title 42 of the United States Code, or (b) relates to handicap, but does not discriminate against handicapped persons.

    RIGHT TO LEVY ASSESSMENTS: The right to levy certain charges or assessments against said land which shall become a lien if not paid as set forth in the above Declaration of Restrictions is conferred upon Mountain View Townhomes Association.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



**American Land Title Association**

**Commitment for Title Insurance**
2021 v. 01.00 (07-01-2021)

22. Easement, rights of way, terms and provisions as set forth in instrument:
    In Favor of        : Southwest Gas Corporation
    For               : Gas pipelines
    Recorded          : July 31, 2024
    Instrument No. : <u>839387</u> , Official Records.

23. Easements, rights of way, dedications and other matters as indicated or delineated on the plat of said subdivision recorded August 6, 2024 as Document No. <u>839624</u> , Official Records. (See map for full particulars)

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



**American Land Title Association**

**Commitment for Title Insurance**
2021 v. 01.00 (07-01-2021)

## EXHIBIT "A"

The Land referred to herein below is situated in the County of Elko, State of Nevada and is described as follows:

Lot 22 Mountain View Town Homes Unit No. 2 filed in the Office of the County Recorder of Elko County, State of Nevada, on August 6, 2024, as File No. 839624, being a portion of Section 9, Township 34 North, Range 55 East, M.D.B.&M.

APN: 001-61M-023

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



EXHIBIT "H"

dotloop signature verification: dtlp.us/JKXs-zI06-xV0w



# EXCLUSIVE AUTHORIZATION AND RIGHT TO SELL, EXCHANGE, OR LEASE BROKERAGE LISTING AGREEMENT (ER)



**This is intended to be a legally binding contract. No representation is made as to the legal or tax consequences of this contract. If you desire legal or tax advice, consult your attorney or tax advisor.**

**1. EXCLUSIVE RIGHT TO SELL:**

We, Luke Fitzgerald and Koinonia Construction Inc. ("Seller"), hereby engage and grant LPT Realty, LLC (Company Name, hereinafter "Broker") the exclusive and irrevocable right, commencing on 02/06/2026 , and expiring at 11:59 p.m. Pacific Time on 02/06/2027 , to sell, lease or exchange the Real Property located in the City of Elko , County , Nevada, APN#: commonly known as: 2511 N 5th St, Elko, NV 89801 ("the Property").

**2. TERMS OF SALE:** The listing price shall be $ 359900 , with a suggested amount of an Earnest Money Deposit (EMD) of $ 3600 .

Terms available: ☑ Cash   ☑ CONV   ☑ FHA   ☐ Lease   ☑ VA   ☐ Lease Option   ☐ Owner Will Carry
☐ Other: _____

**(Note: If the Property is offered for lease, then the term "Seller" used in this Agreement includes "Lessor" as applicable.)**

Seller ☑ **does** -OR-☐ **does not** authorize Broker to disclose the existence of multiple offers to purchase the property to potential buyers. **SELLER(S) INITIALS:** | *KB* | | | |

Seller ☐ **does** -OR-☑ **does not** authorize Broker to disclose the offer(s), price and terms.
**SELLER(S) INITIALS:** | *KB* | | | |

**3. PROPERTY OFFERED FOR SALE:** The listing price noted above includes the Property and all improvements and fixtures permanently affixed and installed.

   a. The following items of Personal Property are **included** in the above price and shall be conveyed unencumbered in escrow by a valid bill of sale:

_____
_____
_____

   b. The following items of Personal Property are **excluded** from the above price and not included in the sale:

_____
_____
_____

   c. This property **Does Contain** ☐ -OR- **Does Not Contain** ☑ SMART technology which powers and/or automates, not limited to, surveillance systems, security, environmental controls and home entertainment features. If the property so does contain SMART Technology seller will complete a SMART Home Disclosure which is incorporated as part of this agreement and identifies the items seller intends to convey with the sale. All Attached Fixtures must convey unless identified above.

   d. This property **Does** ☐ -OR- **Does Not** ☑ include a solar power system (photovoltaic-PV). If this property does include a solar power system, the Solar Addendum is hereby attached and made part of this contract.

Seller identifies above items as included or excluded in offering of the Property for sale. Seller understands that the purchase agreement takes precedence over any intention identified above and will ultimately determine what items are included and excluded in the sale. Seller further understands it is their responsibility to ensure the items not included in the sale are addressed in any counter offer to ensure Buyer's understanding of Seller's intent.

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: | *KB* | | | |

Exclusive Right (ER) Listing Agreement Rev. 07.24        Page 1 of 10        ©2022 Greater Las Vegas Association of REALTORS®

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com    **TRANSACTIONS** TransactionDesk Edition

dotloop signature verification: dtlp.us/jKXs-zI06-xV0w

e. Leased or Licensed Items: The following items are leased or subject to a lien in securing payment:
☐ Alarm system          ☐ Propane tank          ☐ Water softener
☐ Other(s)_____.

Seller will provide to Buyer, as a part of the purchase agreement, copies of lease documents, or other documents obligating Seller to pay for such leased or lien items.

**4. TITLE INSURANCE:** Seller agrees to provide Buyer with an owner's policy of title insurance in the amount of the selling price.

**5. COMPENSATION TO BROKER:** COMPENSATION/COMMISSIONS ARE NOT SET BY LAW OR BY ANY REALTOR® ASSOCIATION. THEY ARE FULLY NEGOTIABLE.  If during the Listing Term, Seller sells the property and the sale closes, or the sale fails to close due to Seller's breach of the terms of the Residential Purchase and Sale Agreement, Seller shall pay the following:

The Seller agrees to pay a commission of_____ 3%% ☐ and / ☐ or $_____ of the final sale price or lease amount to the Listing Broker upon the successful closing of the subject property. This commission is exclusively for the Listing Broker's services and is not subject to sharing, splitting, or otherwise distributing to any Buyer's Broker or agent. The Seller acknowledges that any commission arrangement with a Buyer's Broker, if applicable, must be covered by a separate agreement/Residential Purchase Agreement and is not covered under this Listing Agreement.

**Compensation shall be due:**
        a. if the Property is sold or leased by Broker, or through any other person including Seller, on the above terms or any other price and terms acceptable to Seller during the above time period or any extension of said time period;

        b. if the Property is transferred, conveyed, leased, rented, or made unmarketable by a voluntary act of Seller without the consent of Broker, during the time period or any extension of said time period;

        c. if within_____ calendar days of the final termination, including extensions, of this Agreement, the Property is sold, conveyed, or otherwise transferred to anyone with whom the Broker has had negotiations or to whom the Property was shown prior to the final termination. This section (c) shall not apply if Seller enters into a valid Brokerage Listing Agreement with another licensed real estate Broker after the final termination of this Exclusive Brokerage Listing Agreement.

        d. in the event of an exchange, permission is hereby given to the Broker to represent such parties as Broker may deem appropriate and collect compensation from them provided that there is full disclosure to all parties. If completion of sale is prevented by default of Seller, or the refusal of Seller to accept an offer in accordance with the price and terms of this Agreement, then upon event, Broker is authorized to take any action reasonably necessary to collect said commission. If completion of sale is prevented by a party to the transaction other than Seller, Broker may collect its commission only if and when Seller collects damages by suit or otherwise, and then in an amount not less than one-half of the damages recovered, but not to exceed the above compensation after first deducting title expenses, escrow expenses and the expenses of collections if any.

        e. Seller hereby irrevocably assigns to Broker the funds and proceeds of Seller in escrow equal to the above compensation. In the event any sum of money due under this Agreement remains unpaid for a period of thirty (30) days, such sum shall bear interest at the rate of (_____) percent per annum from the due date until paid.

**6. DEPOSIT:** Broker is authorized to accept on Seller's behalf a deposit to be applied toward purchase price or lease. Said deposit shall be held by: (SELECT ONE) ☐ Escrow **-OR-** ☐ Broker **-OR-** ☑ Other Koinonia_____.

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: | *KP* | / | | / | | / | |

dotloop signature verification: dtlp.us/JKXs-zI06-xVGw

**7. AGENCY RELATIONSHIP:**

    a. Broker warrants that he holds a current, valid Nevada real estate license. Broker shall act as the agent of the Seller and may also assign or designate a licensee of the Broker who shall act as the representative of the Seller in any resulting transaction.

    b. Depending upon the circumstances, it may be necessary or appropriate for the designated licensee to act as agent for both Seller and Buyer, exchange parties, or one or more additional parties. If applicable, Broker and the designated licensee shall disclose to Seller any election to act as an agent representing more than one party and obtain the written Consent To Act Form signed by all parties to the transaction.

    c. Broker may also have licensees in its company who are agents of the Buyer who may show and negotiate an offer to purchase Seller's Property. In this event, the licensees who represent the Buyer will only represent the Buyer in the transaction with all duties owed to the Buyer and not the Seller. This, therefore, does not require a Consent To Act Form.

**8. REQUIRED DISCLOSURES:**

    a. Unless exempt under NRS chapter 113, Seller shall truthfully complete and sign a Seller's Real Property Disclosure Statement concerning the condition of the Property. Seller shall update the Seller's Real Property Disclosure as necessary.

    b. If the Property is or has been the subject of a construction defect claim, whether litigated or not, Seller shall provide the disclosure required by NRS 40.688.

    c. If the Property was built prior to 1978, Seller shall complete the Disclosure of Information on Lead-Based Paint Hazards in accordance with Federal Regulations.

    d. Seller acknowledges receipt of the Residential Disclosure Guide:

**SELLER(S) INITIALS:** | _KB_ 02/05/26 6:45 PM PST dotloop verified | / | | / | | / |

**9. INDEMNIFICATION:** Seller agrees to save, defend, and hold Broker, GLVAR, and the MLS harmless from all claims, disputes, litigation, and/or judgments arising from (i) any misrepresentation, breach of warranty or breach of a promise by Seller in this Listing Agreement (ii) any incorrect information supplied by Seller, (iii) any facts concerning the Property not disclosed by Seller, including any facts known to Seller relating to adverse conditions or latent defects, (iv) the use of a keybox, or (v) any injury or damage to persons or property in connection with the marketing or showing of the Property. This indemnification shall survive Broker's performance and any transfer of title.

**10. FAIR HOUSING:** Broker shall offer the Property for sale or lease without regard to race, religious creed, color, national origin, disability, sexual orientation, gender identity or expression, ancestry, familial status or sex and any other current requirements of federal or state fair housing laws.

**11. COMMON INTEREST COMMUNITY:** The Property ☑**is –OR–** ☐ **is not** located within a Common Interest Community (CIC). If yes, please complete the following:

    Name of CIC(s): Mountainview Townhomes

    Telephone: 775-303-8492     Dues: $100     payable ☑**monthly -OR-** ☐ **quarterly**

    Seller ☑ **is -OR-** ☐ **is not** current on all dues and assessments.

    Name of CIC(s): _____

    Telephone: _____ Dues: $_____ payable ☐**monthly -OR-** ☐ **quarterly**

    Seller ☐ **is -OR-** ☐ **is not** current on all dues and assessments.

    Name of CIC(s): _____

    Telephone: _____ Dues: _____ payable ☐ **monthly -OR-** ☐ **quarterly**

    Seller ☐ **is -OR-** ☐ **is not** current on all dues and assessments.

If the Property is located within a CIC, Seller acknowledges and agrees to obtain (at Seller's own expense as required by NRS 116.4109) and/or provide the information required by NRS 116.4109 and 116.41095 to Broker for delivery to Buyer.

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: | _KB_ 6:45 PM PST dotloop verified | / | | / | | / |

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com  **TRANSACTIONS** TransactionDesk Edition

dotloop signature verification: dtlp.us/JKXS-zi06-xV0w

**12. SPECIAL ASSESSMENTS:** The Property ☐ is –OR– ☑ **is not** subject to special government assessments, such as SID and LID. (For information please go to: www.amgnv.com) If yes, please complete the following:

    Balance remaining: $_____

    Payment amount: $_____

    Payment Due: select one (1) Monthly☐   Quarterly☐   Semi Annually☐   Annually☐

**13. KEYBOX:** Seller ☑ **does** –OR– ☐ **does not** authorize Broker to install a keybox (**electronic** ☐ **-OR-mechanical** ☑ ) in connection with the showing of the Property. A mechanical keybox is a combination-type box that can be opened by anyone who has access to the combination/code. The MLS requires that a valid working code for a mechanical keybox be included in the listing for ease of showing. The code is a confidential field that is not intended to be available to the public.  Seller acknowledges that they have been advised that:

    a. The purpose and function of the keybox is to permit access to the interior of the Property by all members of GLVAR's MLS as well as any licensed professionals necessary to facilitate the sale of the Property;

    b. Seller should safeguard Personal Property and valuables located within the Property;

    c. It is not a requirement of the GLVAR's MLS for a Seller to allow the use of a keybox;

    d. Where a tenant occupies the Property, the tenant's consent is also required, which shall be obtained by the Seller or his/her Property Manager;

    e. Seller ☐ **does** –OR– ☑ **does not** authorize Broker to issue "One Day Codes" to access the electronic keybox installed on the property. A "One Day Code" is an electronic means to allow access to the keybox key compartment. Broker shall only issue such codes to licensed professionals. Broker further agrees to use all reasonable means to verify the identity of said licensed professionals.

    f. Owner acknowledges that GLVAR, the MLS, Broker or its Listing Agent is not insuring owner or occupant against theft, loss or vandalism resulting from such access. Owner is responsible for taking such steps as may be necessary to secure and protect the Property during any time that a keybox is being used and obtaining appropriate insurance.

**14. RENT/LEASE:** The Property ☐ is –OR– ☑ **is not** currently occupied by a Tenant.

The Property ☐ **is -OR-** ☑ **is not** subject to a management agreement with: (name of Property Manager and phone number):_____ Seller agrees to not rent or lease the Property during the term of this Agreement without fourteen (14) days prior written notice to Broker.

**15. TAX WITHHOLDING:** Seller agrees to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act (FIRPTA). If applicable (as designated in the Seller's Response herein), Seller agrees to complete, sign, and deliver to ESCROW HOLDER a certificate indicating whether Seller is a foreign person or a nonresident alien pursuant to the Foreign Investment in Real Property Tax Act (FIRPTA). A foreign person is a nonresident alien individual; a foreign corporation not treated as a domestic corporation; or a foreign partnership, trust or estate. A resident alien is not considered a foreign person under FIRPTA. Additional information for determining status may be found at www.irs.gov. Seller understands that if Seller is a foreign person then the Buyer must withhold a tax in an amount to be determined by ESCROW HOLDER in accordance with FIRPTA, unless an exemption applies. Seller agrees to sign and deliver to the ESCROW HOLDER the necessary documents, to be provided by the ESCROW HOLDER, to determine if withholding is required (see 26 USC Section 1445).

**FIRPTA DECLARATION:** Seller declares that he/she
☑ **is not** –OR– ☐ **is** a foreign person therefore subjecting this transaction to FIRPTA withholding.

**SELLER(S) INITIALS:** | _KB_ | / | | / | | / | |

Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.

SELLER(S) INITIALS: | _KB_ | | / | | / | |

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com

dotloop signature verification: dtlp.us/JKXs-zI06-xVOw

**16.   MEDIATION:** The Broker and Seller agree to negotiate in good faith in an effort to resolve any dispute related to this Listing Agreement that may arise between the parties. If the dispute cannot be resolved by negotiation, the dispute will be submitted to a mediator agreed to by the parties. Mediation fees, if any, shall be divided equally among the parties involved. In no event, shall Seller sue the Broker or be party to any class action litigation against Broker or related entities. By initialing below, the parties confirm that they have read and understand this section and voluntarily agree to the provisions thereof.

**SELLER(S) INITIALS:**  | | | | | | **BROKERS INITIALS:** | |

**17. MULTIPLE LISTING SERVICE (MLS):** Broker shall provide to the GREATER LAS VEGAS ASSOCIATION OF REALTORS® (GLVAR) Multiple Listing Service (MLS) all listing information about the Property that is required by the MLS and such additional information as may be permitted by the MLS. The information provided to the MLS in accordance with MLS rules and policies will be published and disseminated to its Participants and Subscribers in accordance with its Rules and Regulations and Sections 18, 19, 20 and 22 herein, unless Seller selects the Office Exclusive option in Section 21 and signs the Office Exclusive Form. Broker is authorized to cooperate with other real estate Brokers, and to report the sale, its price, terms and financing for the publication, dissemination information and use by authorized Association members, MLS Participants and Subscribers.  Seller acknowledges and agrees that Broker may not include in the listing of the Property on the MLS, any offer of cooperation and compensation to the Buyer Broker.

**18. MARKETING AND ADVERTISING:** Seller acknowledges that, unless Seller signs a Photo Exclusion Agreement, photographs of the Property may be taken for publication in the MLS computer system.  Subject to Section 20, Seller agrees that the Property may be advertised in any and all formats of media including but not limited to electronic and print advertising. Should Seller provide photographs of the Property, Seller warrants and represents that Seller has the ownership rights to said photographs and, by providing said photographs, Seller irrevocably assigns any and all ownership rights in such photographs to the Broker. Seller further acknowledges that once images are placed on the Internet, neither the Broker nor the Seller have control over who can view such images and what use viewers may make of the images or how long such images may remain on the internet. Seller acknowledges that prospective Buyers and/or other persons coming on to the property may take photographs, video and/or other images of the property. Seller understands that Broker does not have the ability to control or block the taking of and use of images by such persons. Once the images are taken and or put into electronic display on the Internet or otherwise published neither the Broker nor the Seller has control over how such images are used.

Seller☑ **does -OR-**☐ **does not** authorize Broker to commence public marketing and advertising activities.

**SELLER(S) INITIALS:**  | | | | | |

**19. SIGN:** Seller☑ **does -OR-**☐**does not** authorize Broker to install a FOR SALE/LEASE sign on the Property. (**Seller may only authorize a sign if Seller has authorized marketing/advertising in Section 18.**)

**20. SELLER OPT OUTS:** Seller further understands and acknowledges that MLS will disseminate the Property's listing information to those MLS Brokers and Agents (and/or their web vendors) who operate Internet sites, as well as other online providers, and that such sites are generally available to the public. Some, but not all, of these websites may include a commentary section where consumers may include reviews and comments about the Property in immediate conjunction with the listing (blogging), or provide a link to the comments. In addition, some, but not all, of these websites may display an automated estimate of the market value of the Property in immediate conjunction with the listing, or provide a link to the estimate. Seller can instruct Broker to have the MLS not display the property on the Internet. Seller also can instruct the MLS to not display the Property address on the Internet. Seller understands that these opt outs would mean consumers searching for listings on the Internet may not see the Property or the Property's address in response to their search.

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS:

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com         TRANSACTIONS
TransactionDesk Edition

dotloop signature verification: dtlp.us/JKXs-zi06-xV0w

Seller may opt-out of any of the following features by initialing the appropriate space(s) below:

a. [＿＿] / [＿＿] / [＿＿] I/we have advised the Broker that I/we **DO NOT** want a **commentary section** displayed or linked to the listed Property (the site operator may indicate that the feature was disabled at the request of the seller).

b. [] / [＿＿] / [＿＿] I/we have advised the Broker that I/we **DO NOT** want an **automated estimate of value** displayed or linked to the listed Property (the site operator may indicate that the feature was disabled at the request of the seller). *Please note that this automated estimate of value restriction applies to VOW offices only. Virtual Office Websites ("VOWs") are Internet sites operated by MLS Participant Brokers through which they establish relationships and work with clients and customers in cyberspace in ways similar to how real estate professionals interact with clients and customers in a "brick and mortar" environment. This restriction does not apply to automated estimates of value created by non-MLS Participant websites.

—OR—

c. [＿＿] / [＿＿] / [＿＿] Seller does **NOT** opt out of any of the above.

**21. OFFICE EXCLUSIVE:** Seller does not authorize Broker to disseminate listing information about the Property via GLVAR MLS. However, Seller acknowledges and agrees that Broker will file the fully executed Office Exclusive Form with GLVAR MLS in accordance with GLVAR MLS Rules and Regulations. Further, Seller acknowledges and agrees that if there is any Public Marketing of an Office Exclusive listing, then Broker must submit the listing to GLVAR MLS for dissemination to its participants within one (1) business day of the Public Marketing. Public Marketing includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays (including IDX and VOW), digital communications marketing (email blasts), multi-brokerage listing sharing networks, and applications available to the general public.

Seller ☐ does -OR-☑ does **NOT** select an Office Exclusive listing. (**Seller may not select this option if Seller has authorized marketing/advertising in Section 18.**)

**SELLER(S) INITIALS:** [＿＿] / [＿＿] / [＿＿] /

**22. USE OF LISTING CONTENT:** Seller acknowledges and agrees that all photographs, images, graphics, video recordings, virtual tours, drawings, written descriptions, remarks, narratives, pricing information, and other copyrightable elements relating to the Property provided by Seller  to Broker or Broker's agent (the "Broker Listing Content") and any changes thereto, may be filed with MLS, included in compilations of listings, and otherwise distributed, publicly displayed and reproduced in any medium. Seller hereby grants to Broker a non-exclusive, irrevocable, worldwide, royalty-free license to use, sublicense through multiple tiers, publish, display, and reproduce the Broker Listing Content, to prepare derivative works of the Broker Listing Content, and to distribute the Broker Listing Content or any derivative works thereof in any medium. This non-exclusive license shall survive the termination of this Agreement for any reason whatsoever. Seller represents and warrants to Broker that the Broker Listing Content, and the license granted to Broker for the Broker Listing Content, do not violate or infringe upon the rights, including any copyright rights, of any person or entity. Seller acknowledges and agrees that as between Seller and Broker, all Broker Listing Content is owned exclusively by Broker, and Seller has no right, title or interest in or to any Broker Listing Content.

**23. NEVADA LAW:** This Agreement is executed and intended to be performed in the State of Nevada, and the laws of Nevada shall govern its interpretation and effect.  The parties agree that the State of Nevada, and the county in which the Property is located, is the appropriate judicial forum for any litigation, related to this Agreement.

**24. ENTIRE CONTRACT:** All prior negotiations and agreements between the parties are incorporated in this Agreement, which constitutes the entire contract. Its terms are intended by the parties as a final, complete, and exclusive expression of their agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.  This Agreement and any supplement, addendum, or modification, including any photocopy or facsimile, may be executed in two or more counterparts, all of which shall constitute one and the same writing.  The terms of this Agreement may not be amended, modified or altered except through a written agreement signed by all of the parties hereto. **The parties agree that an MLS Change Order signed by Broker and Seller shall act as a valid written addendum to this Agreement.**

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: [] / [＿＿] / [＿＿] /

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com          TRANSACTIONS
TransactionDesk Edition

dotloop signature verification: dtlp.us/JKXs-zi05-xVOw

**25. PARTIAL INVALIDITY:** In the event that any provision of this Agreement shall be held to be invalid or unenforceable, such ruling shall not affect the validity or enforceability of the remainder of the Agreement in any respect whatsoever.

**26. FORCE MAJEURE:** Either party may terminate this Agreement without liability to the other in the event of a force majeure such as acts of terrorism, war, epidemics, pandemics or other development beyond the control of the party that makes fulfillment of that party's obligations hereunder illegal, impossible, or impractical.

**27. DAMAGES CAP** Notwithstanding any provision to the contrary contained in this Agreement, if Broker shall be liable to Seller for any matter arising from this Agreement, whether based upon an action or claim in contract, warranty, equity, negligence, intended conduct or otherwise (including any action or claim arising from an act or omission, negligence or otherwise, of the liable party) the maximum aggregate liability of Broker to Seller under this agreement shall not exceed the aggregate commission amount that has been paid by Seller to Broker.

**28. WARRANTY OF OWNERSHIP:** Seller warrants that Seller is the sole owner of the Property or has the authority to execute this Agreement. By signing below Seller acknowledges that Seller has read and understands this Agreement and agrees to the terms thereof.

**29. FORECLOSURE:** Seller understands that failure to make loan payments may result in foreclosure of the Property by a mortgage holder and/or lien holder. Information regarding the foreclosure or litigation status of a property is available from the County Recorder where the Property is located. Seller represents that at the time of this listing (complete parts a and b):

a. A Notice of Default (Breach) and Election to Sell ☑ **has not –OR–** ☐ **has (date:_____ )** been recorded against the Property. **If a Notice of Default has not been recorded against the Property as of the date of this Agreement, Seller agrees to notify Broker within five (5) business days of receipt of such a notice.** Seller understands that the recording of a Notice of Default begins a statutory foreclosure period, which varies in duration. At the end of the foreclosure period, the Property typically will be sold at a Trustee's Sale (foreclosure sale) and Seller will lose all rights and interest in the Property.

b. Seller ☑ **has not –OR–** ☐ **has (date:_____ )** been served with a Summons and Complaint from Lender seeking to foreclose the property in court. The Parties understand that the filing and service of a Summons and Complaint begins a judicial foreclosure process which varies in duration, and which may result in a judgment against Seller. The judgment will typically be enforced through a foreclosure sale conducted by the Sheriff for the county where the Property is located and Seller will lose all rights and interest in the Property.

c. Seller understands that if the Property is not sold to a buyer before a foreclosure sale of the Property, Seller will lose all rights and interest in the Property. Seller understands that Broker cannot stop a foreclosure.

**SELLER(S) INITIALS:** | KB | | | | |
02/05/26
6:45 PM PST
dotloop verified

**30. SIGNATURES:** This Agreement may be signed by the parties manually or electronically (digitally) and on more than one copy, which, when taken together, each signed copy shall be read as one complete form. Facsimile signatures may be accepted as original.

**31. RECOMMENDATIONS:** If Broker recommends a builder, contractor, escrow company, title company, pest control service, appraiser, lender, home inspection company or home warranty company or any other person or entity to Seller for any purpose, said recommendation shall be independently investigated and evaluated by Seller, who hereby acknowledges that any decision to enter into any contractual arrangement with any such person or entity recommended by Broker will be based solely upon such independent investigation.

**32. DEFAULT:** If Seller materially breaches this Listing, Seller is in default and will be liable to Broker for the amount of the Broker's fee specified in Section 5 and any other fees Broker is entitled to receive under this Agreement. If a sales price is not determinable in the event of an exchange or breach of this Listing, the Listing Price will be the sales price for purposes of computing Broker's fee. If Broker breaches this Agreement, Broker is in default and Seller may exercise any remedy at law.

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: | KB | | | | |
02/05/26
6:45 PM PST
dotloop verified

Exclusive Right (ER) Listing Agreement Rev. 07.24          Page 7 of 10     ©2022 Greater Las Vegas Association of REALTORS®



This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com     TRANSACTIONS TransactionDesk Edition

dotloop signature verification: dtlp.us/JKXs-zl06-xV0w

**33. BINDING EFFECT:** Seller's obligation to pay Broker an earned fee is binding upon Seller and Seller's heirs, administrators, executors, successors and permitted assignees.

**34. JOINT AND SEVERAL:** All Sellers executing this Listing are jointly and severally liable for the performance of all its terms.

**35. TIME OF ESSENCE:** Time is of the essence of this Agreement and each of its terms.

**36.** Seller hereby agrees that once an offer has been accepted the MLS Status shall be (choose one only):

☑ Under Contract Show: The property may be shown even after an offer has been accepted.

☐ Under Contract No Show: The property will not be shown once an offer has been accepted.

☐ Determined by seller upon acceptance of the offer.

**37. 1031 EXCHANGE:** The Seller ☐ **does -OR-** ☑ **does not** intend to perform an IRC Section 1031 tax deferred exchange. If yes, Broker is aware and acknowledges that Seller intends to perform an IRC Section 1031 tax deferred exchange. Broker will cooperate in such an exchange and Seller agrees to hold Broker harmless from any and all claims, costs, liabilities or delays in time resulting from such an exchange.

**ADDITIONAL TERMS:**

_____

_____

_____

_____

**THE PRE-PRINTED PORTION OF THIS AGREEMENT HAS BEEN APPROVED BY THE GREATER LAS VEGAS ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OR THE TAX CONSEQUENCES THEREOF. FOR LEGAL OR TAX ADVICE, CONSULT YOUR ATTORNEY OR TAX ADVISOR.**

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS:

This form presented by Jenia N. McDonald | LPT Realty LLC | 8773662213 | Jen.McDonald@lpt.com  **TRANSACTIONS** TransactionDesk Edition

dotloop signature verification: dtlp.us/JKXs-zI06-xV6w

**By signing below, Seller consents to receive transmissions sent from Broker to the e-mail address(es) set forth. Seller agrees to keep Broker advised of his/her address and telephone number (or a number where they may be reached within 24 hours) at all times during the term of this Agreement.**

**SELLER:**

Date _____ Time _____ ☐ AM ☐ PM

Seller's Signature | Luke Fitzgerald, Manager of Koinonia Construction
Inc.    dotloop verified 02/05/26 6:45 PM PST MPLE-5T4M-KRON-JYSW | Printed Name: Koinonia Construction Inc. _____

Phone _____ E-Mail _____ Address _____

Date _____ Time _____ ☐ AM ☐ PM

Seller's Signature [                    ] Printed Name: _____

Phone _____ E-Mail _____ Address _____

Date _____ Time _____ ☐ AM ☐ PM

Seller's Signature [                    ] Printed Name: _____

Phone _____ E-Mail _____ Address _____

Date _____ Time _____ ☐ AM ☐ PM

Seller's Signature [                    ] Printed Name: _____

Phone _____ E-Mail _____ Address _____

**BROKER:**

Company LPT Realty, LLC _____

Address 2403 N 5th St _____ City Elko _____ State NV ____ Zip 89801

Phone 2084044061 _____ E-Mail kconelko@gmail.com

Designated Licensee Signature Jennifer Welch    dotloop verified 02/05/26 6:32 PM PST QQG5-MNBY-RI0H-UBYS    License No. S.0203284

Printed Name: Jennifer Welch _____ Licensee's Phone: 2084044061

Broker's Signature Jen McDonald    dotloop verified 02/06/26 11:44 AM PST HJMH-WTXE-RPJ2-JGVH License No. B.3279

Printed Name: _____ Date _____ Time: _____ ☐ AM ☐ PM

**AN EXCLUSIVE BROKERAGE AGREEMENT MUST BE SIGNED BY THE BROKER TO BE VALID**

Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.

SELLER(S) INITIALS: [KCI 02/05/26 6:45 PM PST dotloop verified] [ ] [ ] [ ]

Exclusive Right (ER) Listing Agreement Rev. 07.24     Page 9 of 10     ©2022 Greater Las Vegas Association of REALTORS®



dotloop signature verification: dtlp.us/JKXs-zI06-xV0w

 **WHAT EVERYONE SHOULD KNOW ABOUT EQUAL OPPORTUNITY IN HOUSING**

The sale and purchase of a home is one of the most significant events that any person will experience in their lifetime. It is more than the simple purchase of housing, for it includes the hopes, dreams, aspirations, and economic destiny of those involved.

## THE LAW - Civil Rights Act of 1866

The Civil Rights Act of 1866 prohibits all racial discrimination in the sale or rental of property.

## Fair Housing Act

The Fair Housing Act declares a national policy of fair housing throughout the United States. The law makes illegal any discrimination in the sale, lease or rental of housing, or making housing otherwise unavailable, because of race, color, religion, sex, handicap, familial status, or national origin.

## Americans with Disabilities Act

Title III of the Americans with Disabilities Act prohibits discrimination against the disabled in places of public accommodations and commercial facilities.

## Equal Credit Opportunity Act

The Equal Credit Opportunity Act makes discrimination unlawful with respect to any aspect of a credit application on the basis of race, color, religion, national origin, sex, marital status, age or because all or part of the applicant's income derives from any public assistance program.

## State and Local Laws

State and Local laws often provide broader coverage and prohibit discrimination based on additional classes not covered by federal law.

## THE RESPONSIBILITIES

The home seller, the home seeker, and the real estate professional all have rights and responsibilities under the law.

## For the Home Seller

You should know that as a home seller or landlord you have a responsibility and a requirement under the law not to discriminate in the sale, rental and financing of property on the basis of race, color, religion, sex, handicap, familial status, or national origin. You cannot instruct the licensed broker or salesperson acting as your agent to convey for you any limitations in the sale or rental, because the real estate professional is also bound by law not to discriminate. Under the law, a home seller or landlord cannot establish discriminatory terms or conditions in the purchase or rental, deny that housing is available or advertise that the property is available only to persons of a certain race, color, religion, sex, handicap, familial status, or national origin.

## For the Home Seeker

You have the right to expect that housing will be available to you without discrimination or other limitation based on race, color, religion, sex, handicap, familial status, or national origin.

This includes the right to expect:

- housing in your price range made available to you without discrimination
- equal professional service
- the opportunity to consider a broad range of housing choices
- no discriminatory limitations on communities or locations of housing
- no discrimination in the financing, appraising or insuring of housing
- reasonable accommodations in rules, practices and procedures for persons with disabilities
- non-discriminatory terms and conditions for the sale, rental, financing, or insuring of a dwelling
- to be free from harassment or intimidation for exercising your fair housing rights.

| *KB* | | | |
| 02/05/26 6:45 PM PST dotloop verified | | | |

**Seller(s) Initials**

## FOR THE Real Estate Professional

**As a home seller or home seeker, you** should know that the term REALTOR® identifies a licensed professional in real estate who is a member of the NATIONAL ASSOCIATION OF REALTORS®. Not all licensed real estate brokers and salespersons are members of the National Association, and only those who are can identify themselves as REALTOR®. They conduct their business and activities in accordance with a strict Code of Ethics. As agents in a real estate transaction, licensed brokers or salespersons are prohibited by law from discriminating on the basis of race, color, religion, sex, handicap, familial status, or national origin. A request from the home seller or landlord to act in a discriminatory manner in the sale, lease or rental cannot legally be fulfilled by the real estate professional.

## DEED AND PROPERTY COVENANTS OR RESTRICTIONS OF RECORD

During the history of our country, some persons have placed restrictions on property based on race, color, religion, sex, handicap, familial status, or national origin. Generally, these restrictions are void and unenforceable, with limited exceptions for particular types of religious housing and housing for older persons. The publication of these void restrictions may convey a message that the restrictions continue to be valid. Any time a sales associate or broker is asked to provide a copy of the covenants or restrictions of record relating to the use of a property the following message should be included:

*These documents may contain restrictions or covenants based on race, color, religion, sex, handicap, familial status, or national origin.*

*Such restrictions or covenants generally are void and unenforceable as violations of fair housing laws.*

*Be assured that all property is marketed and made available without discrimination based on race, color, religion, sex, handicap, familial status, or national origin. Should you have any questions regarding such restrictions, please contact your attorney.*

## THE EQUAL OPPORTUNITY PROGRAM

The NATIONAL ASSOCIATION OF REALTORS® has developed a Fair Housing Program to provide resources and guidance to REALTORS® in ensuring equal professional services for all people.

## The Code of Ethics

Article 10 of the NATIONAL ASSOCIATION OF REALTORS® Code of Ethics requires that "REALTORS® shall not deny equal professional services to any person for reasons of race, color, religion, sex, handicap, familial status, or national origin. REALTORS® shall not be a party to any plan or agreement to discriminate against a person or persons on the basis of race, color, religion, sex, handicap, familial status, or national origin."

A REALTOR® pledges to conduct business in keeping with the spirit and letter of the Code of Ethics. Article 10 imposes obligations upon REALTORS® and is also a firm statement of support for equal opportunity in housing.

## Fair Housing Partnership

The Fair Housing Partnership negotiated with the U.S. Department of Housing and Urban Development (HUD) outlines a program of voluntary compliance. REALTORS® voluntarily participate in activities and program to acquaint the community with the availability of equal housing opportunity, to establish office procedures to ensure that there is no denial of equal professional service, to make materials available which will explain this commitment, and to work with other groups within the community to identify and remove barriers to fair housing.

## FURTHER ASSISTANCE

Local Boards of REALTORS® will accept complaints alleging violations of the Code of Ethics filed by a homeseeker who alleges discriminatory treatment in the availability, purchase or rental of housing. Local Boards of REALTORS® have a responsibility to enforce the Code of Ethics through professional standards procedures and corrective action in cases where a violation of the Code of Ethics is proven to have occurred. Complaints alleging discrimination in housing may be filed with the nearest office of the Department of Housing and Urban Development (HUD), or by calling HUD's Discrimination Hotline at 1-800-669-9777, 1-800-290-1617 (TYY). For information and publications on fair housing, call HUD's Fair Housing Information Clearinghouse at 1-800-343-3442.

Exclusive Right (ER) Listing Agreement Rev. 07.24          Page 10 of 10          © 2022 Greater Las Vegas Association of REALTORS®

 

dotloop signature verification: dtlp.us/Lt48-Bv4H-Ucxw





### The Greater Las Vegas Association of REALTORS®
### Multiple Listing Service
# CHANGE ORDER

ADDRESS/DESCRIPTION 2511 N 5th St, Elko, NV 89801 _____ MLS# lot:3907505 _____

PROPERTY TYPE Townhome _____ PRICE $ 359900 _____

In reference to the Listing Agreement (hereinafter "Agreement") executed by Koinonia Construction Inc. _____
_____ as Seller(s)

and LPT Realty, LLC _____ as Broker dated 02/06/2026 _____ the parties hereby agree as follows:

☐ (1) The Agreement is renewed. The parties agree to extend the expiration date of the Agreement from _____ , terminating at midnight, to _____ (If #1 is selected, a copy of the Change Order must be submitted to the MLS)

☑ (2) To change the selling price from $ 359900 _____ to $ 340000 _____ .

☐ (3) To place the subject property back on the market.

☐ (4) To change the MLS Status to Under Contract Show ("UCS") which means the listing is under contract, but showings are still being scheduled.

☐ (5) To change the MLS Status to Under Contract No Show ("UCNS") which means the listing is under contract, but showings are no longer being scheduled.

☐ (6) To change the terms and/or conditions of the Agreement as follows:

This Change Order is hereby acknowledged, pursuant to the Agreement and is effective as of the date below.

_____ Seller

_Lake Fitzgerald, Manager of Koinonia Construction Inc._ | dotloop verified 02/07/26 12:15 PM PST UCGT-RETK-DG1L-3DDH | Seller

Date _____                Date _____

_Jen McDonald_ | dotloop verified 02/09/26 10:20 AM PST VUPK-IRC7-G39Z-DFXZ | Broker        Date _____

Designated Licensee (NAME) Jennifer Welch _____

## A CHANGE ORDER MUST BE SIGNED BY BOTH BROKER AND SELLER TO BE VALID

**GLVAR MLS Department**          Fax: 702-732-3154          Mls@glvar.org

MLS Change Order Rev 11.19          ©2019 Greater Las Vegas Association of REALTORS® MLS

1525079v.1

# EXHIBIT "I"

dotloop signature verification: dtlp.us/huAW-O64U-NchK
Authentisign ID: 7105A55A-8E34-F111-8EF2-000D3A55CAFE



## RESIDENTIAL PURCHASE AGREEMENT



(Joint Escrow Instructions)

Date_____04/08/2026_____

_____Feras Elias_____ ("Buyer", hereby offers to purchase

_____2519 N 5th_____ **ST**____ ("Property"),

within the city or unincorporated area of _____Elko_____, County of _____Elko_____,

State of Nevada, Zip _____89801_____ A.P.N #_____001-61M-025_____ for the purchase price of

$ _____335,000.00_____   (_____Three Hundred Thirty-Five Thousand_____(dollars) ("Purchase Price")

on the terms and conditions contained herein: **BUYER** ☐ **does -OR-** ☐ **does not** intend to occupy the Property as a residence.

---

## **Buyer's Offer**

---

**1.      FINANCIAL TERMS & CONDITIONS:**

$__3,500.00__ **A. EARNEST MONEY DEPOSIT** ("EMD") is evidenced by:
☐ Check          ☐ Wire transfer          ☐ Other:_____
The EMD shall be deposited within one (1) or _____business day(s) following the date of  Acceptance
(as defined in Section 24) into the account of:-: ☐ Escrow Holder, ☐ Buyer's Broker Trust Account **OR**
☐ Seller's Broker's Trust Account.

$_____ **B. ADDITIONAL DEPOSIT** to be placed in escrow on or before (date) _____. The
additional deposit ☐ will —OR— ☐ will not be considered part of the EMD. (Any conditions on the
additional deposit should be set forth in Section 30 herein.)

$330,000.00 **C. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING FOR A** **NEW LOAN:**

☒ Conventional, ☐ FHA, ☐ VA, ☐ Other (specify) _____.

$_____ **D. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING TO ASSUME THE**
**FOLLOWING EXISTING LOAN(s):**
☐ Conventional, ☐ FHA, ☐ VA, ☐ Other (specify) _____.

Interest: ☐ Fixed rate, _____ years —OR— ☐ Adjustable Rate, _____ years. Seller further agrees to provide
the Promissory Note and the most recent monthly statement of all loans to be assumed by Buyer within FIVE
(5) calendar days following the date of Acceptance.

$_____ **E. BUYER TO EXECUTE A** **PROMISSORY NOTE SECURED BY DEED OF TRUST** **PER TERMS**
**IN THE "FINANCING ADDENDUM" which is attached hereto.**

$__1,500.00__ **F. BALANCE OF PURCHASE PRICE** (Balance of Down Payment) in Good Funds to be paid prior to Close
of Escrow ("COE").

$335,000.00 **G. TOTAL PURCHASE PRICE** (This price DOES NOT include closing costs, prorations, or other fees and
costs associated with the purchase of the Property as defined herein.

---

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is
otherwise modified by addendum or counteroffer.

Buyer's Name(s): _____Feras Elias_____   BUYER(S) INITIALS: _____/_____/_____/_____

Property Address: _____2519 N 5th_____ **ST**   SELLER(S) INITIALS: _____/_____/_____/_____

Residential Purchase Agreement Rev. 10/25                                    ©2025 Greater Las Vegas Association of REALTORS®

04/10/26
dotloop verified

Page 1 of 11

dotloop signature verification: dtlp.us/huAW-O64U-NchK
Authentisign ID: 7105A55A-8E34-F111-8EF2-000D3A55CAFE

**2.** **BUYER REPRESENTATIVE/BUYER BROKER COMPENSATION:** At the close of escrow or the exchange of the subject property, Seller shall pay the Buyer's Representative/Buyer's Broker ("Buyer's Representative/Buyer's Broker") __3__ % of the gross sales price of the property or $_____. Upon execution of this Residential Purchase Agreement or subsequent Counter Offer(s), this clause is no longer negotiable exclusively between Buyer and Seller and any modification thereafter must be ratified in writing by the Buyer's Representative/Buyer's Broker.

**3.** **ADDITIONAL FINANCIAL TERMS & CONTINGENCIES:**

   **A.** **NEW LOAN APPLICATION:** Within __3__ business days following the date of Acceptance, Buyer agrees to (1) submit completed loan application to a lender of Buyer's choice and (2) furnish a preapproval letter to Seller based upon a standard factual credit report and review of debt-to-income ratios. If Buyer fails to complete any of these conditions within the applicable time frame, Seller reserves the right to terminate this Agreement. In such event, both parties agree to cancel the escrow and return EMD to Buyer. Buyer shall use Buyer's best efforts to obtain financing under the terms and conditions outlined in this Agreement.

   **B.** **APPRAISAL CONTINGENCY:** Buyer's obligation to purchase the property is contingent upon the property appraising for not less than the Purchase Price. If after the completion of an appraisal by a licensed appraiser, Buyer receives written notice from the lender or the appraiser that the Property has appraised for less than the purchase price (a "Notice of Appraised Value") Buyer may attempt to renegotiate or cancel the RPA by providing written notice to the Seller (with a copy of the Appraisal) no later than __30__ calendar days following the date of Acceptance of the RPA; whereupon Buyer is entitled to a whole refund of their EMD, referenced in Section 1(A), by a fully cooperated and executed cancellation of escrow instructions and the release of Buyer's funds through their reserved right to cancel pursuant to this contingency per NRS 645A.175. **IF this Residential Purchase Agreement is not cancelled, in writing on or before the Appraisal Deadline, Buyer shall be deemed to have waived the appraisal contingency.**

   **C.** **LOAN CONTINGENCY:** Buyer's obligation to purchase the property is contingent upon Buyer obtaining the loan referenced in Section 1(C) or 1(D) of the RPA unless otherwise agreed in writing. Buyer shall remove the loan contingency in writing, attempt to renegotiate, or cancel the RPA by providing written notice to the Seller no later than _____ calendar days following the date of Acceptance of the RPA; whereupon Buyer is entitled to a whole refund of their EMD, referenced in Section 1(A), by a fully cooperated and executed cancellation of escrow instructions and the release of Buyer's funds through their reserved right to cancel pursuant to this contingency per NRS 645A.175. **IF this Residential Purchase Agreement is not cancelled, in writing on or before the Loan Contingency Deadline, Buyer shall be deemed to have waived the loan contingency.**

   **D.** **CASH PURCHASE:** Within _____ business days following the date of Acceptance, Buyer agrees to provide written evidence from a bona fide financial institution of sufficient cash available to complete this purchase. If Buyer does not submit the written evidence within the above period, Seller reserves the right to terminate this Agreement.

**4.** **SALE OF OTHER PROPERTY:**

   **A.** This Agreement is NOT contingent upon the sale of any property owned by the Buyer. —**OR**—

   **B.** ☐ (if checked): The attached Contingent Upon Sale Addendum is hereby incorporated into this agreement.

**5.** **FIXTURES AND PERSONAL PROPERTY:** The following items will be transferred, free of liens, with the sale of the Property with no real value unless stated otherwise herein. Unless an item is covered under Section 8(F) of this Agreement, all items are transferred in an "AS IS" condition. All EXISTING fixtures and fittings including, but not limited to: electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fan(s), fireplace insert(s), gas logs and grates, solar power system(s), built-in appliance(s) including ranges/ovens, window and door screens, awnings, shutters, window coverings, attached floor covering(s), television antenna(s), satellite dish(es), private integrated telephone systems, air coolers/conditioner(s), pool/spa equipment, garage door opener(s)/remote control(s), mailbox, in-ground landscaping, trees/shrub(s), water softener(s), water purifiers, security systems/alarm(s).

The following additional items of personal property are also included:
`kitchen appliances to remain at no dollar value`

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name(s): _____**Feras Elias**_____ BUYER(S) INITIALS: _FE_ /_____ /_____ /_____

Property Address: _____**2519 N 5th**_____ **ST**  SELLER(S) INITIALS: [signature] /_____ /_____ /_____

04/10/26 11:06 AM PDT dotloop verified

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 https://www.lwolf.com

dotloop signature verification: dtlp.us/huAW-O64U-fIchK
Authentisign ID: 7105A55A-8E34-F111-8EF2-000D3A55CAFE

**6.    ESCROW:**

A.  **OPENING OF ESCROW:** The purchase of the Property shall be consummated through Escrow ("Escrow"). Opening of Escrow shall take place by the end of one (1) business day following the date of Acceptance of this Agreement ("Opening of Escrow"), at _____**Landmark Title**_____ title or escrow company ("Escrow Company" or "ESCROW HOLDER") with _____**Renee Jones**_____ ("Escrow Officer") (or such other escrow officer as Escrow Company may assign). Opening of Escrow shall occur upon Escrow Company's receipt of this fully accepted Agreement. ESCROW HOLDER is instructed to notify the Parties (through their respective Agents) of the opening date and the Escrow Number.

B.  **EARNEST MONEY:** Following the date of Acceptance, Buyer's EMD as shown in Section 1(A), and 1(B) if applicable, of this Agreement, shall be deposited pursuant to the language in Section 1(A) and 1(B) if applicable, and subject to NRS 645A.175.

C.  **CLOSE OF ESCROW:** Close of Escrow ("COE") shall be on or before_____**05/15/2026**_____ (date). If the designated date falls on a weekend or holiday, COE shall be the next business day.

D. **IRS DISCLOSURE:** Seller is hereby made aware that there is a regulation that requires all ESCROW HOLDERS to complete a modified 1099 form, based upon specific information known only between parties in this transaction and the ESCROW HOLDER. Seller is also made aware that ESCROW HOLDER is required by federal law to provide this information to the Internal Revenue Service after COE in the manner prescribed by federal law.

**7.    TITLE INSURANCE:** This Purchase Agreement is contingent upon the Seller's ability to deliver, good and marketable title as evidenced by a policy of title insurance, naming Buyer as the insured in an amount equal to the purchase price, furnished by the title company identified in Section 6(A). Said policy shall be in the form necessary to effectuate marketable title or its equivalent and shall be paid for as set forth in Section 9(A).

**8.    BUYER'S DUE DILIGENCE:** Buyer's obligation ☐ **is** –OR– ☐ **is not** conditioned on the Buyer's Due Diligence as defined in this section 8(A) below. This condition is referred to as the "Due Diligence Condition". If checked in the affirmative, Sections 8 (A) through (C) shall apply. Otherwise, they do not. Buyer shall have __15__ calendar days following the date of Acceptance of the RPA (as defined in Section 24 herein) to complete Buyer's Due Diligence. Seller agrees to cooperate with Buyer's Due Diligence. **Seller shall ensure that all necessary utilities (gas, power and water) and all operable pilot lights are on for Buyer's investigations and through the close of escrow.**

A.  **PROPERTY INSPECTION/CONDITION:** During the Due Diligence Period, Buyer shall take such action as Buyer deems necessary to determine whether the Property is satisfactory to Buyer, including, but not limited to, whether the Property is insurable to Buyer's satisfaction, whether there are unsatisfactory conditions surrounding or otherwise affecting the Property (such as location of flood zones, airport noise, noxious fumes or odors, environmental substances or hazards, whether the Property is properly zoned, locality to freeways, railroads, places of worship, schools, golf courses, etc.) or any other concerns Buyer may have related to the Property. During such Period, Buyer shall have the right to conduct, non-invasive/ non-destructive inspection of all structural, roofing, mechanical, electrical, plumbing, heating/air conditioning, water/well/septic, pool/spa, survey, square footage, and any other property or systems, through licensed and bonded contractors or other qualified professionals. Seller agrees to provide reasonable access to the Property to Buyer and Buyer's inspectors. Buyer agrees to indemnify and hold Seller harmless with respect to any injuries suffered by Buyer or third parties present at Buyer's request while on Seller's Property conducting such inspections, tests or walk-throughs. Buyer's indemnity shall not apply to any injuries suffered by Buyer or third parties present at Buyer's request that are the result of an intentional tort, gross negligence or any misconduct or omission by Seller, Seller's Agent or other third parties on the Property. Buyer is advised to consult with appropriate professionals regarding neighborhood or Property conditions, including but not limited to: schools, proximity and adequacy of law enforcement; proximity to commercial, industrial, or agricultural activities; crime statistics; fire protection; other governmental services; existing and proposed transportation; construction and development; noise or odor from any source; and other nuisances, hazards or circumstances. If Buyer cancels this Agreement due to a specific inspection report, Buyer shall provide Seller at the time of cancellation with a copy of the report containing the name, address, and telephone number of the inspector.

B.  **BUYER'S RIGHT TO CANCEL OR RESOLVE OBJECTIONS:** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 8, cancel the Residential Purchase Agreement by providing written notice to the Seller, whereupon Buyer is entitled to a whole refund of their EMD, referenced in Section 1(A), by

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name(s): _____**Feras Elias**_____    BUYER(S) INITIALS: ____/____/____

Property Address: _____**2519 N 5th**_____ **ST**    SELLER(S) INITIALS: ____/____/____

Residential Purchase Agreement Rev. 10/25    04/10/26

©2025 Greater Las Vegas Association of REALTORS®

dotloop verified    Page 3 of 11

dotloop signature verification: dtlp.us/huAW-Q64U-NchK
Authentisign ID: 7105A55A-8E34-F111-8EF2-000D3A55CAFE

a fully cooperated and executed cancellation of escrow instructions and the release of Buyer's funds through their reserved right to cancel pursuant to this provision (NRS 645A.175) or (ii) no later than the Due Diligence Deadline referenced in Section 8, resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

**C. FAILURE TO CANCEL OR RESOLVE OBJECTIONS:** If Buyer fails to cancel the Residential Purchase Agreement or fails to resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 8, **Buyer shall be deemed to have waived the Due Diligence Condition.**

BUYER'S INITIALS: [FE] / _____ / _____ / _____

**D. INSPECTIONS:** Acceptance of this offer is subject to the following reserved right. Buyer may have the Property inspected and select the licensed contractors, certified building inspectors and/or other qualified professionals who will inspect the Property. Seller will ensure that necessary utilities (gas, power and water and all operable pilot lights) are turned on and supplied to the Property within two (2) business days following the date of Acceptance of this Agreement, to remain on until close of escrow ("COE"). It is strongly recommended that Buyer retain licensed Nevada professionals to conduct inspections. If any inspection is not completed and requests for repairs are not delivered to Seller within the Due Diligence Period, Buyer is deemed to have waived the right to that inspection and Seller's liability for the cost of all repairs that inspection would have reasonably identified had it been conducted, except as otherwise provided by law. The foregoing expenses for inspections will be paid outside of Escrow unless the Parties present instructions to the contrary prior to COE, along with the applicable invoice. (Identify which party shall pay for the inspection noted below either: SELLER, BUYER,50/50, WAIVED OR N/A.)

| Type | Paid By | Type | Paid By | Type | Paid By |
|---|---|---|---|---|---|
| Home Inspection | Buyer | Termite Inspection | | Soil Inspection | |
| Pool/Spa Inspection | | Pest Inspection | | Survey (type): | |
| Roof Inspection | | Septic Lid Removal | | Fungal Contaminant | |
| HVAC/Furnace Inspection | | Septic Pumping | | Air Quality Testing | |
| Electrical Inspection | | Septic Inspection | | Radon Testing | |
| Plumbing/Sewer Inspection | | Well Inspection | | Lead Based Paint Testing | |
| Structural Inspection | | Water Quality Report | | Elevator | |
| Wood-Burning Device / Chimney Inspection | | Water Quantity Report | | Other: | |

**E. ADDITIONAL INSPECTIONS AND/OR CERTIFICATIONS:** In the event an inspection reveals areas of concern with the roof, septic system, well, wood burning device/chimney or the possible presence of a fungal contaminant, or any other issue/concern that was discovered on the home inspection or any other disclosures per section 12, Buyer reserves the right to require a certification or additional inspections within their due diligence period. The expenses for certifications or additional inspections will be paid outside of Escrow unless the Parties present instructions to the contrary prior to COE (along with the applicable invoice). A certification is not a warranty.

**F. BUYER'S REQUEST FOR REPAIRS:** It is Buyer's responsibility to inspect the Property sufficiently as to satisfy Buyer's use. Buyer reserves the right to request repairs, based upon the Seller's Real Property Disclosure or items which materially affect value or use of the Property revealed by an inspection, certification or appraisal. Items of a general maintenance or cosmetic nature which do not materially affect value or use of the Property, which existed at the time of Acceptance, and which are not expressly addressed in this Agreement are deemed accepted by the Buyer, except as otherwise provided in this Agreement. The Brokers herein have no responsibility to assist in the payment of any repair, correction or deferred maintenance on the Property which may have been revealed by the above inspections, agreed upon by the Buyer and Seller or requested by one party.

9.    **FEES, AND PRORATIONS** (Identify which party shall pay the costs noted below either: SELLER, BUYER, 50/50, WAIVED or N/A.)

**A. TITLE, ESCROW & APPRAISAL FEES:**

| Type | Paid By | Type | Paid By | Type | Paid By |
|---|---|---|---|---|---|
| Escrow Fees | 50/50 | Lender's Title Policy | Buyer | Owner's Title Policy | Seller |
| Real Property Transfer Tax | Seller | Appraisal | Buyer | Other: appraidal rein | Seller |

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name(s): _____ Feras Elias _____    BUYER(S) INITIALS: [FE] / _____ / _____ / _____

Property Address: _____ 2519 N 5th _____ ST    SELLER(S) INITIALS: [SF] / _____ / _____

Residential Purchase Agreement Rev. 10/25    ©2025 Greater Las Vegas [Association] of REALTORS®    Page 4 of 11

04/10/26
11:06 AM PDT
dotloop verified

Case 26-50335-hlb    Doc 48    Entered 05/06/26 16:38:35    Page 108 of 151

dotloop signature verification: dtlp.us/huAW-O64U-fJchK
Authentisign ID: 7105A55A-8E34-F111-8EF2-000D3A55CAFE

**B. PRORATIONS:** Any and all rents, taxes, interest, homeowner association fees, trash service fees, sewer service fees, payments on bonds, SIDs, LIDs, and assessments assumed by the Buyer, and other expenses of the property shall be prorated as of the date of the recordation of the deed. Security deposits, advance rentals or considerations involving future lease credits shall be credited to the Buyer. All prorations will be based on a 30-day month and will be calculated as of COE. Prorations will be based upon figures available at closing. Any supplements or adjustments that occur after COE will be handled by the parties outside of Escrow.

**C. PRELIMINARY TITLE REPORT:** Within ten (10) business days of Opening of Escrow, Title Company shall provide Buyer with a Preliminary Title Report ("PTR") to review, which must be approved or rejected within five (5) business days of receipt thereof. If Buyer does not object to the PTR within the period specified above, the PTR shall be deemed accepted. If Buyer makes an objection to any item(s) contained within the PTR, Seller shall have five (5) business days after receipt of objections to correct or address the objections. If, within the time specified, Seller fails to have each such exception removed or to correct each such objection, Buyer shall have the option to: (a) terminate this Agreement by providing notice to Seller and Escrow Officer, entitling Buyer to a refund of the EMD or (b) elect to accept title to the Property as is. All title exceptions approved or deemed accepted are hereafter collectively referred to as the "Permitted Exceptions."

**D. CLOSING FEES:** In addition to the Seller's expenses identified in this Agreement, Seller agrees to contribute: ☒ $ 8,000.00 , or ☐_____% of the total purchase price toward Buyer's closing costs. These costs may include, but are not limited to: lender fees, title and escrow fees, and the Buyer's recurring or non-recurring closing expenses.

**E. HOME PROTECTION PLAN:** Buyer and Seller acknowledge that they have been made aware of Home Protection Plans that provide coverage to Buyer after COE. **Buyer** ☐ **waives –OR–** ☒ **requires** a Home Protection Plan with _____Builder warranty_____ . ☒ **Seller –OR–** ☐ **Buyer** will pay for the Home Protection Plan at a price not to exceed $_____ . **Buyer** will order the Home Protection Plan. Neither Seller nor Brokers make any representation as to the extent of coverage or deductibles of such plans.

10. **TRANSFER OF TITLE:** Upon COE, Buyer shall tender to Seller the agreed upon Purchase Price, and Seller shall tender to Buyer marketable title to the Property free of all encumbrances other than (1) current real property taxes, (2) covenants, conditions and restrictions (CC&R's) and related restrictions, (3) zoning or master plan restrictions and public utility easements; and (4) obligations assumed, and encumbrances accepted by Buyer prior to COE. Buyer is advised the Property may be reassessed after COE which may result in a real property tax increase or decrease.

11. **COMMON-INTEREST COMMUNITIES:** If the Property is subject to a Common Interest Community ("CIC"), **Seller shall provide AT SELLER'S EXPENSE the CIC documents as required by NRS 116.4109** (collectively, the "resale package"). Seller shall request the resale package within two (2) business days following the date of Acceptance and provide the same to Buyer within one (1) business day of Seller's receipt thereof.
- **Pursuant to NRS 116.4109, Buyer may cancel this Agreement without penalty until midnight of the fifth (5th) calendar day following the date of receipt of the resale package.** If Buyer elects to cancel this Agreement pursuant to this statute, he/she must deliver, via hand delivery, prepaid U.S. mail, or electronic transmission, a written notice of cancellation to Seller or his or her authorized agent.
- **If Buyer does not receive the resale package within fifteen (15) calendar days following the date of Acceptance, this Agreement may be cancelled in full by Buyer without penalty.** Notice of cancellation shall be delivered pursuant to Section 25 of the RPA.
- Upon such written cancellation, Buyer shall promptly receive a refund of the EMD. The parties agree to execute any documents requested by ESCROW HOLDER to facilitate the refund. If written cancellation is not received within the specified time period, the resale package will be deemed approved. Seller shall pay all outstanding CIC fines or penalties at COE.

**A. CIC RELATED EXPENSES:** (Identify which party shall pay the costs noted below either: SELLER, BUYER, 50/50, WAIVED or N/A.)

| Type | Paid By | Type | Paid By |
|------|---------|------|---------|
| CIC Demand | Seller | CIC Capital Contribution | Seller |
| Final Inspection Fee | Seller | CIC Transfer Fee/Setup Fee | Seller |

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.
Buyer's Name(s): _____Feras Elias_____                    BUYER(S) INITIALS: [FE] ___/___/___

Property Address: _____2519 N 5th_____ ST   SELLER(S) INITIALS: [initials] ___/___/___
Residential Purchase Agreement Rev. 10/25                    ©2025 Greater Las Vegas Association of REALTORS®
                                                                    04/10/26
                                                                    dotloop verified    Page 5 of 11

dotloop signature verification: dtlp.us/huAW-O64U-NchK
Authentisign ID: 7105A55A-8E34-F111-8EF2-000D3A55CAFE

**12.** **DISCLOSURES: Within five (5) calendar days following the date of Acceptance of this Agreement,** Seller will provide the following Disclosures and/or documents. **Check applicable boxes.**

☒ **Seller Real Property Disclosure Form:** (NRS 113.130)
☐ **Open Range Disclosure:** If seller has marked "Yes" to paragraph 2(g) of the Sellers real property disclosure (NRS 113.130)
☐ **Construction Defect Claims Disclosure:** If Seller has marked "Yes" to Paragraph 1(d) of the Sellers Real Property Disclosure Form (NRS 40.688)
☐ **Lead-Based Paint Disclosure and Acknowledgement:** required if constructed before 1978 (24 CFR 745.113)
☐ **"Hey…" It's A Smart Home Disclosure**
☐ **Solar Panel Addendum (Photovoltaic-PV)**
☐ **Other:** (list) _____.

**13.** **FAIR HOUSING COMPLIANCE AND DISCLOSURES:** All properties are offered without regard to race, color, religion, sex, national origin, age, gender identity or expression, familial status, sexual orientation, ancestry, or handicap and any other current requirements of federal or state fair housing laws.

**14.** **WALK-THROUGH INSPECTION OF PROPERTY:** Buyer is entitled under this Agreement to a walk-through of the Property within __3__ calendar days prior to COE to ensure the Property and all major systems, appliances, heating/cooling, plumbing and electrical systems and mechanical fixtures are as stated in Seller's Real Property Disclosure Statement, and that the Property and improvements are in the same general condition as when this Agreement was Accepted by Seller and Buyer. To facilitate Buyer's walk-through, Seller is responsible for keeping all necessary utilities on, including all operable pilot lights. If any systems cannot be checked by Buyer on walk-through due to non-access or no power/gas/water, then Buyer reserves the right to hold Seller responsible for defects which could not be detected on walk-through because of lack of such access or power/gas/water. The purpose of the walk-through is to confirm (a) the Property is being maintained (b) repairs, if any, have been completed as agreed, and (c) Seller has complied with Seller's other obligations. **If Buyer elects not to conduct a walk-through inspection prior to COE, then all systems, items and aspects of the Property are deemed satisfactory, and Buyer releases Seller's liability for costs of any repair that would have reasonably been identified by a walk-through inspection, except as otherwise provided by law.**

**15.** **DELIVERY OF POSSESSION:** Seller shall deliver the Property along with any keys, alarm codes, garage door opener/controls and, if freely transferable, parking permits and gate transponders outside of Escrow, upon COE. Seller agrees to vacate the Property and leave the Property in a neat and orderly, broom-clean condition and tender possession no later than ☒ **COE –OR–** _____. In the event Seller does not vacate the Property by this time, Seller shall be considered a trespasser in addition to Buyer's other legal and equitable remedies. Any personal property left on the Property after the date indicated in this section shall be considered abandoned by Seller.

**16.** **RISK OF LOSS:** Risk of loss shall be governed by NRS 113.040. This law provides generally that if all or any material part of the Property is destroyed before transfer of legal title or possession, Seller cannot enforce the Agreement and Buyer is entitled to recover any portion of the sale price paid. If legal title or possession has transferred, risk of loss shall shift to Buyer.

**17.** **ASSIGNMENT OF THIS AGREEMENT:** Unless otherwise stated herein, this Agreement is non-assignable unless agreed upon in writing by all parties.

**18.** **CANCELLATION OF AGREEMENT:** In the event this Agreement is properly cancelled in accordance with the terms contained herein, the Buyer is entitled to a whole refund of their EMD, referenced in Section 1(A), by a fully cooperated and executed cancellation of escrow instructions. Neither Buyer nor Seller will be reimbursed for any expenses incurred in conjunction with due diligence, inspections, appraisals or any other matters pertaining to this transaction (unless otherwise provided herein or except as otherwise provided by law).

**19.** **DEFAULT:**

   A. **MEDIATION:** Before any legal action is taken to enforce any term or condition under this Agreement, the parties agree to engage in mediation, a dispute resolution process, through a mediator mutually agreed upon by the parties. Mediation fees, if any, shall be divided equally among the parties involved. Notwithstanding the foregoing, in the event the Buyer finds it necessary to file a claim for specific performance, this section shall not

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.
Buyer's Name(s): _____**Feras Elias**_____ BUYER(S) INITIALS: _FE_ /_____ /_____

Property Address: _____**2519 N 5th**_____ **ST** SELLER(S) INITIALS _____ /_____ /_____
Residential Purchase Agreement Rev. 10/25                    ©2025 Greater Las Vegas Association of REALTORS®

04/10/26
11:66 AM PDT
dotloop verified

Page 6 of 11

dotloop signature verification: dtlp.us/huAW-O64U-NchK
Authentisign ID: 7105A55A-8E34-F111-8EF2-000D3A55CAFE

apply. Each party is encouraged to have an independent lawyer of their choice review this mediation provision before agreeing thereto. By initialing below, the parties confirm that they have read and understand this section and voluntarily agree to the provisions thereof.

**BUYER(s) INITIALS:** _FE_ / _____ / _____ / _____    **SELLER(s) INITIALS:** _____ / _____ / _____

04/10/26 11:06 AM PDT dotloop verified

B.  **IF SELLER DEFAULTS:** If Seller defaults in performance under this Agreement, Buyer reserves all legal and/or equitable rights (such as specific performance) against Seller, and Buyer may seek to recover Buyer's actual damages incurred by Buyer due to Seller's default.

C.  **IF BUYER DEFAULTS:** If Buyer defaults in performance under this Agreement, as Seller's sole legal recourse, Seller may retain, as liquidated damages, the EMD. In this respect, the Parties agree that Seller's actual damages would be difficult to measure and that the EMD is in fact a reasonable estimate of the damages that Seller would suffer as a result of Buyer's default.  Seller understands that any additional deposit not considered part of the EMD in Section 1(B) herein will be immediately released by ESCROW HOLDER to Buyer.

## Instructions to Escrow

20.  **ESCROW:** If this Agreement or any matter relating hereto shall become the subject of any litigation or controversy, Buyer and Seller agree, jointly and severally, to hold ESCROW HOLDER free and harmless from any loss or expense, except losses or expenses as may arise from ESCROW HOLDER'S negligence or willful misconduct.  If conflicting demands are made or notices served upon ESCROW HOLDER with respect to this Agreement, the parties expressly agree that Escrow is entitled to file a suit in interpleader and obtain an order from the Court authorizing ESCROW HOLDER to deposit all such documents and monies with the Court and obtain an order from the Court requiring the parties to interplead and litigate their several claims and rights among themselves.  Upon the entry of an order authorizing such Interpleader, ESCROW HOLDER shall be fully released and discharged from any obligations imposed upon it by this Agreement; and ESCROW HOLDER shall not be liable for the sufficiency or correctness as to form, manner, execution or validity of any instrument deposited with it, nor as to the identity, authority or rights of any person executing such instrument, nor for failure of Buyer or Seller to comply with any of the provisions of any agreement, contract or other instrument filed with ESCROW HOLDER or referred to herein.  ESCROW HOLDER'S duties hereunder shall be limited to the safekeeping of all monies, instruments or other documents received by it as ESCROW HOLDER, and for their disposition in accordance with the terms of this Agreement.  In the event an action is instituted in connection with this escrow, in which ESCROW HOLDER is named as a party or is otherwise compelled to make an appearance, all costs, expenses, attorney fees, and judgments ESCROW HOLDER may expend or incur in said action, shall be the responsibility of the parties hereto.

21.  **UNCLAIMED FUNDS:**  In the event that funds from this transaction remain in an account, held by ESCROW HOLDER, for such a period of time that they are deemed "abandoned" under the provisions of Chapter 120A of the Nevada Revised Statutes, ESCROW HOLDER is hereby authorized to impose a charge upon the dormant escrow account. Said charge shall be no less than $5.00 per month and may not exceed the highest rate of charge permitted by statute or regulation.  ESCROW HOLDER is further authorized and directed to deduct the charge from the dormant escrow account for as long as the funds are held by ESCROW HOLDER.

## Brokers

22.  **BROKER'S COMPENSATION/FEES:** Buyer herein requires, and Seller agrees, as a condition of this Agreement per Section 2, that Seller will pay Listing Broker and Buyer's Broker, who becomes by this clause a third-party beneficiary to this Agreement, that certain sum and/or percentage of the Purchase Price (commission), that Seller, or Seller's Broker, offered for the procurement of ready, willing and able Buyer per this Residential Purchase Agreement. Seller understands and agrees that if Seller defaults hereunder, Buyer's Broker, as a third-party beneficiary of this Agreement, has the right to pursue all legal recourse against Seller for any commission due. In addition to any amount due to Buyer's Broker from Seller or Seller's Broker, Buyer ☐ will –OR– ☐ will not pay Buyer's Broker additional compensation in an amount determined between the Buyer and Buyer's Broker.

23.  **HOLD HARMLESS AND WAIVER OF CLAIMS:** Buyer and Seller agree that they are not relying upon any representations made by Brokers or Broker's agent. Buyer acknowledges that at COE, the Property will be sold AS-IS, WHERE-IS without any representations or warranties, unless expressly stated herein.  Buyer agrees to satisfy himself/herself, as to the condition of the Property, prior to COE. Buyer acknowledges that any statements of acreage or square footage by Brokers are simply estimates, and Buyer agrees to make such measurements, as Buyer deems

**Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name(s): _____ **Feras Elias** _____   BUYER(S) INITIALS: _FE_ / _____ / _____ / _____

Property Address: _____ **2519 N 5th** _____ **ST** _____  SELLER(S) INITIALS _____ / _____ / _____

Residential Purchase Agreement Rev. 10/25                ©2025 Greater Las Vegas 04/10/26 11:06 AM PDT dotloop verified of REALTORS®

Page 7 of 11

dotloop signature verification: dtlp.us/huAW-O64U-UchK
Authentisign ID: 7105A55A-8E34-F111-8EF2-000D3A55CAFE

necessary, to ascertain actual acreage or square footage. Buyer waives all claims against Brokers or their agents for (a) defects in the Property; (b) inaccurate estimates of acreage or square footage; (c) environmental waste or hazards on the Property; (d) the fact that the Property may be in a flood zone; (e) the Property's proximity to freeways, airports or other nuisances; (f) the zoning of the Property; (g) tax consequences; or (h) factors related to Buyer's failure to conduct walk-throughs or inspections. Buyer assumes full responsibility for the foregoing and agrees to conduct such tests, walk-throughs, inspections and research, as Buyer deems necessary. In any event, Broker's liability is limited, under any and all circumstances, to the amount of that Broker's commission/fee received in this transaction.

## Other Matters

24. **DEFINITIONS:** **"Acceptance"** means the date that both parties have consented to a final, binding contract by affixing their signatures to this Agreement and all counteroffers and said Agreement and all counteroffers have been delivered to both parties pursuant to Section 25 herein. **"Agent"** means a licensee working under a Broker or licensees working under a developer. **"Agreement"** includes this document as well as all accepted counteroffers and addenda. **"Appraisal"** means a written appraisal or Notice of Value as required by any lending institution prepared by a licensed or certified professional. **"Bona Fide"** means genuine. **"Buyer"** means one or more individuals or the entity that intends to purchase the Property. **"Broker"** means the Nevada licensed real estate broker listed herein representing Seller and/or Buyer (and all real estate agents associated therewith). **"Business Day"** excludes Saturdays, Sundays, and legal holidays. **"Calendar Day"** means a calendar day from/to midnight unless otherwise specified. **"CFR"** means the Code of Federal Regulations. **"CIC"** means Common Interest Community (formerly known as "HOA" or homeowners' associations). **"CIC Capital Contribution"** means a one-time non-administrative fee, cost or assessment charged by the CIC upon change of ownership. "CIC Transfer Fees" means the administrative service fee charged by a CIC to transfer ownership records. **"Close of Escrow (COE)"** means the time of recordation of the deed in Buyer's name. **"Default"** means the failure of a Party to observe or perform any of its material obligations under this Agreement. **"Delivered"** means personally delivered to Parties or respective Agents, transmitted by facsimile machine, electronic means, overnight delivery, or mailed by regular mail. **"Down Payment"** is the Purchase Price less loan amount(s). **"EMD"** means Buyer's earnest money deposit. **"Escrow Holder"** means the neutral party that will handle the closing. **"FHA"** is the U.S. Federal Housing Administration. **"ECR"** means the Elko County REALTORS®. **"Good Funds"** means an acceptable form of payment determined by ESCROW HOLDER in accordance with NRS 645A.171. **"IRC"** means the Internal Revenue Code (tax code). **"LID"** means Limited Improvement District. **"N/A"** means not applicable. **"NAC"** means Nevada Administrative Code. "NRS" means Nevada Revised Statues as Amended. **"Party"** or **"Parties"** means Buyer and Seller. **"PITI"** means principal, interest, taxes, and hazard insurance. **"PMI"** means private mortgage insurance. **"PST"** means Pacific Standard Time and includes daylight savings time if in effect on the date specified. **"PTR"** means Preliminary Title Report. **"Property"** means the real property and any personal property included in the sale as provided herein. **"Receipt"** means delivery to the party or the party's agent. **"RPA"** means Residential Purchase Agreement. **"Seller"** means one or more individuals or the entity that is the owner of the Property. **"SID"** means Special Improvement District. **"Title Company"** means the company that will provide title insurance. **"USC"** is the United States Code. **"VA"** is the Veterans Administration.

25. **SIGNATURES, DELIVERY, AND NOTICES:**

    A. This Agreement may be signed by the parties on more than one copy, which, when taken together, each signed copy shall be read as one complete form. This Agreement (and documents related to any resulting transaction) may be signed by the parties manually or digitally. Facsimile signatures may be accepted as original.

    B. When a Party wishes to provide notice as required in this Agreement, such notice shall be sent regular mail, personal delivery, overnight delivery, by facsimile, and/or by electronic transmission to the Agent for that Party. The notification shall be effective when postmarked, received, faxed, delivery confirmed, and/or read receipt confirmed in the case of email. Delivery of all instruments or documents associated with this Agreement shall be delivered to the Agent for Seller or Buyer if represented. Any cancellation notice shall be contemporaneously delivered to Escrow in the same manner.

26. **IRC 1031 EXCHANGE:** Seller and/or Buyer may make this transaction part of an IRC 1031 exchange. The party electing to make this transaction part of an IRC 1031 exchange will pay all additional expenses associated therewith, at no cost to the other party. The other party agrees to execute any and all documents necessary to effectuate such an exchange.

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name(s): _____**Feras Elias**_____ BUYER(S) INITIALS: ___**FE**__ / _____ / _____

Property Address: _____**2519 N 5th**_____ **ST** SELLER(S) INITIALS ___**JF**__ / _____ / _____

Residential Purchase Agreement Rev. 10/25

©2025 Greater Las Vegas Association of REALTORS®

04/10/26
dotloop verified

Page 8 of 11

dotloop signature verification: dtlp.us/huAW-O64U-NchK
Authentisign ID: 7105A55A-8E34-F111-8EF2-000D3A55CAFE

**27. HUD/VA/FHA ESCAPE CLAUSE:** "It is expressly agreed that, notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or incur any penalty by forfeiture of earnest money or otherwise unless the purchaser has been given, in accordance with HUD/FHA or VA requirements, a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the property of not less that the agreed upon contract purchase price. The purchaser shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure or percent the Department of Veterans Affairs will guarantee. HUD/FHA or VA does not warrant the value or condition of the property. The purchaser should satisfy himself/herself that the price and condition of the property are acceptable.

**28. OTHER ESSENTIAL TERMS:** Time is of the essence emphasizes the punctual performance of each and every essential requirement of the Agreement. It is important for all parties to meet the deadlines and complete their obligations on time. No change, modification or amendment of this Agreement shall be valid or binding unless such change, modification or amendment shall be in writing and signed by each party. This Agreement will be binding upon the heirs, beneficiaries and devisees of the parties hereto. This Agreement is executed and intended to be performed in the State of Nevada, and the laws of that state shall govern its interpretation and effect. The parties agree that the county and state in which the Property is located is the appropriate forum for any action relating to this Agreement. Should any party hereto retain counsel for the purpose of initiating litigation to enforce or prevent the breach of any provision hereof, or for any other judicial remedy, then the prevailing party shall be entitled to be reimbursed by the losing party for all costs and expenses incurred thereby, including, but not limited to, reasonable attorney's fees and costs incurred by such prevailing party.

**THIS IS A LEGALLY BINDING CONTRACT. All parties are advised to seek independent legal and tax advice to review the terms of this Agreement.**

**THIS FORM HAS BEEN APPROVED BY THE ELKO COUNTY REALTORS® (ECR).**
**NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

**29. ADDENDUM/ADDENDA ATTACHED:** _____

**30. ADDITIONAL TERMS:**

Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name(s): _____ **Feras Elias** _____ BUYER(S) INITIALS: _____/_____/_____

Property Address: _____ **2519 N 5th** _____ **ST** ___SELLER(S) INITIALS _____/_____/_____

Residential Purchase Agreement Rev. 10/25                    ©2025 Greater Las Vegas Association of REALTORS®

dotloop verified
04/10/26

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 https://www.lwolf.com

dotloop signature verification: dtlp.us/huAW-O64U-NchK
Authentisign ID: 7105A55A-8E34-F111-8EF2-000D3A55CAFE

## Buyer's Acknowledgement of Offer

**Confirmation of Representation:** The Buyer is represented in this transaction by:

Buyer's Broker: **Christina Pemelton**       Agent's Name: **Shecky Overholser**

Company Name: **Elko Realty**       Agent's License Number: **S52371**

Broker's License Number: **B.0146152.LLC**       Office Address: **1085 Idaho ST**

Phone: **7757773556**       City, State, Zip: **Elko       NV    89801**

Fax: _____       Email: **shecky@elkorealtyllc.com**

**BUYER LICENSEE DISCLOSURE OF INTEREST:** Pursuant to NRS 645.252(1)(c), a real estate licensee must disclose if he/she is a principal in a transaction or has an interest in a principal to the transaction. Licensee declares that he/she:
☒ **DOES NOT** have an interest in a principal to the transaction. **–OR–** ☐ **DOES** have the following interest, direct or indirect, in this transaction: ☐ Principal (Buyer) **–OR–** ☐ family or firm relationship with Buyer or ownership interest in Buyer (if Buyer is an entity): (specify relationship) _____
_____ .

**Seller must respond by:** ___**12**___ (☐ AM ☒ PM) on (month) ___**April**___, (day) _**12**_, (year) **2026**___. **Unless this Agreement is accepted, rejected or countered below and delivered to the Buyer's Broker before the above date and time, this offer shall lapse and be of no further force and effect. Following the date of Acceptance, Buyer agrees to be bound by each provision of this Agreement, and all signed addenda, disclosures, and attachments.**

*Feras Elias*       **Faras Elias**       04/10/2026    10:52 AM CDT  :___ ◉AM ◉PM

Buyer's Signature       Buyer's Printed Name       Date       Time

_____       _____       _____   ___:___ ☐ AM ☐ PM

Buyer's Signature       Buyer's Printed Name       Date       Time

_____       _____       _____   ___:___ ☐ AM ☐ PM

Buyer's Signature       Buyer's Printed Name       Date       Time

_____       _____       _____   ___:___ ☐ AM ☐ PM

Buyer's Signature       Buyer's Printed Name       Date       Time

**Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name(s): **Feras Elias**       BUYER(S) INITIALS: *FE* ___/ ___/ ___

Property Address: **2519 N 5th       ST**       SELLER(S) INITIALS: [signature] ___/ ___/ ___

Residential Purchase Agreement Rev. 10/25       ©2025 Greater Las Vegas ~~~~~~~~~ of REALTORS®
04/10/26
dotloop verified       Page 10 of 11

dotloop signature verification: dtlp.us/huAW-O64U-HchK
Authentisign ID: 7105A55A-8E34-F111-8EF2-000D3A55CAFE

---

# Seller's Response

**Confirmation of Representation**: The Seller is represented in this transaction by:

Seller's Broker: _____Jen McDonald_____     Agent's Name: _____Jennifer Welch_____

Company Name: _____LPT Realty, LLC_____     Agent's License Number: _____S.0203284_____

Broker's License Number: _____B.3279_____     Office Address: _____1755 E Plumb Lane #251_____

Phone: _____     City, State, Zip: _____Reno         NV_____

Fax: _____     Email: _____kconelko@gmail.com_____

**SELLER LICENSEE DISCLOSURE OF INTEREST**: Pursuant to NRS 645.252(1)(c), a real estate licensee must disclose if he/she is a principal in a transaction or has an interest in a principal to the transaction. Licensee declares that he/she: ☐ **DOES NOT** have an interest in a principal to the transaction. –OR– ☑ **DOES** have the following interest, direct or indirect, in this transaction: ☐ Principal (Seller) –OR– ☑ family or firm relationship with Seller or ownership interest in Seller (if Seller is an entity): (specify relationship)_____Girlfriend_____.

☐ **FIRPTA:** If applicable (as designated in the Seller's Response herein), Seller agrees to complete, sign, and deliver to Buyer's FIRPTA Designee a certificate indicating whether Seller is a foreign person or a nonresident alien pursuant to the Foreign Investment in Real Property Tax Act (FIRPTA). A foreign person is a nonresident alien individual; a foreign corporation not treated as a domestic corporation; or a foreign partnership, trust or estate.  A resident alien is not considered a foreign person under FIRPTA. Additional information for determining status may be found at www.irs.gov. Buyer and Seller understand that if Seller is a foreign person, then the Buyer must withhold a tax in an amount to be determined by Buyer's FIRPTA Designee in accordance with FIRPTA, unless an exemption applies. Seller agrees to sign and deliver to the Buyer's FIRPTA Designee the necessary documents, to be provided by the Buyer's FIRPTA Designee, to determine if withholding is required. (See 26 USC Section 1445).

SELLER DECLARES that he/she ☑ [ _LF_ ] **OR**– ☐ is a foreign person therefore subjecting this transaction to FIRPTA withholding. **SELLER(S) INITIALS:** / _____ / _____ / _____

04/10/26
11:06 AM PDT
dotloop verified

☐ **ACCEPTANCE:** Seller(s) acknowledges that he/she accepts and agrees to be bound by each provision of this Agreement, and all signed addenda, disclosures, and attachments.

☑ **COUNTER OFFER:** Seller accepts the terms of this Agreement subject to the attached Counter Offer #1.

☐**REJECTION:** In accordance with NAC 645.632, Seller hereby informs Buyer the offer presented herein **is not** accepted.

_Luke Fitzgerald, President of Koinonia Construction Inc_     dotloop verified
04/10/26 11:06 AM PDT
SCUV-JU0O-HQOM-DKWJ
_____ _____ ____:____ ☐ AM ☐ PM
Seller's Signature          Seller's Printed Name          Date          Time

_____     _____     _____     ____:____ ☐ AM ☐ PM
Seller's Signature          Seller's Printed Name          Date          Time

_____     _____     _____     ____:____ ☐ AM ☐ PM
Seller's Signature          Seller's Printed Name          Date          Time

_____     _____     _____     ____:____ ☐ AM ☐ PM
Seller's Signature          Seller's Printed Name          Date          Time

**Each party acknowledges that he/she has read, understood, and agrees, to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name(s): _____Feras Elias_____     BUYER(S) INITIALS: [ _FE_ ] ____ / ____ / ____

Property Address: _____2519 N 5th          ST_____     SELLER(S) INITIALS: [ _LF_ ] ____ / ____ / ____
04/10/26
11:06 AM PDT
dotloop verified

Residential Purchase Agreement Rev. 10/25     ©2025 Greater Las Vegas Association of REALTORS®

Produced with Lone Wolf Transact 717 N Harwood St, Suite 2200, Dallas, TX 75201 https://www.lwolf.com

dotloop signature verification: dtlp.us/4SEI-H46j-YnHU



# COUNTER OFFER #1



SELLER submits this Counter Offer #1 to the Offer and Acceptance Agreement dated 04/08/2026 , regarding the property

Located at 2519 N 5th St, Elko, NV 89801 ,

between Luke Fitzgerald, President of Koinonia Construction Inc. (SELLER)

and Feras Elias (BUYER),

which is being attached this date 04/10/2026 by SELLER and becomes effective when signed by all parties.

Purchase price to be $340,000.

Seller to pay $5000 towards buyer's closing costs and fees.

**OTHER TERMS:** All other terms to remain the same.

**RIGHT TO ACCEPT OTHER OFFERS:** SELLER reserves the right to accept any other offer prior to BUYER's written acceptance of Counter Offer #1. Acceptance shall not be effective until a copy of this Counter Offer #1, dated and signed by BUYER, is received by SELLER and/or .

**EXPIRATION:** This offer shall expire unless a copy with BUYERS's written acceptance is delivered to SELLER or SELLER's Broker or Licensee on or before 6:00 o'clock ☐ AM ☑ PM, on 04/11/2026 .

SELLER: *Luke Fitzgerald, President of Koinonia Construction Inc* 
dotloop verified
04/10/26 11:06 AM PDT
RG9Q-TZOL-EHJE-5EBG    Dated: ___ Time: ___

SELLER: ___ Dated: ___ Time: ___

SELLER: ___ Dated: ___ Time: ___

SELLER: ___ Dated: ___ Time: ___

## BUYER'S ACCEPTANCE, COUNTER, OR REJECTION

☑ **Acceptance of Counter Offer #1:** BUYER accepts this Counter Offer #1.

☐ **Counter Offer #2:** BUYER signs this Counter Offer #1 subject to Counter Offer #2 dated .

☐ **Rejection:** BUYER rejects Counter Offer #1.

BUYER: [signature] 3709e.
04/10/26 12:05 PM PDT    Dated: Apr 10, 2026 12:04 PM PDT Time: ___

BUYER: ___ Dated: ___ Time: ___

BUYER: ___ Dated: ___ Time: ___

BUYER: ___ Dated: ___ Time: ___

This copyright protected form was created by and for the use of the members of SNR.

SNR© 01/23
CO1 1/1

Package ID: 08E1489F65A578DD85946B4612AF2494

# EXHIBIT "J"

| Landmark Title Assurance Agency of Nevada | ALTA Seller's Estimated Settlement Statement |
|---|---|
| ALTA Universal ID: | |
| 455 8th Street | |
| Elko, NV 89801 | |
| (775) 302-8955 | |

| File #: | 26-2127-BRK | Property | 2519 N. 5th st | Settlement Date | 05/15/2026 |
|---|---|---|---|---|---|
| Print Date & Time: | 05/01/2026 at 11:53 AM PDT | | Elko, NV 89801 | Disbursement Date | 05/15/2026 |
| | | Buyer | Feras Elias | | |
| Escrow Officer: | Breanna R Keil | Seller | Koinonia Construction Inc. | | |
| Settlement Location: | 455 8th Street Elko, NV, 89801 | Lender | iServe Residential Lending, LLC 10815 Rancho Bernardo Road 230 San Diego, CA 92127 | | |

| Description | Seller | |
|---|---|---|
| | Debit | Credit |
| **Financial** | | |
| Sale Price of Property | | $340,000.00 |
| Seller Credit | $5,000.00 | |
| | | |
| **Prorations/Adjustments** | | |
| County Taxes 05/15/2026 to 07/01/2026 | | $63.79 |
| | | |
| **Payoff(s)** | | |
| Payoff to FCI Lender Services | $281,829.70 | |
| Principal : $258,955.97 | | |
| | | |
| **Government Recording and Transfer Charges** | | |
| County Transfer Tax (Deed) to Elko County Recording Office | $1,326.00 | |
| | | |
| **Commission** | | |
| Listing Agent Commission to LPT Realty | $10,200.00 | |
| Selling Agent Commission to Elko Realty | $10,200.00 | |
| | | |
| **Title Charges & Escrow / Settlement Charges** | | |
| Title - Courier Fee to Landmark Title Assurance Agency of Nevada | $30.00 | |
| Title - Settlement or Closing Fee to Landmark Title Assurance Agency of Nevada | $820.00 | |
| Title-Courier Fee to Landmark Title Assurance Agency of Nevada | $30.00 | |
| Title-Notary Fee to IF NEEDED | $200.00 | |
| Title - Owner's Title Policy to First National Title Insurance Company | $1,290.00 | |
| | | |
| **Miscellaneous** | | |
| 2025/2026 passed due taxes to Elko County Treasurer | $571.77 | |
| | Debit | Credit |
| Subtotals | $311,497.47 | $340,063.79 |
| Due to Seller | $28,566.32 | |
| Totals | $340,063.79 | $340,063.79 |

**Acknowledgement**

This is an estimate only and subject to change.

We/I have carefully reviewed the Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the Settlement Statement.

We/I authorize Landmark Title Assurance Agency of Nevada to cause the funds to be disbursed in accordance with this statement.

Koinonia Construction Inc., a Nevada Corporation

By: _____

Luke Fitzgerald, President                                      Date

_____

Settlement Agent                                                    Date

# EXHIBIT "K"



## ALTA COMMITMENT FOR TITLE INSURANCE
### issued by
## FIRST NATIONAL TITLE INSURANCE COMPANY

### NOTICE

**IMPORTANT – READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

### COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I – Requirements; Schedule B, Part II – Exceptions; and the Commitment Conditions, First National Title Insurance Company, a(n) Texas corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Amount of Insurance and the name of the Proposed Insured.

If all of the Schedule B, Part I – Requirements have not been met within 180 days after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

### COMMITMENT CONDITIONS

1. DEFINITIONS
   a. "Discriminatory Covenant": Any covenant, condition, restriction, or limitation that is unenforceable under applicable law because it illegally discriminates against a class of individuals based on personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or other legally protected class.
   b. "Knowledge" or "Known": Actual knowledge or actual notice, but not constructive notice imparted by the Public Records.
   c. "Land": The land described in Item 5 of Schedule A and improvements located on that land that by State law constitute real property. The term "Land" does not include any property beyond that described in Schedule A, nor any right, title, interest, estate, or easement in any abutting street, road, avenue, alley, lane, right-of-way, body of water, or waterway, but does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
   d. "Mortgage": A mortgage, deed of trust, trust deed, security deed, or other real property security instrument, including one evidenced by electronic means authorized by law.
   e. "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
   f. "Proposed Amount of Insurance": Each dollar amount specified in Schedule A as the Proposed Amount of Insurance of each Policy to be issued pursuant to this Commitment.
   g. "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

h. "Public Records": The recording or filing system established under State statutes in effect at the Commitment Date under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge. The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters.

i. "State": The state or commonwealth of the United States within whose exterior boundaries the Land is located. The term "State" also includes the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and Guam.

j. "Title": The estate or interest in the Land identified in Item 3 of Schedule A.

2. If all of the Schedule B, Part I – Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   a. the Notice;
   b. the Commitment to Issue Policy;
   c. the Commitment Conditions;
   d. Schedule A;
   e. Schedule B, Part I – Requirements;
   f. Schedule B, Part II – Exceptions; and
   g. a counter-signature by the Company or its issuing agent that may be in electronic form.

4. COMPANY'S RIGHT TO AMEND
   The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company is not liable for any other amendment to this Commitment.

5. LIMITATIONS OF LIABILITY
   a. The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
      i. comply with the Schedule B, Part I – Requirements;
      ii. eliminate, with the Company's written consent, any Schedule B, Part II – Exceptions; or
      iii. acquire the Title or create the Mortgage covered by this Commitment.
   b. The Company is not liable under Commitment Condition 5.a. if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.
   c. The Company is only liable under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.
   d. The Company's liability does not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Condition 5.a. or the Proposed Amount of Insurance.
   e. The Company is not liable for the content of the Transaction Identification Data, if any.
   f. The Company is not obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I – Requirements have been met to the satisfaction of the Company.
   g. The Company's liability is further limited by the terms and provisions of the Policy to be issued to the Proposed Insured.

6. LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT; CHOICE OF LAW AND CHOICE OF FORUM
   a. Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



b.   Any claim must be based in contract under the State law of the State where the Land is located and is restricted to the terms and provisions of this Commitment. Any litigation or other proceeding brought by the Proposed Insured against the Company must be filed only in a State or federal court having jurisdiction.

c.   This Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

d.   The deletion or modification of any Schedule B, Part II – Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

e.   Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

f.   When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

7.   IF THIS COMMITMENT IS ISSUED BY AN ISSUING AGENT
The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for closing, settlement, escrow, or any other purpose.

8.   PRO-FORMA POLICY
The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

9.   CLAIMS PROCEDURES
This Commitment incorporates by reference all Conditions for making a claim in the Policy to be issued to the Proposed Insured. Commitment Condition 9 does not modify the limitations of liability in Commitment Conditions 5 and 6.

10.   CLASS ACTION
ALL CLAIMS AND DISPUTES ARISING OUT OF OR RELATING TO THIS COMMITMENT, INCLUDING ANY SERVICE OR OTHER MATTER IN CONNECTION WITH ISSUING THIS COMMITMENT, ANY BREACH OF A COMMITMENT PROVISION, OR ANY OTHER CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THE TRANSACTION GIVING RISE TO THIS COMMITMENT, MUST BE BROUGHT IN AN INDIVIDUAL CAPACITY. NO PARTY MAY SERVE AS PLAINTIFF, CLASS MEMBER, OR PARTICIPANT IN ANY CLASS OR REPRESENTATIVE PROCEEDING. ANY POLICY ISSUED PURSUANT TO THIS COMMITMENT WILL CONTAIN A CLASS ACTION CONDITION.

11.   ARBITRATION
The Policy contains an arbitration clause. All arbitrable matters when the Proposed Amount of Insurance is $2,000,000 or less may be arbitrated at the election of either the Company or the Proposed Insured as the exclusive remedy of the parties. A Proposed Insured may review a copy of the arbitration rules at http://www.alta.org/arbitration.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

**FIRST NATIONAL TITLE INSURANCE COMPANY**
2400 Dallas Parkway Ste. 200, Plano, TX 75093

By:_____
President

By:_____
Treasurer

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

**Transaction Identification Data, for which the Company assumes no liability as set forth in Commitment Condition 5.e.:**
Issuing Agent: Landmark Title Assurance Agency of Nevada
Issuing Office: 455 8th Street
         Elko, NV 89801
Issuing Office's ALTA® Registry ID:
Loan ID Number:
Commitment Number: 26-1915-BRK
Issuing Office File Number: 26-1915-BRK
Property Address: 2511 N. 5th St, Elko, NV 89801
Revision Number:

## SCHEDULE A

1.    Commitment Date: March 26, 2026 at 8:00 AM

2.    Policy to be issued:

    (a)    2021 ALTA Owner's Policy
        Proposed Insured:         **Luna Caballero**
        Proposed Amount of Insurance:  **$340,000.00**
        The estate or interest to be insured:  **fee simple**

    (b)    2021 ALTA Loan Policy
        Proposed Insured:
        Proposed Amount of Insurance:  **$306,000.00**
        The estate or interest to be insured:  **fee simple**

3.    The estate or interest in the Land at the Commitment Date is:
    fee simple

4.    The Title is, at the Commitment Date, vested in:
    Koinonia Construction Inc, a Nevada Corporation

5.    The land is described as follows:
    The land is described as set forth in Exhibit A attached hereto and made a part hereof.

**LANDMARK TITLE ASSURANCE AGENCY OF NEVADA**
455 8th Street, Elko, NV 89801
Telephone: (775) 302-8955

**FIRST NATIONAL TITLE INSURANCE COMPANY**
2400 Dallas Parkway Ste. 200, Plano, TX 75093

Countersigned by:



By:_____
President

_____
Brant Remaley
Landmark Title Assurance Agency of Nevada,
License #

By:_____
Treasurer

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

## SCHEDULE B, PART I – Requirements

All of the following Requirements must be met:

1.  Pay the premiums, fees, and charges for the Policy to the Company.

2.  Pay the agreed amount for the estate or interest to be insured.

3.  The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

4.  Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5.  NOTICE: Due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale or marijuana, the Company is not able to
    close or insure any transaction involving Land that is associated with these activities.

6.  As a condition to the issuance of the requested Policy(ies) of Title Insurance, we hereby request that we be furnished with a fully completed and executed Owners Affidavit.

7.  REQUIREMENT - PAYMENT IN FULL OF THE FOLLOWING:

    Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:
    Amount:          $262,500.00
    Dated:           March 21, 2025
    Trustor:             Koinonia Construction, Inc.
    Trustee:         Landmark Title Assurance Agency of Nevada
    Beneficiary:         Sound Capital Passive Income Fund, LLC a Delaware limited liability company
    Recorded:        March 25, 2025
    Instrument No.: 847761 , Official Records.

    The beneficial interest under above referenced Deed of Trust was assigned numerous times, the last of which was to:
    Assignee: Athene Annuity and Life Company
    Recorded  June 17, 2025, as Instrument No. 850836 , Official Records

8.  REQUIREMENT - RELEASE OF THE FOLLOWING:

    Notice of Lis Pendens and any claims or rights that may be reflected by, or judgments or others orders rendered pursuant to, the Notice or suit:
    Case No.         : DC-FM-25-126
    Court            : Elko County Judicial District
    Plaintiff        : Luke Fitzgerald
    Defendent        : Lisa Jane Turner
    Recorded         : May 16, 2025
    Instrument No. : 849628 , Official Records.

9.  At the date of this report, the Company is not aware of any matters which would cause it to decline to attach an ALTA 9.10-06 (Reservations, Encroachments, Minerals - Current Violations Endorsement), an ALTA 22-06

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

(Location Endorsement) indicating that this is a Single Family Residence - Townhouse known as 2511 N 5th St, Spring Creek, NV , and a ALTA 8.1-06 (Environmental Protection Loan Endorsement) to any ALTA Extended Loan Policy.

10. There have been NO CONVEYANCES within the 24 months preceding this report except:
    <u>Vesting Deed</u>

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

## SCHEDULE B, PART II – Exceptions

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage.**

The Policy will not insure against loss or damage resulting from the terms and conditions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1.  Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I—Requirements are met.

2.  Taxes or assessments which are not now payable or which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

3.  Any facts, rights, interests, or claims that are not shown by the Public Record, but that could be ascertained by an inspection of the land or that may be ascertained by persons in possession of the Land

4.  Easements, liens or encumbrances or claims thereof, not shown by the Public Records.

5.  Any encroachment, encumbrance, violation, variation or adverse circumstance affecting the title that would be disclosed by an accurate and complete survey of the Land and not shown by the Public Records.

6.  Any lien or right to lien for services, labor or material not shown by the Public Records.

7.  (a) Unpatented mining claims, (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records, (d) Indian tribal codes or regulations, Indian Treaty or Aboriginal Rights, including easements or equitable servitudes.

8.  Rights or claims of parties in possession not recorded in the public records.

9.  State, County and City Taxes for the fiscal period 2025 to 2026, a lien now due and payable in the total amount of $495.42
    PARCEL NO.: 001-61M-023  TAX DISTRICT: 11.0 LOCATION: Elko
    1st installment of $124.20 unpaid, delinquent
    2nd installment of $123.74 unpaid, delinquent
    3rd installment of $123.74 unpaid, delinquent
    4th installment of $123.74 unpaid, delinquent

    In addition to the amounts shown above, Penalties in the amount of $76.35 are due and payable.

10. Any possible additional tax assessment and any penalties and interest, because of construction and improvements.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.


AMERICAN
LAND TITLE
ASSOCIATION

11. The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 361.260 of the Nevada Revised Statutes.

12. The herein described property lies within the boundaries of the City of Elko and is subject to any and all fees that may be due said District/City.

13. Mineral Rights, Reservations, easements and exclusions in the patent from the United States of America and/ or the State of Nevada.

14. Easements, rights of way, dedications and other matters as indicated or delineated on the Parcel Map 19177 recorded October 30, 1997 as File No. 416535  Official Records. (See map for full particulars)

15. Easements, rights of way, dedications and other matters as indicated or delineated on the Bounty Line Adjustment Record of Survey #3500, recorded February 25, 2020 as File No. 765673 , Official Records. (See map for full particulars)

16. Easement, rights of way, terms and provisions as set forth in instrument:
In Favor of        : City of Elko
For                    : Slope Easement
Recorded          : May 28, 2020
Instrument No. :  769073 , Official Records.

17. Easement, rights of way, terms and provisions as set forth in instrument:
In Favor of        : City of Elko
For                    : Slope Easement
Recorded          : August 7, 2020
Instrument No. :  772192 , Official Records.

18. Easements, rights of way, dedications and other matters as indicated or delineated on the plat of said subdivision recorded March 15, 2023 as File No. 817169 , Official Records. (See map for full particulars)

19. Terms, Covenants, Conditions, Restrictions, Easements and Provisions in that certain instrument entitled Conditional Use Permit, recorded July 6, 2023, as Instrument No. 821333 , Official Records.

20. Terms, Covenants, Conditions, Restrictions, Easements and Provisions in that certain instrument entitled City of Elko Resolution No. 03-20 - A Resolution of the Elko City Council Adopting a Change in Zoning District Boundaries, recorded October 19, 2023, as Instrument No. 827859 , Official Records.

21. Terms, provisions, covenants, conditions, restrictions, easements, charges, assessments and liens provided in the Covenants, Conditions and Restrictions recorded October 30. 2023,  as Instrument Number 828252 ,  Official Records, but omitting any covenant, condition or restriction, if any, based on race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that the covenant, condition or restriction (a) is exempt under Title 42 of the United States Code, or (b) relates to handicap, but does not discriminate against handicapped persons.

RIGHT TO LEVY ASSESSMENTS: The right to levy certain charges or assessments against said land which shall become a lien if not paid as set forth in the above Declaration of Restrictions is conferred upon Mountain View Townhomes Association.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION


22. Easement, rights of way, terms and provisions as set forth in instrument:
    In Favor of       : Southwest Gas Corporation
    For                : Gas pipelines
    Recorded          :  July 31, 2024
    Instrument No. :   839387 , Official Records.

23. Easements, rights of way, dedications and other matters as indicated or delineated on the plat of said subdivision recorded August 6, 2024 as Document No. 839624 , Official Records. (See map for full particulars)

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



American Land Title Association

Commitment for Title Insurance<br>2021 v. 01.00 (07-01-2021)

## EXHIBIT "A"

The Land referred to herein below is situated in the County of Elko, State of Nevada and is described as follows:

Lot 22 Mountain View Town Homes Unit No. 2 filed in the Office of the County Recorder of Elko County, State of Nevada, on August 6, 2024, as File No. 839624, being a portion of Section 9, Township 34 North, Range 55 East, M.D.B.&M.

APN: 001-61M-023

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



# EXHIBIT "L"

 **EXCLUSIVE AGENCY LISTING AGREEMENT (EA)**

EQUAL HOUSING
OPPORTUNITY

**This is intended to be a legally binding contract. No Representation is made as to the legal or tax consequences of this contract. If you desire legal or tax advice, consult your attorney or tax advisor.**

**1. EXCLUSIVE RIGHT TO SELL:**

I/We, Koinonia Construction Inc. ("Seller") hereby employs and grants LPT Realty, LLC (Company Name, herein after "Broker") the exclusive and irrevocable right, commencing on 03/22/2026, and expires at 11:59 p.m. Pacific Time on 03/22/2027, to sell, lease or exchange the Real Property located in the City of Elko, County of Elko, Nevada, APN#:001-61M-025 commonly known as: 2519 N 5th St ("the Property").

**2. TERMS OF SALE:** The listing price shall be $ 340000, with a suggested amount of an Earnest Money Deposit (EMD) of $ 3400.

Terms available: ☑Cash  ☑CONV  ☑FHA  ☐Lease  ☑VA  ☐Lease Option  ☐Owner Will Carry ☐Other: _____

**(Note: If the Property is offered for lease, then the term "Seller" used in this Agreement includes "Landlord" as applicable.)**

Seller ☑does -OR-☐does not authorize Broker to disclose the existence of multiple offers to purchase the property to potential buyers. **SELLER(S) INITIALS:** [ 🖊 ]/[   ]/[   ]/[   ]

Seller ☐does -OR-☑does not authorize Broker to disclose the offer(s), price and terms.
**SELLER(S) INITIALS:** [ 🖊 ]/[   ]/[   ]/[   ]

**3. PROPERTY OFFERED FOR SALE:** The listing price noted above includes the Property and all improvements and fixtures permanently affixed and installed.

    a. The following items of Personal Property are **included** in the above price and shall be conveyed unencumbered in escrow by a valid bill of sale: _____
_____
_____

    b. The following items of Personal Property are **excluded** from the above price and not included in the sale:
All of seller's personal property/staging. _____
_____

    c. This property **Does Contains** ☐ -OR- **Does Not Contain** ☑ SMART technology which powers and or automates, surveillance systems, security, environmental controls and home entertainment features but not limited to, of the home. If the property so does contain SMART Technology seller will complete a SMART Home Disclosure which is incorporated as part of this agreement and identifies the items seller intends to convey with the sale. All Attached Fixtures must convey unless identified above.

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: [ 🖊 ]/[   ]/[   ]/[   ]

Seller identifies above items as included or excluded in offering of the Property for sale. Seller understands that the purchase agreement takes precedence over any intention identified above and will ultimately determine what items are included and excluded in the sale. Seller further understands it is their responsibility to ensure the items not included in the sale are addressed in any counter offer to ensure buyers understanding of sellers intent.

d. Leased or Liened Items: The following items are leased or subject to a lien in securing payment:

☐ Solar power system    ☐ Alarm system    ☐ Propane tank    ☐ Water softener

☐ Other(s)_____

Seller will provide to Buyer, as a part of the purchase agreement, copies of lease documents, or other documents obligating Seller to pay for such leased or lien items.

**4. TITLE INSURANCE:** Seller agrees to provide Buyer with an owner's policy of title insurance in the amount of the selling price.

**5. COMPENSATION TO BROKER:** COMPENSATION/COMMISSIONS ARE NOT SET BY LAW OR BY ANY REALTOR® ASSOCIATION. THEY ARE FULLY NEGOTIABLE.  If during the Listing Term, Seller sells the property and the sale closes, or the sale fails to close due to Seller's breach of the terms of the Residential Purchase Agreement, Seller shall pay the following:

The Seller agrees to pay a commission of _____ 3%% ☐ and / or ☐ $ _____ of the final sale price to the Listing Broker upon the successful closing of the subject property. **This commission is exclusively for the Listing Broker's services and is not subject to sharing, splitting, or otherwise distributing to any Buyer's Broker or agent.** The Seller acknowledges that any commission arrangement with a Buyer's Broker, if applicable, must be covered by a separate agreement/Residential Purchase Agreement and is not covered under this Listing Agreement.

**Compensation shall be due:**

a. if Broker or any other person produces a purchaser or tenant in accordance with the terms of this Agreement or any other price and terms acceptable to Seller, or if the Property is sold or leased during the term of this Agreement, or any extension thereof, unless the Property is sold or leased solely through the efforts of the Seller or to a person who is specifically exempted under this Agreement;

b. if the Property is transferred, conveyed, leased, rented, or made unmarketable by a voluntary act of Seller without the consent of Broker, during the time period or any extension of said time period;

c. if within _____ calendar days of the final termination, including extensions, of this Agreement, the Property is sold, conveyed, or otherwise transferred to anyone with whom the Broker has had negotiations or to whom the Property was shown prior to the final termination.  This section (c) shall not apply if Seller enters into a valid Brokerage Listing Agreement with another licensed real estate Broker after the final termination of this Exclusive Brokerage Listing Agreement.

d. In the event of an exchange, permission is hereby given to the Broker to represent such parties as Broker may deem appropriate and collect compensation from them provided that there is full disclosure to all parties. If completion of sale is prevented by default of Seller, or the refusal of Seller to accept an offer in accordance with the price and terms of this Agreement, then upon event, Broker is authorized to take any action reasonably necessary to collect said commission. If completion of sale is prevented by a party to the transaction other than Seller, Broker may collect its commission only if and when Seller collects damages by suit or otherwise, and then in an amount not less than one-half of the damages recovered, but not to exceed the above compensation after first deducting title expenses, escrow expenses and the expenses of collections if any.

e. Seller hereby irrevocably assigns to Broker the funds and proceeds of Seller in escrow equal to the above compensation. In the event any sum of money due under this Agreement remains unpaid for a period of thirty (30) days, such sum shall bear interest at the rate of (-_____) percent per annum from the due date until paid.

**6. DEPOSIT:** Broker is authorized to accept on Seller's behalf a deposit to be applied toward purchase price or lease. Said deposit shall be held by: (SELECT ONE) ☐ Escrow  -OR- ☐ Broker -OR- ☑ Other Koinonia _____ .

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: [ ___ ] / [ ] / [ ] / [ ]

**7. AGENCY RELATIONSHIP:**

a. Broker warrants that he holds a current, valid Nevada real estate license. Broker shall act as the agent of the Seller and may also assign or designate a licensee of the Broker who shall act as the representative of the Seller in any resulting transaction.

b. Depending upon the circumstances, it may be necessary or appropriate for the designated licensee to act as agent for both Seller and Buyer, exchange parties, or one or more additional parties. If applicable, Broker and the designated licensee shall disclose to Seller any election to act as an agent representing more than one party and obtain the written Consent To Act Form signed by all parties to the transaction.

c. Broker may also have licensees in its company who are agents of the Buyer who may show and negotiate an offer to purchase Seller's Property. In this event, the licensees who represent the Buyer will only represent the Buyer in the transaction with all duties owed to the Buyer and not the Seller. This, therefore, does not require a Consent To Act Form.

**8. REQUIRED DISCLOSURES:**

a. Unless exempt under NRS chapter 113, Seller shall truthfully complete and sign a Seller's Real Property Disclosure Statement concerning the condition of the Property. Seller shall update the Seller's Real Property Disclosure as necessary.

b. If the Property is or has been the subject of a construction defect claim, whether litigated or not, Seller shall provide the disclosure required by NRS 40.688.

c. If the Property was built prior to 1978, Seller shall complete the Disclosure of Information on Lead-Based Paint Hazards in accordance with Federal Regulations.

d. Seller acknowledges receipt of the Residential Disclosure Guide:

**SELLER(S) INITIALS:** [ *JF* 03/27/26 7:07 PM PDT dotloop verified ] / [      ] / [      ] / [      ]

**9. INDEMNIFICATION:** Seller agrees to save, defend, and hold Broker, GLVAR, and the MLS harmless from all claims, disputes, litigation, and/or judgments arising from (i) any misrepresentation, breach of warranty or breach of a promise by Seller in this Listing Agreement (ii) any incorrect information supplied by Seller, (iii) any facts concerning the Property not disclosed by Seller, including any facts known to Seller relating to adverse conditions or latent defects, (iv) the use of a keybox, or (v) any injury or damage to persons or property in connection with the marketing or showing of the Property. This indemnification shall survive Broker's performance and any transfer of title.

**10. FAIR HOUSING:** Broker shall offer the Property for sale or lease without regard to race, color, religion, sex, national origin, age, gender identity or expression, familial status, sexual orientation, ancestry, or handicap and any other current requirements of federal or state fair housing laws.

**11. COMMON INTEREST COMMUNITY:** The Property ☑ **is** –OR– ☐ **is not** located within a Common Interest Community (CIC). If yes, please complete the following:

Name of CIC(s): Mountain View Townhome Assn.
Telephone: 775-303-8492          Dues: $100          payable ☑**monthly** -OR-☐**quarterly**
Seller ☑ **is** -OR- ☐ **is not** current on all dues and assessments.

Name of CIC(s):
Telephone:                    Dues: $                payable ☐**monthly** -OR-☐**quarterly**
Seller ☐ **is** -OR- ☐ **is not** current on all dues and assessments.

Name of CIC(s):
Telephone:                    Dues:                 payable ☐**monthly** -OR-☐**quarterly**
Seller ☐ **is** -OR- ☐ **is not** current on all dues and assessments.

If the Property is located within a CIC, Seller acknowledges and agrees to obtain (at Seller's own expense as required by NRS 116.4109) and/or provide the information required by NRS 116.4109 and 116.41095 to Broker for delivery to Buyer.

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS:  [ *JF* 03/27/26 7:07 PM PDT dotloop verified ] / [      ] / [      ] / [      ]

dotloop signature verification

**12. SPECIAL ASSESSMENTS:** The Property ☐ is –OR– ☑ is not subject to special government assessments, such as SID and LID. (For information please go to: www.amgnv.com) If yes, please complete the following:

03/22/26
7:07 PM PDT
dotloop verified

Balance remaining: $_____

Payment amount: $ _____

Payment Due: select one (1) Monthly ☐    Quarterly ☐    Semi Annually ☐    Annually ☐

**13.  KEYBOX:** Seller ☑ **does** -OR- ☐ **does not** authorize Broker to install a keybox (**electronic** ☐ **-OR- mechanical** ☑) in connection with the showing of the Property. A mechanical keybox is a combination-type box that can be opened by anyone who has access to the combination/code. The MLS requires that a valid working code for a mechanical keybox be included in the listing for ease of showing. The code is a confidential field that is not intended to be available to the public. Seller acknowledges that they have been advised that:

a. The purpose and function of the keybox is to permit access to the interior of the Property by all members of GLVAR's MLS as well as any licensed professionals necessary to facilitate the sale of the Property;

b. Seller should safeguard Personal Property and valuables located within the Property;

c. It is not a requirement of the GLVAR's MLS for a Seller to allow the use of a keybox;

d. Where a tenant occupies the Property, the tenant's consent is also required, which shall be obtained by the Seller or his/her Property Manager;

e. Seller ☐ **does** -OR- ☑ **does not** authorize Broker to issue "One Day Codes" to access the electronic keybox installed on the property. A "One Day Code" is an electronic means to allow access to the keybox key compartment. Broker shall only issue such codes to licensed professionals. Broker further agrees to use all reasonable means to verify the identity of said licensed professionals.

03/22/26
7:07 PM PDT
dotloop verified

f. Owner acknowledges that GLVAR, the MLS, Broker or its Listing Agent is not insuring owner or occupant against theft, loss or vandalism resulting from such access. Owner is responsible for taking such steps as may be necessary to secure and protect the Property during any time that a keybox is being used and obtaining appropriate insurance.

**14. RENT/LEASE:** The Property ☐ **is** -OR- ☑ **is not** currently occupied by a Tenant.

The Property ☐ **is** -OR- ☑ **is not** subject to a management agreement with: (name of Property Manager and phone number):_____. Seller agrees to not rent or lease the Property during the term of this Agreement without fourteen (14) days prior written notice to Broker.

**15. TAX WITHHOLDING:** Seller agrees to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act (FIRPTA). If applicable (as designated in the Seller's Response herein), Seller agrees to complete, sign, and deliver to ESCROW HOLDER a certificate indicating whether Seller is a foreign person or a nonresident alien pursuant to the Foreign Investment in Real Property Tax Act (FIRPTA). A foreign person is a nonresident alien individual; a foreign corporation not treated as a domestic corporation; or a foreign partnership, trust or estate. A resident alien is not considered a foreign person under FIRPTA. Additional information for determining status may be found at www.irs.gov. Seller understands that if Seller is a foreign person then the Buyer must withhold a tax in an amount to be determined by ESCROW HOLDER in accordance with FIRPTA, unless an exemption applies. Seller agrees to sign and deliver to the ESCROW HOLDER the necessary documents, to be provided by the ESCROW HOLDER, to determine if withholding is required (see 26 USC Section 1445).

**FIRPTA DECLARATION:** Seller declares that he/she

☑ **is not** –OR–

☐ **is** a foreign person therefore subjecting this transaction to FIRPTA withholding.

**SELLER(S) INITIALS:** [ _JF_ ] / [    ] / [    ] / [    ]

03/22/26
7:07 PM PDT
dotloop verified

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: [ _JF_ ] / [    ] / [    ] / [    ]

03/22/26
7:07 PM PDT
dotloop verified

**16. MEDIATION:** The Broker and Seller agree to negotiate in good faith in an effort to resolve any dispute related to this Listing Agreement that may arise between the parties. If the dispute cannot be resolved by negotiation, the dispute will be submitted to a mediator agreed to by the parties. Mediation fees, if any, shall be divided equally among the parties involved. By initialing below, the parties confirm that they have read and understand this section and voluntarily agree to the provisions thereof.

**SELLER(S) INITIALS:** [ ][ ][ ][ ]  **BROKER(S) INITIALS:** [ ][ ][ ][ ]

**17. MULTIPLE LISTING SERVICE (MLS):** Broker is a participant of THE GREATER LAS VEGAS ASSOCIATION OF REALTORS® (GLVAR) Multiple Listing Service (MLS) and listing information about the Property will be provided to the MLS to be published and disseminated to its Participants and Subscribers in accordance with its Rules and Regulations and Sections 18, 19, 20 and 22 herein, unless Seller selects the Office Exclusive option in Section 21 and signs the Office Exclusive Form. Broker is authorized to cooperate with other real estate Brokers, and to report the sale, its price, terms and financing for the publication, dissemination information and use by authorized Association members, MLS Participants and Subscribers.

**18. MARKETING AND ADVERTISING:** Seller acknowledges that, unless Seller signs photo exclusion, photographs of the Property may be taken for publication in the MLS computer system. Subject to Section 20, Seller agrees that the Property may be advertised in any and all formats of media including but not limited to electronic and print advertising. Should Seller provide photographs of the Property, Seller warranties and represents that Seller has the ownership rights to said photographs and by providing said photographs irrevocably assigns any and all ownership rights to the Broker. Seller further acknowledges that once images are placed on the Internet, neither the Broker nor the Seller have control over who can view such images and what use viewers may make of the images or how long such images may remain on the internet.

Seller acknowledges that prospective buyers and/or other persons coming on to the property may take photographs, video and/or other images of the property. Seller understands that Broker does not have the ability to control or block the taking of and use of images by such persons. Once the images are taken and or put into electronic display on the Internet or otherwise published neither the Broker nor the Seller has control over how such images are used.

Seller ☑ does -OR- ☐ does not authorize Broker to commence public marketing and advertising activities.

**SELLER(S) INITIALS:** [ ]/[ ]/[ ]/[ ]

**19. SIGN:** Seller ☑ does -OR- ☐ does not authorize Broker to install a FOR SALE/LEASE sign on the Property. (**Seller may only authorize a sign if Seller has authorized marketing/advertising in Section 18.**)

**20. SELLER OPT OUTS:** Seller further understands and acknowledges that MLS will disseminate the Property's listing information to those MLS brokers and agents (and/or their web vendors) who operate Internet sites, as well as other online providers, and that such sites are generally available to the public. Some, but not all, of these websites may include a commentary section where consumers may include reviews and comments about the Property in immediate conjunction with the listing (blogging) or provide a link to the comments. In addition, some, but not all, of these websites may display an automated estimate of the market value of the Property in immediate conjunction with the listing or provide a link to the estimate. Seller can instruct Broker to have the MLS not display the property on the Internet. Seller also can instruct the MLS to not display the Property address on the Internet. Seller understands that these opt outs would mean consumers searching for listings on the Internet may not see the Property or the Property's address in response to their search.

Seller may opt-out of any of the following features by initialing the appropriate space(s) below:

a. [ ]/[ ]/[ ]/[ ] I/we have advised the Broker that I/we **DO NOT** want a **commentary section** displayed or linked to the listed Property (the site operator may indicate that the feature was disabled at the request of the seller).

b. [ ]/[ ]/[ ]/[ ] I/we have advised the Broker that I/we **DO NOT** want an **automated estimate of value** displayed or linked to the listed Property (the site operator may indicate that the feature was disabled at the request of the seller). *Please note that this automated estimate of value restriction applies to VOW offices only.

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

**SELLER(S) INITIALS:** [ ]/[ ]/[ ]



Virtual Office Websites ("VOWs") are Internet sites operated by MLS Participant Brokers through which they establish relationships and work with clients and customers in cyberspace in ways similar to how real estate professionals interact with clients and customers in a "brick and mortar" environment. This restriction does not apply to automated estimates of value created by non-MLS Participant websites.

—OR—

c. [signature] / [ ] / [ ] / [ ] Seller does **NOT** opt out of any of the above.

**21. OFFICE EXCLUSIVE:** Seller does not authorize Broker to disseminate listing information about the Property via GLVAR MLS, however Seller acknowledges and agrees that Broker will file the fully executed Office Exclusive Form with GLVAR MLS in accordance with GLVAR MLS Rules and Regulations. Further, Seller acknowledges and agrees that if there is any Public Marketing of an Office Exclusive listing, then Broker must submit the listing to GLVAR MLS for dissemination to its participants within one (1) business day of the Public Marketing. Public Marketing includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays (including IDX and VOW), digital communications marketing (email blasts), multi-brokerage listing sharing networks, and applications available to the general public.

Seller ☐ **does** -OR- ☑ **does NOT** select an Office Exclusive listing. (**Seller may not select this option if Seller has authorized marketing/advertising in Section 18.**)

**SELLER(S) INITIALS:** [signature] / [ ] / [ ] / [ ]

**22. USE OF LISTING CONTENT:** Seller acknowledges and agrees that all photographs, images, graphics, video recordings, virtual tours, drawings, written descriptions, remarks, narratives, pricing information, and other copyrightable elements relating to the Property provided by Seller to Broker or Broker's agent (the "Broker Listing Content") and any changes thereto, may be filed with MLS, included in compilations of listings, and otherwise distributed, publicly displayed and reproduced in any medium. Seller hereby grants to Broker a non-exclusive, irrevocable, worldwide, royalty-free license to use, sublicense through multiple tiers, publish, display, and reproduce the Broker Listing Content, to prepare derivative works of the Broker Listing Content, and to distribute the Broker Listing Content or any derivative works thereof in any medium. This non-exclusive license shall survive the termination of this Agreement for any reason whatever. Seller represents and warrants to Broker that the Broker Listing Content, and the license granted to Broker for the Broker Listing Content, do not violate or infringe upon the rights, including any copyright rights, of any person or entity. Seller acknowledges and agrees that as between Seller and Broker, all Broker Listing Content is owned exclusively by Broker, and Seller has no right, title or interest in or to any Broker Listing Content.

**23. NEVADA LAW:** This Agreement is executed and intended to be performed in the State of Nevada, and the laws of Nevada shall govern its interpretation and effect. The parties agree that the State of Nevada, and the county in which the Property is located, is the appropriate judicial forum for any litigation, related to this Agreement.

**24. ENTIRE CONTRACT:** All prior negotiations and agreements between the parties are incorporated in this Agreement, which constitutes the entire contract. Its terms are intended by the parties as a final, complete, and exclusive expression of their agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. This Agreement and any supplement, addendum, or modification, including any photocopy or facsimile, may be executed in two or more counterparts, all of which shall constitute one and the same writing. The terms of this Agreement may not be amended, modified or altered except through a written agreement signed by all of the parties hereto. **The parties agree that an MLS Change Order signed by Broker and Seller shall act as a valid written addendum to this Agreement.**

**25. PARTIAL INVALIDITY:** In the event that any provision of this Agreement shall be held to be invalid or unenforceable, such ruling shall not affect the validity or enforceability of the remainder of the Agreement in any respect whatsoever.

**26. ATTORNEY'S FEES:** In the event suit is brought by either party to enforce this Agreement, the prevailing party is entitled to court costs and reasonable attorney's fees. If Broker hires an attorney to enforce the collection of any commission payable pursuant to this Listing Agreement and is successful in collecting some or all of such commission without commencing any action or proceeding, Seller agrees to pay such broker's reasonable attorneys' fees and costs and Seller

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS:  [signature] / [ ] / [ ] / [ ]

agrees to pay interest at the legal rate on all compensation and other amounts owned or due to Broker from the time due until paid in full.

**27. DAMAGES CAP** Notwithstanding any provision to the contrary contained in this Agreement, if Broker shall be liable to Seller for any matter arising from this Agreement, whether based upon an action or claim in contract, warranty, equity, negligence, intended conduct or otherwise (including any action or claim arising from an act or omission, negligent or otherwise, of the liable party) the maximum aggregate liability of Broker to Seller under this agreement shall not exceed the aggregate commission amount that has been paid by Seller to Broker.

**28. WARRANTY OF OWNERSHIP:** Seller warrants that Seller is the sole owner of the Property or has the authority to execute this Agreement. By signing below Seller acknowledges that Seller has read and understands this Agreement and agrees to the terms thereof.

**29. FORECLOSURE:** Seller understands that failure to make loan payments may result in foreclosure of the Property by a mortgage holder and/or lien holder. Information regarding the foreclosure or litigation status of a property is available from the County Recorder where the Property is located. Seller represents that at the time of this listing (complete parts a and b):

    a. A Notice of Default (Breach) and Election to Sell **has not –OR– □ has (date:_____) been recorded** against the Property. **If a Notice of Default has not been recorded against the Property as of the date of this Agreement, Seller agrees to notify Broker within five (5) business days of receipt of such a notice.** Seller understands that the recording of a Notice of Default begins a statutory foreclosure period, which varies in duration. At the end of the foreclosure period, the Property typically will be sold at a Trustee's Sale (foreclosure sale) and Seller will lose all rights and interest in the Property.

    b. Seller ☐ **has not –OR–** ☑ **has (date:_____)** been served with a Summons and Complaint from Lender seeking to foreclose the property in court. The Parties understand that the filing and service of a Summons and Complaint begins a judicial foreclosure process which varies in duration, and which may result in a judgment against Seller. The judgment will typically be enforced through a foreclosure sale conducted by the Sheriff for the county where the Property is located and Seller will lose all rights and interest in the Property.

    c. Seller understands that if the Property is not sold to a buyer before a foreclosure sale of the Property, Seller will lose all rights and interest in the Property. Seller understands that Broker cannot stop a foreclosure.

**SELLER(S) INITIALS:** ____/____/____/____

**30. SIGNATURES:** This Agreement may be signed by the parties manually or electronically (digitally) and on more than one copy, which, when taken together, each signed copy shall be read as one complete form. Facsimile signatures may be accepted as original.

**31. RECOMMENDATIONS:** If Broker recommends a builder, contractor, escrow company, title company, pest control service, appraiser, lender, home inspection company or home warranty company or any other person or entity to Seller for any purpose, said recommendation shall be independently investigated and evaluated by Seller, who hereby acknowledges that any decision to enter into any contractual arrangement with any such person or entity recommended by Broker will be based solely upon such independent investigation.

**32. DEFAULT:** If Seller materially breaches this Listing, Seller is in default and will be liable to Broker for the amount of the Broker's fee specified in Section 5 and any other fees Broker is entitled to receive under this Agreement. If a sales price is not determinable in the event of an exchange or breach of this Listing, the Listing Price will be the sales price for purposes of computing Broker's fee. If Broker breaches this Agreement, Broker is in default and Seller may exercise any remedy at law.

**33. BINDING EFFECT:** Seller's obligation to pay Broker an earned fee is binding upon Seller and Seller's heirs, administrators, executors, successors and permitted assignees.

**34. JOINT AND SEVERAL:** All Sellers executing this Listing are jointly and severally liable for the performance of all its terms.

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: ____/____/____/____



dotloop signature verification

**35. TIME OF ESSENCE:** Time is of the essence of this Agreement and each of its terms.

**36.** Seller hereby agrees that once an offer has been accepted the MLS Status shall be (choose one only):

☑ Under Contract Show: The property may be shown even after an offer has been accepted.

☐ Under Contract No Show: The property will not be shown once an offer has been accepted.

☐ Determined by seller upon acceptance of the offer.

**37. 1031 EXCHANGE:** The Seller ☐ **does -OR-** ☑ **does not** intend to perform an IRC Section 1031 tax deferred exchange. If yes, Broker is aware and acknowledges that Seller intends to perform an IRC Section 1031 tax deferred exchange. Broker will cooperate in such an exchange and Seller agrees to hold Broker harmless from any and all claims, costs, liabilities or delays in time resulting from such an exchange.

**ADDITIONAL TERMS:**

_____

_____

_____

_____

_____

**THE PRE-PRINTED PORTION OF THIS AGREEMENT HAS BEEN APPROVED BY THE GREATER LAS VEGAS ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OR THE TAX CONSEQUENCES THEREOF. FOR LEGAL OR TAX ADVICE, CONSULT YOUR ATTORNEY OR TAX ADVISOR.**

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: [ _____ / _____ / _____ / _____ ]

Exclusive Agency (EA) Listing Agreement Rev. 11.21          Page 8 of 10          © 2021 Greater Las Vegas Association of REALTORS®

By signing below, Seller consents to receive transmissions sent from Broker to the e-mail address(es) set forth. Seller agrees to keep Broker advised of his/her address and telephone number (or a number where they may be reached within 24 hours) at all times during the term of this Agreement.

**SELLER:**

Date_____ Time_____ : _____ ☐AM ☐ PM

Seller's Signature [_Luke Fitzgerald President of Koinonia Construction_  _Luke_  dotloop verified 03/22/26 7:07 PM PDT 1LWI-68QA-VOD5-AG6J] Printed Name: Koinonia Construction Inc._____

Phone_____ E-Mail elkoluke@gmail.com_____ Address _____

Seller's Signature [                    ] Printed Name: _____

Phone_____ E-Mail _____ Address _____

Seller's Signature [                    ] Printed Name: _____

Phone_____ E-Mail _____ Address _____

Seller's Signature [                    ] Printed Name: _____

Phone_____ E-Mail _____ Address _____

**BROKER:**

Company LPT Realty, LLC _____

Address 2403 N 5th St, Elko, 89801_____ City Elko_____ State_____ Zip 89801_____

Phone 2084044061_____ E-Mail kconelko@gmail.com _____

Designated Licensee Signature [_Jennifer Welch_  dotloop verified 03/22/26 6:49 PM PDT EEGW-MAVK-ZOGL-R1TO] License No. S.0203284_____

Printed Name: Jennifer Welch_____ Licensee's Phone: 2084044061_____

Broker's Signature [_Jen McDonald_  dotloop verified 03/23/26 12:36 PM PDT CKL3-A8XY-HVMX-KFM7] License No. B.3279_____

Printed Name: Jen McDonald_____ Date_____ Time:_____ : _____ ☐AM ☐PM

**Seller acknowledges that he/she has read, understood, and agreed to each and every provision of this page.**

SELLER(S) INITIALS: [_LF_ 03/22/26 7:07 PM PDT dotloop verified] / [    ] / [    ] / [    ]



# AN EXCLUSIVE BROKERAGE AGREEMENT MUST BE SIGNED BY THE BROKER TO BE VALID
## WHAT EVERYONE SHOULD KNOW ABOUT EQUAL OPPORTUNITY IN
### HOUSING

The sale and purchase of a home is one of the most significant events that any person will experience in their lifetime. It is more than the simple purchase of housing, for it includes the hopes, dreams, aspirations, and economic destiny of those involved.

## THE LAW - Civil Rights Act of 1866

The Civil Rights Act of 1866 prohibits all racial discrimination in the sale or rental of property.

## Fair Housing Act

The Fair Housing Act declares a national policy of fair housing throughout the United States. The law makes illegal any discrimination in the sale, lease or rental of housing, or making housing otherwise unavailable, because of race, color, religion, sex, handicap, familial status, or national origin.

## Americans with Disabilities Act

Title III of the Americans with Disabilities Act prohibits discrimination against the disabled in places of public accommodations and commercial facilities.

## Equal Credit Opportunity Act

The Equal Credit Opportunity Act makes discrimination unlawful with respect to any aspect of a credit application on the basis of race, color, religion, national origin, sex, marital status, age or because all or part of the applicant's income derives from any public assistance program.

## State and Local Laws

State and Local laws often provide broader coverage and prohibit discrimination based on additional classes not covered by federal law.

## THE RESPONSIBILITIES

The home seller, the home seeker, and the real estate professional all have rights and responsibilities under the law.

## For the Home Seller

You should know that as a home seller or landlord you have a responsibility and a requirement under the law not to discriminate in the sale, rental and financing of property on the basis of race, color, religion, sex, handicap, familial status, or national origin. You cannot instruct the licensed broker or salesperson acting as your agent to convey for you any limitations in the sale or rental, because the real estate professional is also bound by law not to discriminate. Under the law, a home seller or landlord cannot establish discriminatory terms or conditions in the purchase or rental, deny that housing is available or advertise that the property is available only to persons of a certain race, color, religion, sex, handicap, familial status, or national origin.

## For the Home Seeker

You have the right to expect that housing will be available to you without discrimination or other limitation based on race, color, religion, sex, handicap, familial status, or national origin.
This includes the right to expect:

- housing in your price range made available to you without discrimination
- equal professional service
- the opportunity to consider a broad range of housing choices
- no discriminatory limitations on communities or locations of housing
- no discrimination in the financing, appraising or insuring of housing

  **Seller(s) Initials**

- reasonable accommodations in rules, practices and procedures for persons with disabilities
- non-discriminatory terms and conditions for the sale, rental, financing, or insuring of a dwelling
- to be free from harassment or intimidation for exercising your fair housing rights.

## FOR THE Real Estate Professional

**As a home seller or home seeker, you** should know that the term REALTOR® identifies a licensed professional in real estate who is a member of the NATIONAL ASSOCIATION OF REALTORS®. Not all licensed real estate brokers and salespersons are members of the National Association, and only those who are can identify themselves as REALTOR®. They conduct their business and activities in accordance with a strict Code of Ethics. As agents in a real estate transaction, licensed brokers or salespersons are prohibited by law from discriminating on the basis of race, color, religion, sex, handicap, familial status, or national origin. A request from the home seller or landlord to act in a discriminatory manner in the sale, lease or rental cannot legally be fulfilled by the real estate professional.

## DEED AND PROPERTY COVENANTS OR RESTRICTIONS OF RECORD

During the history of our country, some persons have placed restrictions on property based on race, color, religion, sex, handicap, familial status, or national origin. Generally, these restrictions are void and unenforceable, with limited exceptions for particular types of religious housing and housing for older persons. The publication of these void restrictions may convey a message that the restrictions continue to be valid. Any time a sales associate or broker is asked to provide a copy of the covenants or restrictions of record relating to the use of a property the following message should be included:

*These documents may contain restrictions or covenants based on race, color, religion, sex, handicap, familial status, or national origin.*
*Such restrictions or covenants generally are void and unenforceable as violations of fair housing laws.*
*Be assured that all property is marketed and made available without discrimination based on race, color, religion, sex, handicap, familial status, or national origin. Should you have any questions regarding such restrictions, please contact your attorney.*

## THE EQUAL OPPORTUNITY PROGRAM

The NATIONAL ASSOCIATION OF REALTORS® has developed a Fair Housing Program to provide resources and guidance to REALTORS® in ensuring equal professional services for all people.

## The Code of Ethics

Article 10 of the NATIONAL ASSOCIATION OF REALTORS® Code of Ethics requires that "REALTORS® shall not deny equal professional services to any person for reasons of race, color, religion, sex, handicap, familial status, or national origin. REALTORS® shall not be a party to any plan or agreement to discriminate against a person or persons on the basis of race, color, religion, sex, handicap, familial status, or national origin."

A REALTOR® pledges to conduct business in keeping with the spirit and letter of the Code of Ethics. Article 10 imposes obligations upon REALTORS® and is also a firm statement of support for equal opportunity in housing.

## Fair Housing Partnership

The Fair Housing Partnership negotiated with the U.S. Department of Housing and Urban Development (HUD) outlines a program of voluntary compliance. REALTORS® voluntarily participate in activities and program to acquaint the community with the availability of equal housing opportunity, to establish office procedures to ensure that there is no denial of equal professional service, to make materials available which will explain this commitment, and to work with other groups within the community to identify and remove barriers to fair housing.

## FURTHER ASSISTANCE

Local Boards of REALTORS® will accept complaints alleging violations of the Code of Ethics filed by a homeseeker who alleges discriminatory treatment in the availability, purchase or rental of housing. Local Boards of REALTORS® have a responsibility to enforce the Code of Ethics through professional standards procedures and corrective action in cases where a violation of the Code of Ethics is proven to have occurred.

Complaints alleging discrimination in housing may be filed with the nearest office of the Department of Housing and Urban Development (HUD), or by calling HUD's Discrimination Hotline at 1-800-669-9777, 1-800-290-1617 (TYY). For information and publications on fair housing, call HUD's Fair Housing Information Clearinghouse at 1-800-343-3442.

Exclusive Agency (EA) Listing Agreement Rev. 11.21          Page 10 of 10          © 2021 Greater Las Vegas Association of REALTORS®

# EXHIBIT "M"

CASE NO. DC-FM-25-126
DEPT. NO. 3

Pursuant to NRS 239B.030
The undersigned certifies
no Social Security numbers
are contained in the document.

FILED

2025 JUL 28 AM II: 04

4TH JUDICIAL DISTRICT COURT

CLERK_____DEPUTY _MS_

FOURTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR THE COUNTY OF ELKO

LUKE FITZGERALD,

                    Plaintiff,          **STIPULATION AND ORDER**
                                        **FOLLOWING CASE MANAGEMENT CONFERENCE**
vs.

LISA JANE TURNER,

                    Defendant.
_____/

     This matter came before the Court on May 19, 2025, for a Case Management Conference. Present before the Court were Defendant, LISA JANE TURNER, ("Wife"), with her attorney, LISA K. MENDEZ, ESQ., and Plaintiff, LUKE FITZGERALD("Husband"), in proper person. The parties reached an agreement in open Court concerning certain temporary matters pertaining to custody, summer visitation and property, which has been expanded within this stipulation by the parties, in consultation with Ms. Mendez, as counsel of record for Wife and SHAWN MEADOR, ESQ., who has entered his formal appearance on behalf of Husband. The parties hereby agree and stipulate to the following temporary orders:

     1. The parties shall have joint legal and joint physical custody of their minor child, CILLIAN LORCAN TURNER FITZGERALD, (DOB: 11/30/2017), (hereinafter "CILLIAN'). The parties have agreed

to continue rotating custody of the minor child based on a 4-3 schedule based on the following schedule: Wife will have the minor child beginning on Monday at 8:00 a.m. until Thursday after school or at 3:50 p.m. and Husband shall have the minor child from Thursday after school or at 3:50 p.m. until Monday morning at 8:00 a.m. In weeks three and five(if the month has a fifth weekend), Wife shall have weekend time and shall have physical custody of the minor child Monday morning before school, or at 8:00 a.m. if no school, until the following Thursday after school, or at 3:50 p.m. to include the 3rd and 5th weekend of the month.

The first weekend of the month shall be identified by the first weekend in the month that both Saturday and Sunday fall within that month.

2. During summer break, each party shall be entitled to one 10-day vacation period with the minor child, with Husband exercising his one time 10-day vacation period beginning June 11, 2025, at 8:00 A.M and ending June 21, 2025 at 8:00 A.M. at which time the parties regular custodial rotation will resume. Wife shall exercise her one time 10-day vacation period beginning June 23, 2025, and ending on July 3, 2025, at 8:00 A.M. at which time the parties regular custodial rotation will resume.

3. Neither party shall consume alcohol 12 hours prior to or during his or her custodial time period with the minor child.

4. Husband and Wife shall each have unrestricted, open and liberal telephone contact with the child during the other parent's custodial period which should include a daily call for the non-custodial parent for a brief check-in with the child during his normal waking hours. Each party shall share the child's phone

-2-

number with the other parent and ensure each party's phone number is programed into the child's phone or watch at all times to ensure the child can reach out to either parent and that parent may contact him.

5. In the event either party is going to be taking Cillian out of town during his or her custodial period, that parent shall provide the other parent with the location and an itinerary of the trip including where the child will be staying, when he is leaving and when he will be returning before leaving the Elko area.

6. As a resolution to the remaining issues in the respective temporary motions for interim relief requested by each party and currently set for hearing on July 29, 2025, the parties have agreed that Wife shall have exclusive possession of the marital residence located at 2446 Crestview Drive, in Elko, NV, and Husband shall be responsible to make the monthly mortgage payment thereon in the amount of approximately $2,400 in addition to his own living expenses. Wife shall be responsible to pay for all utilities associated with her occupancy of the residence, her vehicle payment and associated car insurance, as well as the monthly health insurance premiums for herself and Cillian provided through her employment.

7. The parties agree and acknowledge that multiple community properties currently listed for sale are subject to Notices of Lis Pendens. Prior to the removal of any Lis Pendens and/or the sale of any real property held by Husband and Wife, Husband individually, or an entity in which Husband has a pecuniary interest, Husband shall provide Wife with a complete description of the property to be sold, along with offers received on the property, any counter-

-3-

offers and acceptances, escrow documentation to include escrow instructions, estimated closing statements, and the final closing statement once the transaction is completed. Wife shall have five business days from the receipt of this documentation, excluding the final closing statement, to file a Release of Lis Pendens or make a formal objection. In the case of objection, the parties shall cooperate to obtain judicial resolution of the dispute as promptly as possible by seeking an expedited hearing on the issue or a conference call with Judge Simons.

Husband shall not take any personal distributions from the sales proceeds, other than to pay on community obligations. Husband shall provide to Wife a full written accounting of the distribution of the net sale proceeds as evidenced through bank statements, canceled checks and/or proof of electronic transactions. For purposes of current sales at the time of the Case Management Conference, the parties agreed to the sale and release of Lis Pendens for the properties located at: 2405 N. 5th St., 2605 Platinum Dr., and 2620 Platinum Dr., subject to the above terms and conditions.

8. Neither party shall make large purchases or spend money beyond what is necessary to maintain his or her household living expenses, maintain credit standings or as necessary to pay for items in the ordinary course of events. If a party is spending or transferring money inappropriately, the parties will cooperate to obtain judicial intervention promptly which may include an expedited hearing or conference call with Judge Simons.

9. The parties shall ensure that they have provided copies of all documents covered in 16.2 regarding their initial disclosures

-4-

within 30 days and shall ensure that those documents are supplemented as needed to maintain full disclosure and financial transparency.

10. The hearing on the pending temporary Motions scheduled for **July 29, 2025, at 8:30 a.m.** is hereby vacated.

**IT IS SO STIPULATED**, this 22 day of July, 2025.

LISA K. MENDEZ, ESQ.
NV State Bar No. 6418
Attorney for Defendant

SHAWN B. MEADOR, ESQ.
NV State Bar No. _____
Attorney for Plaintiff

**SO ORDERED** this 28th day of July, 2025.

Mason E. Simons

HONORABLE MASON E. SIMONS
DISTRICT JUDGE, DEPT. THREE

-5-

# EXHIBIT "N"

CASE NO. DC-FM-25-126

DEPT. NO. 3

Pursuant to NRS 239B.030
The undersigned certifies
no Social Security numbers
are contained in the document.

FILED

2025 APR 11 AM 8:13

4TH JUDICIAL DISTRICT COURT

MS

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF ELKO

LUKE FITZGERALD,

          Plaintiff,

vs.

LISA JANE TURNER,

          Defendant.

_____/

**EX PARTE ORDER PREVENTING DISSIPATION OF ASSETS**

This matter came before the Court on Defendant's Ex Parte Motion for Order Preventing Dissipation of Assets. The Court having reviewed Defendant's Ex Parte Motion, and good cause appearing;

/
/
/
/
/
/
/
/
/
/
/
/

IT IS HEREBY ORDERED, pursuant to 4JDCR 11, that Plaintiff and Defendant are hereby prohibited and restrained from liquidating, dissipating, concealing, damaging, transferring, encumbering, gifting, secreting, disposing of, borrowing against or in any manner diminishing the value of properties in either party's name, or in corporate entities in which either party has an interest, whether real or personal, business or residential, community or separate, except as necessary to pay for essential living expenses, to maintain current account standings on community debts and to retain an attorney in this action, or from opening or reopening credit accounts in the parties' names jointly pending disposition of this matter.

DATED this __10__ day of __April__, 2025.

HON. JUDGE MASON E. SIMONS
DISTRICT JUDGE DEPT. 3

SUBMITTED AND APPROVED BY:

LISA K. MENDEZ, ESQ.
NV Bar #6418
Attorney for Defendant

- 2 -



RECEIVED

APR 1 0 2025

By _____ PP